1    JOSEPH A. EISENBERG P.C. (SBN 52346)
     CAROLINE R. DJANG (SBN 216313)
2    JEFFER MANGELS BUTLER & MITCHELL LLP
     1900 Avenue of the Stars, Seventh Floor
3    Los Angeles, California 90067
     Telephone:  (310) 203-8080
4    Facsimile:  (310) 203-0567
     Email:  jae@jmbm.com
5            cdjang@jmbm.com

6    Attorneys for Consolidated Debtors SHALAN ENTERPRISES, LLC and
     ALAN RAPOPORT

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                       **LOS ANGELES DIVISION**

11

12   In re                               Case No.  2:09-bk-43263-PC
                                                    2:09-bk-43499-PC
13   SHALAN ENTERPRISES, LLC,
14   Substantively consolidated with     Chapter 11
     Alan Rapoport,
15                        Debtor.         **OBJECTION OF DEBTORS TO DISCLOSURE
                                          STATEMENT FILED BY PERRY AND RITA
16                                        KLEIN; MEMORANDUM OF POINTS AND
                                          AUTHORITIES; DECLARATION OF ALAN
17                                        RAPOPORT**

18   ☐ This pleading affects Shalan only
                                          **Hearing:**
19   ☐ This pleading affects Rapoport only    Date:   November 17, 2010
                                          Time:   9:30 a.m.
20   ☒ This pleading affects both Shalan and   Place:  Courtroom 1539
        Rapoport                                       255 E. Temple Street
21                                                     Los Angeles, CA 90012

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................2

I. INTRODUCTION.................................................................................................................2

II. FACTUAL BACKGROUND ...............................................................................................3

III. OBJECTION .....................................................................................................................6

    A.    The Disclosure Statement Fails to Give "Adequate Information" .........................6

    B.    The Disclosure Statement Cannot Be Approved Because It Contains
           Numerous False Statements and Unsupported Opinions .....................................8

        1.    Mischaracterizations of the Klein Litigation.............................................8

        2.    Misrepresentations Regarding These Bankruptcy Cases..........................10

    C.    The Plan Is Unconfirmable on its Face, and Thus, the Disclosure Statement
           Cannot Be Approved.......................................................................................11

IV. CONCLUSION................................................................................................................14

DECLARATION OF ALAN RAPOPORT ................................................................................15

PRINTED ON

RECYCLED PAPER

11/2/10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re 266 Washington Associates,*
    141 B.R. 275 (Bankr. E.D.N.Y. 1992) ........................................................................ 12

*In re Allied Gaming Management, Inc.,*
    209 B.R. 201 (Bankr. W.D. La. 1997) ......................................................................... 11

*In re Bjolmes Realty Trust,*
    134 B.R. 1000 (Bankr. D. Mass. 1991) ...................................................................... 12

*In re Brophy,*
    49 B.R. 483 (Bankr. D. Haw. 1985) ........................................................................... 13

*In re California Fidelity, Inc.,*
    198 B.R. 567 (B.A.P. 9th Cir. 1996) (citation omitted) ................................................ 6

*In re Civitella,*
    15 B.R. 206 (Bankr. E.D. Pa. 1981) ..................................................................... 7, 11

*In re Copy Crafters Quickprint, Inc.,*
    92 B.R. 973 (Bankr. N.D.N.Y. 1988) ........................................................................... 7

*In re Curtis Center Ltd. Partnership,*
    195 B.R. 631 (Bankr. E.D. Pa. 1996) .................................................................. 11-12

*In re Dakota Rail, Inc.,*
    104 B.R. 138 (Bankr. D. Minn. 1989) ................................................................ 6-7, 12

*In re Graham,*
    21 B.R. 235 (Bankr. N.D. Iowa 1982) ........................................................................ 13

*In re Hirt,*
    97 B.R. 981 (Bankr. E.D. Wis. 1989) ........................................................................... 7

*In re M.E.S., Inc.,*
    148 B.R. 1 (D.P.R. 1992) ............................................................................................. 6

*In re Main Street AC, Inc.,*
    234 B.R. 771 (Bankr. N.D. Cal. 1999) ...................................................................... 11

*In re Michelson,*
    141 B.R. 715 (Bankr. E.D. Cal. 1992) ......................................................................... 6

*In re Noonan,*
    17 B.R. 793 (Bankr. S.D.N.Y. 1982) ........................................................................ 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PRINTED ON
RECYCLED PAPER

11/2/10

## Table of Authorities
### (Continued)

Page(s)

*In re Pecht*,
    53 B.R. 768 (Bankr. E.D. Va. 1985) ........................................................................ 12

*In re Pecht*,
    57 B.R. 137 (Bankr. E.D. Va. 1986) ........................................................................ 12

*Onink v. Cardelucci (In re Cardelucci)*,
    285 F.3d 1231 ............................................................................................................ 9

*S.E.T. Income Properties*,
    83 B.R. at 792 ........................................................................................................... 12

**CODES AND STATUTES**

11 U.S.C.
    § 1125 ................................................................................................................... 2, 6
    § 1129 .............................................................................................................. 3, 12-13

Fed. R. Bankr. P.
    Rule 2004 ............................................................................................................ 4, 15
    Rule 7026 ................................................................................................................... 4
    Rule 9019 ............................................................................................................ 6, 16

**MISCELLANEOUS**

H.R.Rep. No. 95- 595, 95th Cong., 1st Sess. 228 (1977), *reprinted in* 1978 U.S.C.C.A.N.
    5963, 6187.............................................................................................................. 11

7-1105 COLLIER ON BANKRUPTCY ¶ 1105.02.......................................................................... 13

Alan Rapoport ("Rapoport") and Shalan Enterprises, LLC (Shalan), consolidated debtors and debtors in possession herein (the "Debtors"), hereby respectfully submit their objection (the "Objection") to the *Disclosure Statement to Accompany Plan of Reorganization* (the "Disclosure Statement") filed by Perry and Rita Klein (the "Kleins") in the above-entitled substantively consolidated cases.  The Objection is supported by the Memorandum of Points and Authorities, annexed hereto, and the Declaration of Alan Rapoport ("Rapoport Decl.").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

As the Court can certainly infer from the papers filed in this case, there is a history of animosity between the Kleins and Rapoport.  That animosity is obviously reflected in the Disclosure Statement proposed by the Kleins.  In an effort to portray the Debtors in a negative light, the Disclosure Statement is replete with material misrepresentations and falsehoods, to a point where the information contained therein is tainted.  Among other things, the Kleins **do not have an allowed claim in this consolidated case.**  Debtors have objected to the Kleins' grossly inflated claim, which claim objection has been held in abeyance pending the outcome of the trial of that action entitled *Perry Klein and Rita Klein v. Alan Rapoport; Alan and Shelley Rapoport Family Trust Dated October 15, 1999, et al.* (the "Klein Litigation") pending in Nevada state court.[1]  As such, the Kleins are not even entitled to vote on the plan they propose.

In addition, the Disclosure statement cannot be approved because it fails to give "adequate information," as defined by section 1125(a)(1) of the Bankruptcy Code.  For example, the keystone of the Kleins' Plan is the appointment of a plan administrator; however, the Disclosure Statement is completely devoid of any information concerning the plan administrator.  The importance of the

---

[1]  *See* Order Granting Motion re Objection to Claim by Claimant Perry and Rita Klein, entered on September 20, 2010 [Doc. No. 128].  A true and correct copy of the order is attached to the Rapoport Decl. as Exhibit "A."

PRINTED ON

RECYCLED PAPER

plan administrator is underscored throughout the Disclosure Statement and accompanying Plan of

Reorganization (the "Plan"), yet important facts regarding the plan administrator, such as his/her

identity, credentials, and compensation, are not disclosed in the Disclosure Statement.

Moreover, the Disclosure Statement cannot be approved by the Court because the Plan is

patently unconfirmable. The Plan proposed by the Kleins requires both the liquidation of all of the

estate's assets, and the contribution of all of Rapoport's disposable income for a term of five years.

As more fully discussed below, the plain language of section 1129(a)(15) only requires that the

value of the property distributed be equal to the disposable income. Additionally, the Plan

proposed by the Kleins implicates the Thirteenth Amendment's prohibition of involuntary servitude.

Because the Kleins' Plan misinterprets section 1129(a)(15), and violates the Thirteenth

Amendment, the Plan is facially defective, and cannot be confirmed.

For the reasons set forth herein, the Court should not approve the Disclosure Statement

proposed by the Kleins.

## II.

## FACTUAL BACKGROUND

Shalan was formed by Rapoport and his wife in 2005. As of Shalan's petition date,

November 25, 2009, Shalan owned, managed and leased thirty-four (34) income producing

residential real properties located in California and Arizona (the "Shalan Properties"). Rapoport

Decl. at ¶ 3. Rapoport filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code on

November 30, 2009. Rapaport is a trustee of the Alan and Shelley Rapoport Family Trust, Dated

10/15/99 (the "Trust"), which is the sole member of Shalan. Rapoport Decl. at ¶ 1.

All of the Shalan Properties were previously owned by Rapoport. For estate planning

purposes, each of the Shalan Properties was transferred from Rapoport to Shalan. Rapoport Decl.

at ¶ 5. Rapoport, whose individual chapter 11 case was substantively consolidated with the Shalan

case on March 18, 2010 [Shalan - Doc. No. 53], manages the Shalan Properties. Rapoport Decl. at

¶ 1 and 6. Rapoport owns and manages seven (7) residential real properties located in Nevada

PRINTED ON
RECYCLED PAPER

and New York.  Rapoport Decl. at ¶ 6.  The factual narrative set forth in the Kleins' Disclosure

Statement fails to convey the fact that the Debtors have made diligent efforts to sell Debtors' real

properties, despite the depressed real estate market, particularly in Las Vegas, Nevada, where four

of Rapoport's properties are located.  Rapoport Decl. at ¶ 7.

At the beginning of the Shalan case, the Kleins opposed Shalan's motion for use of cash

collateral.  The Kleins argued that they were not adequately protected, because collective monthly

expenses on the Shalan Properties were exceeded by the collective rental proceeds in the amount

of **$297.69**.  Eventually, the Court granted Debtor's use of cash collateral on a final basis, and

ordered that Shalan make adequate protection payments to the Kleins in the amount of $297.69

[Doc. No. 71 - Shalan].

On February 9, 2010, the Kleins filed a motion to change venue to Nevada [Doc. No. 39 -

Rapoport], which was denied by the Court.   Additionally, the Kleins have filed oppositions to

(i) Shalan's application to employ Jeffer Mangels Butler & Marmaro LLP as general bankruptcy

counsel [Doc. No. 11 - Shalan], which application was approved by the Court; (ii) Debtors' motion

for substantive consolidation [Doc. No. 40 - Shalan]; (iii) Shalan's application to employ real estate

broker [Doc. No. 51 - Shalan], which was later withdrawn [Doc. No. 55 - Shalan]; and

(iv) inexplicably, the Kleins filed an objection to Debtors' status report on July 15, 2010 [Doc. No.

97], objecting to Debtors "newly proposed deadline for filing of avoidance actions."

On May 6, 2010, the Kleins conducted the Rule 2004 examination of Debtors (the "2004

Exam").  Rapoport voluntarily appeared for his 2004 Exam, despite the fact that the Court did not

enter (and still has not entered) an order authorizing the Kleins to take the Debtors' 2004 Exam.

Rapoport was examined for a full day, and produced all of the requested documents that were

available to Rapoport at the time, and were not subject to privilege.   Subsequently, on

September 1, 2010, the Kleins filed a deficient motion to compel production of documents (the

"Motion to Compel" [Doc. No. 124 - Shalan]).   Despite the clear mandatory language of Local

Bankruptcy Rule 7026-1(c), the Kleins failed to arrange a meet and confer with Debtors' counsel,

and also failed to submit a stipulation with the Motion to Compel.   Nonetheless, in an effort to

PRINTED ON

RECYCLED PAPER

cooperate, Debtors agreed to produce the documents requested by the Kleins.  Rapoport Decl. at ¶ 8.

To that end, Rapoport produced thousands of pages of bank statements and other requested documents to the Kleins, at great cost to the estate.  On October 21, 2010, Rapoport filed a declaration attesting to his full compliance with the Kleins request for production of documents [Doc. No. 149 - Shalan].  Rapoport Decl. at ¶ 9.  To date, Debtors have fully complied with the Kleins' document request (Rapoport Decl. at ¶ 9), despite that the Court never entered an order authorizing the 2004 Exam, and no order has been entered granting the defective Motion to Compel.  Therefore, the Kleins' assertion in the Disclosure Statement that "[t]he Debtor has not produced all of the documents, and is under court order to do so" (Disclosure Statement at 7, ln. 5-6) is false.

Since the filing of the Disclosure Statement, Debtors have made additional progress towards the formulation of a chapter 11 plan.  The Court granted the Debtors' motion to sell two real properties in Las Vegas, Nevada, free and clear of all liens, claims and encumbrances, by the order entered on October 19, 2010 [Doc. No. 148], eliminating over $430,000 in secured debt. Rapoport Decl. at ¶ 10.  Debtors have accepted an offer to purchase an additional Las Vegas property (2777 Paradise Road, Las Vegas, NV), and a sale motion will be filed with the Court as soon as the sale is fully documented.  Rapoport Decl. at ¶ 11.  Debtors have also accepted an offer to purchase Rapoport's New York condominium for a purchase price of $1.1 million, which will result in net proceeds to the estate of approximately $800,000.  Rapoport Decl. at ¶ 12.  Recently, the Court sustained Debtors' objection to the claim of Sylvia Lissat by the order entered on October 20, 2010 [Doc. No. 77 - Rapoport], resulting in the disallowance of Lissat's claim in its entirety unless, by November 19, 2010, Lissat disgorges the preferential transfer she received. Rapoport Decl. at ¶ 13.  In addition, the Debtors have fully settled, at a discount, the claim of First Bank, a claim which exceeds $1.7 million.  Debtors have prepared, and will file, a motion for

approval of that compromise pursuant to Fed. R. Bankr. P. 9019, as soon as First Bank finalizes the

form of the settlement agreement.   Rapoport Decl. at ¶ 14.


**III.**

**OBJECTION**

**A.**    **The Disclosure Statement Fails to Give "Adequate Information"**


Bankruptcy Code section 1125(b) provides as follows:

> An acceptance or rejection of a plan may not be solicited after the
> commencement of the case under this title from a holder of a claim
> or interest with respect to such claim or interest unless, at the time
> of or before such solicitation, there is transmitted to such holder the
> plan or a summary of the plan, and a written disclosure statement
> approved, after notice and a hearing, by the court as containing
> adequate information.

11 U.S.C. § 1125(b).

Bankruptcy Code section 1125(a)(1) defines "adequate information" as —

> information of a kind, and in sufficient detail, as far as is reasonably
> practicable in light of the nature and history of the debtor and the
> condition of the debtor's books and records, that would enable a
> hypothetical reasonable investor typical of holders of claims or
> interests of the relevant class to make an informed judgment about
> the plan....

Bankruptcy Code § 1125(a)(1); *see also, e.g., In re California Fidelity, Inc.*, 198 B.R. 567, 571

(B.A.P. 9th Cir. 1996) (citation omitted) ("At a minimum, § 1125(b) seeks to guarantee that a

creditor receives adequate information about a plan before the creditor is asked for a vote.")

(citation omitted).   At the hearing on the disclosure statement, the party who is the proponent

bears the ultimate burden of persuasion.  *In re Michelson*, 141 B.R. 715, 718-19 (Bankr. E.D. Cal.

1992).

Statements in the disclosure statement must have a basis in fact.  A disclosure statement is

misleading when it contains opinions having little or no basis in fact and/or contradicted by known

fact.  *In re Dakota Rail, Inc.*, 104 B.R. 138, 149 (Bankr. D. Minn. 1989).   The court should deny

approval if the disclosure is inaccurate (*In re M.E.S., Inc.*, 148 B.R. 1, 1-2 (D.P.R. 1992)) or is

PRINTED ON

RECYCLED PAPER

"replete with deficiencies." *In re Hirt*, 97 B.R. 981, 982-83 (Bankr. E.D. Wis. 1989). Factual support must be given for any opinion set forth in the disclosure statement. "Mere allegations or opinions, unsupported by factual information, do not meet the required standard." *In re Civitella*, 15 BR 206, 208 (Bankr. E.D. Pa. 1981); *In re Copy Crafters Quickprint, Inc.*, 92 BR 973, 981 (Bankr. N.D.N.Y. 1988); *In re Dakota Rail, Inc.*, 104 B.R. 138, 149 (Bankr. D. Minn. 1989)].

Remarkably, the most glaring deficiencies in the Disclosure Statement are in connection with two of the most important aspects of the Plan. First, the keystone of the Kleins' Plan is the appointment of a plan administrator, yet the Disclosure Statement itself provides no details whatsoever (*e.g.*, identity, credentials, compensation) about the plan administrator. According to the Plan, the Kleins will appoint the plan administrator. Plan at 41, ln. 17-18. Moreover, only the Kleins and the Court have the power to remove the plan administrator. Plan at 42, ln. 9-11. Considering the history between the Kleins and Rapoport, it is highly unlikely that the Kleins will select a plan administrator who is truly disinterested and independent. In fact, Debtors submit that any plan administrator selected by the Kleins is unlikely to protect the best interests of the estate. For example, a plan administrator selected by the Kleins would be highly unlikely to diligently pursue the Klein Litigation. Clearly, the fact that the power to select a plan administrator is solely vested in the Kleins is a blatant conflict of interest.

Second, as previously discussed, the Kleins do not have an allowed claim in this case. Throughout the Disclosure Statement, however, the Kleins assume an inflated allowed claim in the amount of $9,715,869.11, of which, $4,290,869.11 is classified as secured under the Plan. Disclosure Statement at 17-18. As more fully explained below, the amount of the Kleins' claim is highly disputed, and Debtors believe, far less than what the Kleins assert. Rapoport Decl. at ¶ 15. The Kleins' inflation of the amount of their claim, coupled with the Kleins' misrepresentations about the nature of their claim, set forth in detail below, result in an skewed portrayal of the total claims at issue in this case. As a result, the Disclosure Statement fails to give adequate information as to the actual amount of claims in this case.

**B. The Disclosure Statement Cannot Be Approved Because It Contains Numerous False Statements and Unsupported Opinions**

**1. Mischaracterizations of the Klein Litigation**

Perhaps the most blatant falsehoods in the Disclosure Statement appear in the Kleins' description of the Klein Litigation, including the Kleins' assertion that they "prevailed" in the appeal. According to the Disclosure Statement:

> Prior to the litigation and after the litigation had commenced, Mr. Rapoport threatened the Kleins criminally and civilly. Through the use of false statements to the Clark County, Nevada courts, the police, and other individuals, the Alan Rapoport caused Mr. and Mrs. Klein to be removed from 2 Rue Allard, and had Mr. Klein thrown into jail based upon Mr. Rapoport's false representations. Once it became evident that Klein was going to prevail in the litigation, Mr. Rapoport created Shalan Enterprises LLC and several other entities to hide assets or hinder creditors. After creating Shalan Enterprises, Alan Rapoport and his wife proceeded to transfer over 34 properties to Shalan Enterprises as well as a number of other cash investments to different entities.

Disclosure Statement at 4, ln. 25-26 - pg. 5, ln. 1-7.

First, the Kleins have not proven (and cannot prove) that Rapoport used "false statements to the Nevada courts, the police, and other individuals" to have Perry Klein removed from the property located at 2 Rue Allard. In fact, such claim is one of the issues that has been remanded from the Nevada Supreme Court to the trial court. A true and correct copy of the Order of the Nevada Supreme Court is attached to the Rapoport Decl. as Exhibit "A." Rapoport Decl. at ¶ 16. Rapoport vigorously denies that he made any false statements or engaged in any improper conduct in obtaining a temporary protective order to remove Perry Klein from 2 Rue Allard. Rapoport Decl. at ¶ 17. In fact, the Nevada Supreme Court's refusal to affirm the judgment on the Kleins' abuse of power claim is indicative of the weakness of the Kleins' claim.

Notably, the Nevada Supreme Court affirmed the district court's striking of the compensatory and punitive damages awards for the following causes of action: conspiracy to oust, slander per se and libel, and interference with economic advantage. Rapoport Decl. at ¶ 18 and Exhibit A. The Nevada Supreme Court also reduced the compensatory damages award for the

intentional infliction of emotional distress cause of action to just $1,200.00. Rapoport Decl. at ¶ 19 and Exhibit A. In addition, the Nevada Supreme Court reversed the judgment against Rapoport for conversion of a partnership interest. Rapoport Decl. at ¶ 20 and Exhibit A. In fact, the *only* awards of the trial court that were affirmed by the Nevada Supreme Court were for the breach of contract and negligent representation causes of action, for $2,857,800.00 and $250,000.00, respectively. Rapoport Decl. at ¶ 21 and Exhibit A.

Despite the fact that the Nevada Supreme Court substantially reduced the Kleins' judgment against Rapoport from $9,912,800.00 to $3,275,883.67, the Disclosure Statement reads, "[t]he Kleins prevailed on the appeal." Disclosure Statement at 5, ln. 18-21. It is somewhat unbelievable that the Kleins would consider the reversal of nearly 70% of their judgment as "prevailing" on the appeal. Additionally, the Kleins assert that they are entitled to post-judgment pre-petition interest in the amount $1,014,985.44, based on the Nevada state statutory rate of 5.25%. Disclosure Statement at 18, ln. 3-4. Under Ninth Circuit law, however, the "legal rate" of interest is the federal judgment rate. *Onink v. Cardelucci (In re Cardelucci),* 285 F.3d 1231, 1234 (legal rate of interest to which creditor was entitled on its claim, from date that petition was filed, in Chapter 11 case of solvent debtor, was federal judgment, rather than state statutory, rate). Thus, in addition to the obvious inaccuracies in the description of the Kleins' judgment, the interest amount is also highly inflated, as the federal interest rate is currently 0.22%.[2]

Moreover, throughout these cases, the Kleins have alleged that the transfer of the Shalan Properties from Rapoport to Shalan, and the transfer of the Marina del Rey residence to a Qualified Personal Residence Trust, were somehow improper. Yet the Kleins have produced no evidence that the transfers were made for any purpose besides estate planning. Due to the substantive consolidation of the Shalan and Rapoport cases, the allegation by the Kleins that the Debtors

---

[2]    http://www.federalreserve.gov/releases/h15/current/

transferred the Shalan Properties in order to put assets out of reach of creditors is, as the Kleins

have admitted, of no consequence.

### 2. **Misrepresentations Regarding These Bankruptcy Cases**

Without any support whatsoever, the Kleins assert, "[i]t is the belief of the Kleins that Mr.

Rapoport is using this bankruptcy to delay payment as long as he can, thereby jeopardizing all

Creditor's rights." Disclosure Statement at 6, ln 1-2. The Kleins have no basis for such belief, and

in fact, the record of this case shows just the opposite. During the course of these cases, Debtors

have sold three real properties (and are in the process of selling two additional properties), settled

the $1.7 million secured claim of First Bank, objected to claims, resulting in their disallowance, and

continued to manage the Debtors' income-producing residential real properties. Debtors are in

compliance with all of their duties under the Bankruptcy Code and set forth by the Office of the

United States Trustee. Rapoport Decl. at ¶ 22.

Although the Debtors do not dispute that the exclusivity period has run in these cases, the

Kleins' statement that "Debtors had until March 25, 2010, to propose a plan to reorganize but

Debtor did not file a plan," is incorrect and misleading. In fact, the Court **did not set a deadline**

for the Debtors to file a plan in this case, recognizing that the outcome of the Klein Litigation was

highly determinative of the Debtors' reorganization prospects. Thus, the Kleins' insinuation that

the Debtors were somehow delinquent in proposing a chapter 11 plan is improper.

Inappropriately, under the heading "What Creditors and Interest Holders Will Receive

Under the Proposed Plan," the Kleins make one false, unsupported statement after another:

> The Debtor is delaying the case in an effort to not pay creditors. The
> Debtor has failed to list all community assets in his Schedules. Debtor
> has failed to produce documents required by the 2004 exam. Debtors
> administrative fees are excessive and the longer the case goes without a
> plan the greater the administrative expenses. The Debtor has
> fraudulently conveyed assets and is not pursuing collection of those
> assets. The Debtor violated orders from the Nevada State District Court
> with regard to transferring assets. The Debtor is using Estate funds to
> pay for property that he is not required to pay. As a result of dishonesty,
> incompetence, or gross mismanagement of the affairs of the Debtor by

current management and the conflict of interest of the Debtor, the
Proponents believe that the appointment of a Plan Administrator would
be the best interest of the Creditors and the Estate.

Disclosure Statement at 12, ln. 16-25.

Ironically, the Kleins allege in the Disclosure Statement that "Debtors [sic] administrative fees are excessive and the longer the case goes without a plan the greater the administrative expenses." Disclosure Statement, pg. 12, ln. 18-19.  It should be noted that, despite the fact that the Kleins have opposed the majority of Debtors' motions in these cases, the Kleins did not, however, object to the professional fee applications filed in this case.  In fact, the Court has approved all requested professional fees and expenses in this case in full, because such fees and expenses were reasonable, necessary and benefitted the estate.  Thus, the Kleins representation in the Disclosure Statement that administrative fees are "excessive" is disingenuous.

As previously discussed, the Kleins' allegation that "the Debtor is delaying the case in an effort not to pay creditors," is unsupported and untrue.  Rapoport Decl. at ¶ 23.  Rapoport has fully complied with the all of the Kleins' document requests in connection with the 2004 Exam and Motion to Compel.  In addition, there is no support for the statements that Rapoport has failed to list all community assets in his Schedules.  Any assets belonging to Mrs. Rapoport that were not scheduled are not community assets, and are Mrs. Rapoport's separate property.  Rapoport Decl. at ¶ 25.  The Kleins have not cited (and cannot cite) any examples of the Debtors' "using Estate funds to pay for property that he is not required to pay" or "dishonesty, incompetence, or gross mismanagement of the affairs of the Debtor."  These statements, as well as many of the statements in the Disclosure Statement, are clearly nothing more than unfounded, unwarranted opinions.  As such, the Disclosure Statement does not meet the standard for "adequate information" and cannot be approved.  See In re Civitella, 15 B.R. at 208.

C.    **The Plan Is Unconfirmable on its Face, and Thus, the Disclosure Statement Cannot Be Approved**

"It is now well accepted that a court may disapprove of a disclosure statement, even if it provides adequate information about a proposed plan, if the plan could not possibly be confirmed." In re Main Street AC, Inc., 234 B.R. 771, 774-75 (Bankr. N.D. Cal. 1999) (quoting H.R.Rep. No. 95-

595, 95th Cong., 1st Sess. 228 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6187)) (citing *In re Allied Gaming Management, Inc.*, 209 B.R. 201, 202 (Bankr. W.D. La. 1997); *In re Curtis Center Ltd. P'ship*, 195 B.R. 631, 638 (Bankr. E.D. Pa. 1996); *In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992); *In re Bjolmes Realty Trust*, 134 B.R. 1000, 1002 (Bankr. D. Mass. 1991)).  "A clear showing that the plan is not confirmable justifies denial of the sufficiency of the disclosure statement to avoid the cost and delay of a fruitless venture." *S.E.T. Income Props.*, 83 B.R. at 792 (citing *In re Pecht*, 53 B.R. 768, 769-70 (Bankr. E.D. Va. 1985)).  Indeed, "[a]llowing a facially noncomfirmable plan to accompany a disclosure statement is both inadequate disclosure and a misrepresentation." *Dakota Rail*, 104 B.R. at 143 (*citing In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986)).

Here, the Plan is facially defective because, pursuant to section 1129(a)(15) of the Bankruptcy Code, a chapter 11 plan for an individual debtor cannot *both* liquidate all property of the estate *and* distribute all of debtor's disposable income for five years.  According to section 1129(a)(15):

> In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan--
>
> (A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; **or**
>
> (B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

Read literally, section 1129(a)(15) requires that "the value of the property" distributed be equal to the disposable income.  Thus, the requirement is not that the disposable income be contributed directly.  In a case where a debtor has substantial assets that can be liquidated to fund a plan, if the value of those assets equals the projected disposable income, then section

PRINTED ON
RECYCLED PAPER

1129(a)(15)(B) would be satisfied even if no disposable income is distributed.[3]   Therefore, the Kleins' Plan turns section 1129(a)(15) on its head by requiring compliance with <u>both</u> subsections (A) and (B), when the statute clearly only requires one or the other.

In addition to the Klein's misinterpretation of section 1129(a)(15), the Court should also deny confirmation of the Plan, *i.e.* a plan proposed by creditors requiring an individual debtor's contribution of all his disposable income, because it implicates Thirteenth Amendment concerns. The Thirteenth Amendment prohibits involuntary servitude, which includes requiring an individual to work for his creditors.  7-1105 COLLIER ON BANKRUPTCY ¶ 1105.02.   Courts have been sensitive to the issue of involuntary servitude under chapter 11.    *See, e.g.*, *In re Brophy*, 49 B.R. 483, 484 (Bankr. D. Haw. 1985) (chapter 11 case was not intended to be vehicle by which individual debtors could be forced to submit to plan of repayment against their wills); *In re Graham*, 21 B.R. 235, 238 (Bankr. N.D. Iowa 1982) ("On policy grounds, it would be unwise to allow creditors to force a debtor into a repayment plan.  An unwilling debtor is less likely to retain his job or to cooperate in the repayment plan, and more often than not, the plan would be preordained to fail."); and *In re Noonan*, 17 B.R. 793, 798 (Bankr. S.D.N.Y. 1982) ("It has been strongly suggested that judicial compulsion of services would violate the express command of [the Thirteenth] amendment").  Thus, for policy reasons, the Court should not approve a Plan in which an individual debtor (Rapoport) is forced into a repayment plan by creditors, especially considering the history of bad blood between the Debtors and the proponents of the Plan.

---

[3]   *See* Debra Grassgreen, *Individual Chapter 11 Cases After BAPCPA: What Happened to the Fresh Start?* NORTON ANNUAL SURVEY OF BANKRUPTCY LAW 309 (William L. Norton, Jr., ed., 2006).

PRINTED ON
RECYCLED PAPER

1

# IV.

# CONCLUSION

For the reasons set forth herein, Debtors pray that the Court deny approval of the

Disclosure Statement as proposed.

Date:  November 3, 2010              JEFFER MANGELS BUTLER & MITCHELL LLP


                                     By:    /s/ JOSEPH A. EISENBERG
                                            JOSEPH A. EISENBERG P.C.
                                            Attorneys for Consolidated Debtors

PRINTED ON

RECYCLED PAPER

## <u>DECLARATION OF ALAN RAPOPORT</u>

I, ALAN RAPOPORT, declare as follows:

1.      I am one of the consolidated debtors and debtors in possession herein.  I am also a trustee of the Alan and Shelley Rapoport Family Trust, Dated 10/15/99, which is the sole member of SHALAN ENTERPRISES, LLC ("<u>Shalan</u>"), which chapter 11 bankruptcy case was substantively consolidated with my chapter 11 bankruptcy case by the order entered by the Court on March 18, 2010.  Shalan and I are collectively referred to herein as the "<u>Debtors</u>."

2.      I am familiar with each of the facts stated herein, and they are stated of my own personal knowledge.  If called as a witness, I could and would competently testify with respect to the matters set forth herein.  Each of the facts set forth herein are true and correct, to the best of my actual knowledge, information and belief.

3.      Shalan was formed by my wife and me in 2005.  As of Shalan's petition date, November 25, 2009, Shalan owned, managed and leased thirty-four (34) income producing residential real properties located in California and Arizona (the "<u>Shalan Properties</u>").

4.      I filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code on November 30, 2009.

5.      All of the Shalan Properties were previously owned by Rapoport.  For estate planning purposes, each of the Shalan Properties was transferred from Rapoport to Shalan.

6.      I manage the Shalan Properties, and own and manage seven (7) residential real properties located in Nevada and New York.

7.      I have made diligent efforts to sell the Debtors' real properties, despite the depressed real estate market, particularly in Las Vegas, Nevada, where four of my properties are located.

8.      On May 6, 2010, the Kleins conducted the Rule 2004 examination of Debtors (the "<u>2004 Exam</u>").  I voluntarily appeared for his 2004 Exam, despite the fact that the Court did not enter (and still has not entered) an order authorizing the Kleins to take the Debtors' 2004 Exam.  I was examined for a full day, and produced all of the requested documents that were available to me at the time, and were not subject to privilege.  Subsequently, on September 1, 2010, the

PRINTED ON
RECYCLED PAPER

1    Kleins filed a deficient motion to compel production of documents (the "Motion to Compel" [Doc.

2    No. 124 - Shalan]).  In an effort to cooperate, I agreed to produce the documents requested by

3    the Kleins.

4        9.    I produced thousands of pages of bank statements and other requested documents

5    to the Kleins, at great cost to the estate.  On October 21, 2010, I signed a declaration attesting to

6    his full compliance with the Kleins request for production of documents [Doc. No. 149 - Shalan].

7    To date, Debtors have fully complied with the Kleins' document request.

8        10.    Since the filing of the Disclosure Statement, Debtors have made additional progress

9    towards the formulation of a chapter 11 plan.  The Court granted the Debtors' motion to sell two

10    real properties in Las Vegas, Nevada, free and clear of all liens, claims and encumbrances, by the

11    order entered on October 19, 2010 [Doc. No. 148], eliminating over $430,000 in secured debt.

12        11.    I have accepted an offer to purchase an additional Las Vegas property (2777

13    Paradise Road, Las Vegas, NV), and a sale motion will be filed with the Court as soon as the sale is

14    fully documented.

15        12.    I have also accepted an offer to purchase my New York condominium for a

16    purchase price of $1.1 million, which will result in net proceeds to the estate of approximately

17    $800,000.

18        13.    Recently, the Court sustained Debtors' objection to the claim of Sylvia Lissat by the

19    order entered on October 20, 2010 [Doc. No. 77 - Rapoport], resulting in the disallowance of

20    Lissat's claim in its entirety unless, by November 19, 2010, Lissat disgorges the preferential

21    transfer she received.

22        14.    In addition, the Debtors have fully settled, at a discount, the claim of First Bank, a

23    claim which exceeds $1.7 million.  Debtors have prepared, and will file, a motion for approval of

24    that compromise pursuant to Fed. R. Bankr. P. 9019, as soon as First Bank finalizes the form of the

25    settlement agreement.

26        15.    The Kleins do not have an allowed claim in this case.  The amount of the Kleins'

27    claim is highly disputed, and I believe, far less than what the Kleins assert.

28

PRINTED ON

RECYCLED PAPER

16.     The Kleins have given no support for the assertion that I used "false statements to the Nevada courts, the police, and other individuals" to have Perry Klein removed from the property located at 2 Rue Allard.  In fact, such claim is one of the issues that has been remanded from the Nevada Supreme Court to the trial court.  A true and correct copy of the Order of the Nevada Supreme Court is attached hereto as Exhibit "A."

17.     I vigorously deny that he made any false statements or engaged in any improper conduct in obtaining a temporary protective order to remove Perry Klein from 2 Rue Allard.

18.     The Nevada Supreme Court affirmed the district court's striking of the compensatory and punitive damages awards for the following causes of action: conspiracy to oust, slander per se and libel, and interference with economic advantage.

19.     The Nevada Supreme Court also reduced the compensatory damages award for the intentional infliction of emotional distress cause of action to just $1,200.00.

20.     In addition, the Nevada Supreme Court reversed the judgment against me for conversion of a partnership interest.

21.     In fact, the only awards of the trial court that were affirmed by the Nevada Supreme Court were for the breach of contract and negligent representation causes of action, for $2,857,800.00 and $250,000.00, respectively.

22.     During the course of these cases, Debtors have sold three real properties (and are in the process of selling two additional properties), settled the $1.7 million secured claim of First Bank, objected to claims, resulting in their disallowance, and continued to manage the Debtors' income-producing residential real properties.  Debtors are in compliance with all of their duties under the Bankruptcy Code and set forth by the Office of the United States Trustee.

23.     I am not delaying the case in an effort not to pay creditors.

1    24.    I have not failed to list all community assets in his Schedules.  Any assets belonging

2  to Mrs. Rapoport that were not scheduled are not community assets, and are Mrs. Rapoport's

3  separate property.

4    I declare under penalty of perjury under the laws of the United States of America that the

5  foregoing is true and correct and that this declaration is executed this ___ day of November,

6  2010 at Los Angeles, California.

7

8    _____

9    ALAN RAPOPORT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON
RECYCLED PAPER

# IN THE SUPREME COURT OF THE STATE OF NEVADA

PERRY KLEIN AND RITA KLEIN,
Appellants/Cross-Respondents,
  vs.
ALAN RAPOPORT; ALAN AND
SHELLEY RAPOPORT FAMILY TRUST
DATED OCTOBER 15, 1999; ALAN
RAPOPORT AS TRUSTEE AND
SHELLEY RAPOPORT AS TRUSTEE
AND 2 RUE ALLARD, A LIMITED
LIABILITY COMPANY,
Respondents/Cross-Appellants.

No. 47167

**FILED**

MAY 05 2009

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
  DEPUTY CLERK

## ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING

  This is an appeal and cross-appeal from a judgment on a jury verdict and the district court's judgment as a matter of law in a torts, contracts, and partnership action. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge. The parties are familiar with the facts and we do not recount them except as pertinent to our disposition.

  This appeal arose from an action for breach of contract brought against respondent/cross-appellant Alan Rapoport involving the development of property at Lake Las Vegas. When Rapoport sought to have appellants/cross-respondents Perry and Rita Klein removed from the partnership property, the Kleins raised a multitude of tort claims. The jury awarded the Kleins $4,972,800 in compensatory damages and $5,000,000 in punitive damages.

  Thereafter, Rapoport moved for a new trial, which the district court denied. Rapoport also moved for judgment as a matter of law, which the district court granted in part. Pursuant to the district court's ruling,

SUPREME COURT
OF
NEVADA

(O) 1947A

09-11105

EXHIBIT A-19

awards on the following claims were either reduced or eliminated: (1) conspiracy to oust, (2) slander per se, (3) interference with economic advantage, and (4) intentional infliction of emotional distress. However, the district court denied Rapoport's remaining motions for judgment as a matter of law regarding the claims of: (5) breach of contract, (6) negligent misrepresentation, (7) abuse of process, (8) ouster, and (9) conversion of a partnership interest.[1]

On appeal, the Kleins argue that the district court improperly reduced the jury's award of damages. On cross-appeal, Rapoport contends that the district court erred in refusing to grant judgment as a matter of law on the remaining claims. Rapoport also contends that the district court abused its discretion in denying a new trial. We address, in turn, the arguments regarding the district court's grant or denial of judgment as a matter of law for: (1) conspiracy to oust, (2) slander per se and libel,[2] (3) interference with economic advantage, (4) intentional infliction of emotional distress, (5) breach of contract, (6) negligent misrepresentation, (7) abuse of process, (8) ouster, and (9) conversion of a partnership

---

[1]There are some remaining causes of action which Rapoport did not raise in his motion for judgment as a matter of law. Those causes of action are also not disputed here, thus the district court's judgment is affirmed with respect to slander of title, breach of implied covenant of good faith and fair dealing, invasion of privacy, conversion of personal property, and fraudulent conveyance.

[2]While the district court did not grant judgment as a matter of law for the libel claim, the Kleins' argument regarding slander per se is intertwined with the libel claim so we address both together.


EXHIBIT A-20

interest. We then address Rapoport's argument that the district court abused its discretion in denying a new trial.[3]

Standard of review

"Under NRCP 50(a)(1), the district court may grant a motion for judgment as a matter of law if the opposing party 'has failed to prove a sufficient issue for the jury,' so that his claim cannot be maintained under the controlling law." Nelson v. Heer, 123 Nev. ___, ___, 163 P.3d 420, 424 (2007) (quoting NRCP 50(a)(1)). "In applying that standard and deciding whether to grant a motion for judgment as a matter of law, the district court must view the evidence and all inferences in favor of the nonmoving party." Id. "This court applies the same standard on review that is used by the district court." Id. (citing Banks v. Sunrise Hospital, 120 Nev. 822, 839, 102 P.3d 52, 64 (2004)). "A renewed motion for judgment as a matter of law under NRCP 50(b) is subject to the same standard as a motion filed at the close of evidence under NRCP 50(a)." Id. "Thus, the standard of appellate review for an order under either NRCP 50(a) or 50(b) is de novo." Id. at 425.

(1) Conspiracy to oust

The district court determined that damages for conspiracy to oust may not be awarded separate and apart from the damages already awarded for ouster. Consequently, the jury's award of $50,000 in compensatory damages was stricken by the district court. The district

---

[3]Rapoport also argues the punitive damages award is unconstitutionally excessive and will financially decimate him. We do not address this issue because the result of our decision will be a reduction of the punitive damages. We conclude that the resulting $450,000 in punitive damages is not excessive.



SUPREME COURT
OF
NEVADA

(O) 1947A

3

court also struck the $275,000 punitive damages awarded for conspiracy to oust, reasoning that punitive damages can not be awarded when there are no compensatory damages for that cause of action.

The Kleins argue that the district court erred in striking the compensatory and punitive damages for conspiracy to oust. First, the Kleins argue that the district court erred in striking the compensatory damages awarded on their conspiracy to oust claim. The jury found Rapoport liable for ouster and conspiracy to oust. The Kleins claim they suffered economic damages that exceeded the amount of the combined economic damages awarded against Rapoport for ouster and conspiracy to oust. The Kleins argue that because their damages were greater than the award, the district court's action in striking the conspiracy to oust damages negates the jury's intent to apportion the damages between the two causes of action. We disagree.

This court has held that the damages awarded in a civil action are not for the conspiracy itself, but rather for the injury to the plaintiff produced by the specific overt acts. <u>Aldabe v. Adams</u>, 81 Nev. 280, 286, 402 P.2d 34, 37 (1965), <u>overruled by</u> <u>Siragusa v. Brown</u>, 114 Nev. 1384, 971 P.2d 801 (1998). In fact, "'[t]he charge of conspiracy in a civil action is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts.'" <u>Id.</u> at 286-87, 402 P.2d at 37-38 (quoting <u>Rutkin v. Reinfeld</u>, 229 F.2d 248, 252 (2d Cir. 1956). The damages for conspiracy to oust merge with those for ouster and so damages for conspiracy to oust are not awarded independently of ouster. Therefore, the district court properly struck the compensatory damages for conspiracy to oust.


EXHIBIT A-22

Second, the Kleins argue that the district court improperly eliminated the punitive damages award after striking the compensatory damages for conspiracy to oust.[4]  To support their argument, the Kleins rely on <u>Cerminara v. California Hotel and Casino</u>, 104 Nev. 372, 760 P.2d 108 (1988).  We disagree.

In <u>Cerminara</u>, the lower court eliminated the punitive damages award because there were no underlying compensatory damages to support it.  <u>Id.</u> at 376, 760 P.2d at 110.  This court liberally construed the jury verdict form and reinstated the punitive damages.  <u>Id.</u> at 377, 760 P.2d at 110.  In doing so, this court rested its decision on an interpretation of the compensatory award, determining the award compensated the plaintiff for each of his causes of action, and thus, the punitive damages were supported by a compensatory award.  <u>Id.</u>

<u>Cerminara</u> is distinguishable from this case because there was no such ambiguity in the jury verdict form here.  The jury in this case addressed each cause of action separately.  Once the district court had stricken the compensatory damages, punitive damages could not be awarded for that cause of action because punitive damages cannot be awarded in the absence of compensatory damages.  <u>Amoroso Constr. v. Lazovich and Lazovich</u>, 107 Nev. 294, 298, 810 P.2d 775, 777-78 (1991).  Because the compensatory damages award was stricken, the district court correctly eliminated the punitive damages award for conspiracy to oust.

---

[4]The Kleins also raise this argument with regards to slander per se and intentional infliction of emotional distress.  We address this issue in depth only once as the reasoning remains the same for each.

EXHIBIT A-23

As a result, the district court's judgment striking the compensatory and punitive damages award for conspiracy to oust is affirmed.

(2) <u>Slander per se and libel</u>

The district court struck the jury's award of $20,000 in compensatory damages for slander per se. The district court found the damages were duplicative since they arose from the same conduct as the libel claim. The district court also struck the $75,000 punitive damages award associated with slander per se because the compensatory damages award had been stricken.

The Kleins maintain the district court erred in striking the compensatory and punitive damages awarded for slander per se. The Kleins argue that they are entitled to compensatory damages for both slander per se and libel because they are separate causes of action with different elements. For the reasons set forth below, we disagree.

The only difference between libel and slander per se is that libel requires proof of actual damages resulting from a defamatory statement whereas slander per se does not. The claims of libel and slander per se were pleaded as the same cause of action, concerned the same conduct, and alleged the same damages. As a result, we conclude that the libel and slander per se claims were really one cause of action. Here, the Kleins were able to prove actual damages. Therefore, the slander per se award was subsumed by the libel award. Thus, the district court's decision to strike the compensatory damages award for slander per se is affirmed. Moreover, because the compensatory damages award was properly eliminated as to the slander per se claim, the district court was


EXHIBIT A-24

also correct in striking the punitive damages award for that claim. <u>Amoroso</u>, 107 Nev. at 298, 810 P.2d at 777-78.[5]

(3) <u>Interference with economic advantage</u>

The district court found insufficient evidence for the $120,000 in economic damages awarded for interference with economic advantage but confirmed the noneconomic portion of the compensatory damages award. The district court applied the punitive damages cap set forth in NRS 42.005 to each cause of action and reduced the punitive damages award for interference with economic advantage from $1,500,000 to $1,110,000.

The Kleins argue that they provided sufficient evidence of economic damages for the interference with economic advantage cause of action and therefore the district court erred in eliminating that portion of the compensatory damages award. The Kleins claim the economic damages awarded by the jury arose from Rapoport's actions in filing a lis pendens against 6 Via Del Garda, which interfered with the Kleins' professional contacts and prevented the Kleins from developing that property as expected. We disagree.

We conclude that the compensatory damages awarded for the claim of interference with economic advantage are duplicative of the damages awarded for the breach of contract claim because both claims addressed the same injury. <u>See</u> <u>Colorado Environments v. Valley Grading</u>, 105 Nev. 464, 471-72, 779 P.2d 80, 84 (1989) (disapproving of double recovery for the same injury). Therefore, the district court's decision to

---

[5]The $10,000 in compensatory damages and $75,000 in punitive damages awarded for the libel claim are affirmed.




EXHIBIT A-25

strike the $120,000 in economic damages is affirmed and its decision to uphold the $370,000 in noneconomic damages awarded by the jury is reversed. Because that leaves no compensatory damages award, the punitive damages award for this cause of action are reversed. <u>Amoroso</u>, 107 Nev. at 298, 810 P.2d at 777-78.[6]

### (4) Intentional infliction of emotional distress

The district court found insufficient evidence to support the economic portion of the compensatory damages award for intentional infliction of emotional distress and therefore struck the $100,000 award. The district court also struck the $100,000 award for noneconomic damages after determining the emotional distress damages were already contained in the noneconomic awards for the other separate causes of action and thus, the intentional infliction of emotional distress award was duplicative. The district court then struck the $1,250,000 punitive damages award for intentional infliction of emotional distress because the compensatory damages award had been stricken.

In their briefs, the Kleins argued that the district court erred when it struck the compensatory damages awarded for intentional infliction of emotional distress. The Kleins claimed that the noneconomic damages were not duplicative and that this is evidenced by the fact that the jury found liability on certain claims but did not award damages on all of those claims. The Kleins argued this shows the jury carefully awarded

---

[6]Given this decision, we do not address the Kleins' argument regarding the district court's application of NRS 42.005, the punitive damages cap. We address this issue below, with regards to the claim of intentional infliction of emotional distress.

EXHIBIT A-26

damages for each cause of action, making sure not to duplicate damages. We disagree.

During oral argument, the Kleins' counsel conceded that the evidence presented at trial would only support an award of $1,200 in economic damages. We agree that the evidence supports such an award. Accordingly, we conclude that the portion of the district court's judgment striking the compensatory damages award for the intentional infliction of emotional distress is reversed to the extent that an award of $1,200 was appropriate.

Further, the noneconomic damages awarded for intentional infliction of emotional distress were duplicative of the noneconomic damages awarded for the other causes of action. The Kleins were already compensated for their emotional distress through the noneconomic damages awarded for negligent misrepresentation, libel, and slander of title. The injury caused by the intentional infliction of emotional distress is the same emotional distress compensated for by the other noneconomic damages awards, making this award duplicative. The district court's decision striking the noneconomic damages is affirmed. See Colorado Environments, 105 Nev. at 471-72, 779 P.2d at 84.

The district court struck the punitive damages awarded for intentional infliction of emotional distress because there was no longer a compensatory damages award for that cause of action. Having reversed the district court's decision regarding the economic award and concluded that a compensatory damages award of $1,200 was warranted, punitive damages are appropriate.

However, NRS 42.005(1), which contains the punitive damages cap, applies and will reduce the punitive damages awarded for


EXHIBIT A-27

intentional infliction of emotional distress. NRS 42.005(1), which reduces the amount of punitive damages awarded based on the amount of compensatory damages awarded, provides in relevant part:

> [I]n an action for the breach of an obligation . . . the plaintiff, in addition to the compensatory damages, may recover damages for the sake of example and by way of punishing the defendant. [P]unitive damages made pursuant to this section may not exceed:
>
> (a) Three times the amount of compensatory damages awarded to the plaintiff if the amount of compensatory damages is $100,000 or more; or
>
> (b) Three hundred thousand dollars if the amount of compensatory damages awarded to the plaintiff is less than $100,000.

The Kleins argue the punitive damages cap in NRS 42.005 should be applied to the award as a whole, not each individual cause of action. We disagree.

Statutory interpretation is a question of law that this court reviews de novo. Leven v. Frey, 123 Nev. ___, ___, 168 P.3d 712, 714 (2007). We interpret statutes in accordance with their plain meaning and generally do not look beyond the plain language of the statute absent ambiguity. Seput v. Lacayo, 122 Nev. 499, 502, 134 P.3d 733, 735 (2006).

The plain language of NRS 42.005 makes the punitive damages cap applicable to each "breach of an obligation." "It is well established that when a statute's language is plain and unambiguous, and the statute's meaning clear and unmistakable, the courts are not permitted to look beyond the statute for a different or expansive meaning or construction." Destefano v. Berkus, 121 Nev. 627, 629, 119 P.3d 1238, 1239-40 (2005). We conclude that the statute's meaning is clear and unmistakable; the term "breach of an obligation" signifies a single cause of



EXHIBIT A-28

action. Thus, the punitive damages cap applies separately to each of the punitive damages awarded for the individual tort claims.

In this case, the compensatory damages awarded for intentional infliction of emotional distress was less than $100,000 and thus, application of NRS 42.005(1)(b) reduces the punitive damages award for the intentional infliction of emotional distress to $300,000. Accordingly, the judgment is reversed in this respect and the district court is instructed to reduce the punitive damages award to $300,000.

### (5) Breach of contract[7]

Rapoport argues that an improper measure of damages was applied to the breach of contract claim. Rapoport claims the proper measure of damages for the breach of contract claim was profits after expenses, instead of the full sales price for the property, which he contends was the actual measure of damages used. We disagree with Rapoport's contention that an improper measure of damages was used.

Although the Kleins could have sought to specifically enforce the partnership agreement, the parties agreed Rapoport would retain the property and the Kleins would sue for damages. The Kleins were entitled to damages for the breach of the partnership agreement and that included their lost profits after expenses. <u>Jeaness v. Bresnilian</u>, 101 Nev. 536, 539,

---

[7]We note that the parties and the district court treated this as a motion for judgment as a matter of law; however, Rapoport argued before this court as if it was a motion for a new trial. This court reviews a district court's grant or denial of a motion for a new trial under an abuse of discretion standard. <u>Krause Inc. v. Little</u>, 117 Nev. 929, 933, 34 P.3d 566, 569 (2001). Nonetheless, the outcome remains the same as Rapoport has failed to demonstrate the district court abused its discretion, as the proper measure of damages was used.

Supreme Court
of
Nevada

(O) 1947A 

11

EXHIBIT A-29

706 P.2d 143, 145-46 (1985). The record does not support Rapoport's claim that the Kleins were awarded the full sales price for the property. In fact, the Kleins argued for damages based upon a calculation of profits after expenses and presented evidence to the jury accordingly.

Contrary to Rapoport's claim, the proper measure of damages was applied for the breach of contract claim. The damages awarded reflect the Kleins' share of the lost profits after expenses. Therefore, the jury's award of $2,857,800 is affirmed.

### (6) Negligent misrepresentation

Rapoport claims the jury was not properly instructed on negligent misrepresentation and that the elements of the cause of action were not proven. Rapoport argues that because nothing in the jury instruction said that the Kleins' reliance had to be justifiable, Rapoport is entitled to a new trial on negligent misrepresentation. We disagree.

The definition of the tort of negligent misrepresentation is:

> One who, in the course of his business, profession or employment, or in any action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Barmettler v. Reno Air, Inc., 114 Nev. 441, 449, 956 P.2d 1382, 1387 (1998) (citing Bill Stremmel Mtrs. v. First Nat'l Bank, 94 Nev. 131, 134, 575 P.2d 938, 940 (1978)). The Ninth Circuit has stated that "under a theory of negligent misrepresentation, the plaintiff must be an intended beneficiary of the contract. [Their] reliance on the [information] is

EXHIBIT A-30

otherwise not justified." <u>Glenn K. Jackson, Inc., v. Roe</u>, 273 F.3d 1192, 1200 n.3 (9th Cir. 2001).

Here, Jury Instruction No. 40 embodied this principle by requiring the plaintiff to prove, "[t]hat the information was supplied for the guidance of the plaintiff in his business." The instruction requires that the jury find, by a preponderance of the evidence, that the information supplied by the defendant was specifically intended for the plaintiff's use— i.e., the plaintiff was the "intended beneficiary." In this case, the evidence demonstrated that the Kleins were the intended beneficiaries of the partnership agreement and therefore their reliance was justifiable.

Rapoport argues that the Kleins could not have justifiably relied on his statements because he refused to sign any paperwork. This argument fails, however, because justifiable reliance is not affected by the actions of the party who allegedly misrepresented the information, but is governed by the relationship between the two parties. See <u>Glenn K. Jackson, Inc.</u>, 273 F.3d at 1200 n.3.

We therefore conclude that the jury was properly instructed regarding the law of negligent misrepresentation. Because there was no error in the jury instruction, the district court correctly upheld the jury's verdict. Accordingly, the jury's award of $250,000 in compensatory damages for negligent misrepresentation is affirmed.

(7) <u>Abuse of process</u>

Judge Abbatangelo granted Rapoport a temporary order of protection (TPO) against the Kleins. This precipitated the Kleins' removal from the partnership property. Rapoport's repeated attempts to remove the Kleins from the property, culminating in the TPO issued by Judge


EXHIBIT A-31

Abbatangelo, led to the Kleins' multitude of claims in tort.  At trial, testimony by Gene Northup, the realtor for the partnership property, suggested Judge Abbatangelo had a personal relationship with Rapoport. Northup testified he saw Judge Abbatangelo in Rapoport's office at a party held at the partnership property.

Rapoport sought to take Judge Abbatangelo's deposition and the justice court moved for a protective order pursuant to NRCP 26(c) because the majority, if not all, of the anticipated deposition would be directed at the judge's judicial activities.  The discovery commissioner recommended granting the protective order and the district court sustained the recommendation.  Then Rapoport sought to have Judge Abbatangelo testify that he was not at the party and had granted the TPO following normal procedures.  Even though it appears Judge Abbatangelo was willing to testify, the district court did not allow him to testify. Following the trial, the district court denied Rapoport's motion for judgment as a matter of law for the abuse of process claim.  The district court determined the concern over the references to Judge Abbatangelo was overblown.  The district court found the testimony about how a TPO is typically granted was clear and that having Judge Abbatangelo testify would be inappropriate and more prejudicial than not because his testimony would have been severely limited due to the judicial privilege.

Rapoport argues the Kleins failed to prove their abuse of process claim.  Rapoport also argues he was denied the opportunity to defend on this claim because he was not allowed to call Judge Abbatangelo to testify regarding the extent of his relationship with Rapoport.  For the reasons set forth below, we agree with Rapoport's contentions.


EXHIBIT A-32

"[T]his court will not overturn the district court's exclusion of relevant evidence absent an abuse of discretion." <u>Hansen v. Universal Health Servs.</u>, 115 Nev. 24, 27, 974 P.2d 1158, 1160 (1999).

We conclude that Judge Abbatangelo's testimony was relevant and necessary to Rapoport's defense on the abuse of process claim. The testimony was extremely probative, and could have been limited to the sole issue of whether he was at the party in question or had a relationship with Rapoport. Because Judge Abbatangelo was not allowed to testify, Rapoport was unable to defend himself against the Kleins' accusations that the TPO was improperly obtained because Rapoport and the judge were friends.

While it is well settled that judicial proceedings are entitled to a presumption of regularity and any "examination [into the mental process] of a judge would be destructive of judicial responsibility," <u>United States v. Morgan</u>, 313 U.S. 409, 422 (1940), judges are not absolutely immune from subpoenas for oral testimony. Here, Judge Abbatangelo could have testified regarding his relationship with Rapoport without discussing matters within the scope of his adjudicative duties. This is especially true under these circumstances, where there were allegations of impropriety that Judge Abbatangelo could, and was willing to, dispel with his testimony.

Accordingly, we conclude that the district court abused its discretion by excluding the judge's testimony entirely. Judge Abbantangelo should have been allowed to testify regarding his personal relationship, or lack there of, with Rapoport. The claim of abuse of process is therefore reversed and remanded for a new trial in which Judge


EXHIBIT A-33

Abbatangelo should be permitted to testify for the limited purpose of explaining his relationship with Rapoport.

(8) <u>Ouster</u>

Rapoport argues the Kleins failed to prove the elements of ouster. Rapoport contends the jury was either misinstructed or manifestly disregarded the district court's instruction regarding ouster, resulting in the need for a new trial on the issue. Rapoport argues the Kleins failed to demonstrate that they were entitled to any damages at all on this claim because the parties' agreement did not entitle them to live in or possess the property. Rapoport argues the Kleins were only entitled to share in the profits from the sale. We agree.

For claims relating to insufficiency of evidence the standard of review is whether substantial evidence supports the verdict. <u>Taylor v. Thunder</u>, 116 Nev. 968, 974, 13 P.3d 43, 46 (2000). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." <u>Id. (internal quotations and citations omitted).</u> If there is conflicting evidence this court is not free to weigh the evidence; instead, "all inferences must be drawn in favor of the prevailing party." <u>Smith v. Timm</u>, 96 Nev. 197, 202, 606 P.2d 530, 532 (1980).

"Ouster occurs when a cotenant obtains sole possession of the land that is adverse to the other cotenants . . . ." <u>Yakavonis v. Tilton</u>, 968 P.2d 908, 908-09 (Wash. Ct. App. 1998). Therefore, to demonstrate ouster the claimant must show that he has a right to possess a piece of property and an inability to possess that property because of the actions of another party. Thus, the Kleins must show, through partnership law or their agreement with Rapoport, that a term of the partnership included the right to possess and reside on the property.

SUPREME COURT
OF
NEVADA

(O) 1947A 

16

EXHIBIT A-34

NRS 87.240(1) states the extent of the property rights of partners include "his rights in specific partnership property." In <u>State v. Elsbury</u> this court held that right "meant simply that a partner . . . has an equal right with his copartners to use or possess any partnership property for any proper partnership purpose." <u>State v. Elsbury</u>, 63 Nev. 463, 466, 175 P.2d 430, 432 (1946). Although the Kleins have a right to use the property for a proper partnership purpose, they "cannot otherwise possess [the property] without the consent of [their partner]." <u>Id.</u>

The Kleins failed to present substantial evidence that they were entitled to live on or possess the property. While partnership law does provide a partner with the right to possess the partnership property for a proper partnership purpose, the Kleins presented no evidence that they were living on the property for a partnership purpose. Instead, the Kleins and Rapoports were all living on the partnership property and using it as a private residence. The Kleins were required to provide evidence that they were living on the property for a partnership purpose or that their partnership agreement with Rapoport included the right to live on or possess the partnership property. The Kleins also failed to provide substantial evidence that their partnership agreement allowed them to live on the property. Because the Kleins failed to present substantial evidence of their right to possess the property, they have failed to prove the elements of ouster. Therefore, judgment for the claim of ouster is reversed and remanded for a new trial.

(9) <u>Conversion of a partnership interest</u>

Rapoport argues that even though a partnership interest entitles a partner to "his share of the profits and surplus, and the same is

SUPREME COURT
OF
NEVADA

(O) 1947A 

17

EXHIBIT A-35

personal property," the underlying partnership property itself cannot be converted. NRS 87.260. We agree.

NRS 87.240 provides, "[t]he property rights of a partner are: 1. [h]is rights in specific partnership property; 2. [h]is interest in the partnership; and 3. [h]is right to participate in the management." NRS 87.260 goes on to state "[a] partner's interest in the partnership is his share of the profits and surplus, and the same is personal property." This court has clarified that "[a] partner has no individual property in any specific assets of the [partnership]." Elsbury, 63 Nev. at 468, 175 P.2d at 433.

It is clear from this court's jurisprudence that the only personal property the Kleins owned in regards to the partnership was the profits and surplus from the property, not the physical property itself, and therefore Rapoport could not convert ownership of the property. Therefore, the judgment with respect to the claim of conversion of a partnership interest is reversed.

Rapoport's motion for a new trial

Rapoport is seeking a new trial, claiming the jury's verdict was based on passion and prejudice and was excessive.[8] We conclude that this claim is without merit.

---

[8]Rapoport also argues his defense counsel had an unwaivable conflict of interest which rendered counsel ineffective. However, there is no ineffective assistance of counsel claim in a civil appeal. See e.g., Sanjines v. Ortwein and Assoc., 984 S.W.2d 907, 910 (Tenn. 1998) (stating that ineffective assistance of counsel arises in context of a criminal proceeding). Therefore, we do not address this argument.


EXHIBIT A-36

This court reviews a district court's grant or denial of a motion for a new trial under an abuse of discretion standard. Krause Inc. v. Little, 117 Nev. 929, 933, 34 P.3d 566, 569 (2001). A court is not justified in granting a new trial on the grounds of excessive damages, unless the verdict is "so flagrantly improper as to indicate passion, prejudice or corruption in the jury." Stackiewicz v. Nissan Motor Corp., 100 Nev. 443, 454, 686 P.2d 925, 932 (1984). "The mere fact that a verdict is large is not itself indicative of passion and prejudice." Hazelwood v. Harrah's, 109 Nev. 1005, 1010, 862 P.2d 1189, 1192 (1993).

The district court determined there was not sufficient merit in the motion to grant a new trial. We agree. In this case, the verdict was not flagrantly improper and the size of the verdict is not enough to indicate passion and prejudice. Therefore, the district court did not abuse its discretion in denying the motion for a new trial. Accordingly, we

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART and REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas


EXHIBIT A-37

cc:    Hon. Douglas W. Herndon, District Judge
        Lester H. Berkson, Settlement Judge
        David J. Winterton & Associates, Ltd.
        Lewis & Roca, LLP/Las Vegas
        Eighth District Court Clerk

EXHIBIT A-38

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  1900 Avenue of the Stars, Seventh Floor, Los Angeles, CA 90067-4308

A true and correct copy of the foregoing document described as ***Objection Of Debtors To Disclosure Statement Filed By Perry And Rita Klein; Memorandum Of Points And Authorities; Declaration Of Alan Rapoport*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ***November 3, 2010***, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On ***November 3, 2010,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

**SERVED BY U.S. MAIL**:
Honorable Peter H. Carroll
United States Bankruptcy Court - Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1534 / Courtroom 1539
Los Angeles, CA 90012

☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***November 3, 2010,*** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

- David Winterton    david@davidwinterton.com

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 3, 2010 | Claudean Brandon | |
|---|---|---|
| _Date_ | _Type Name_ | _Signature_ |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_August 2010_                                                                **F 9013-3.1.PROOF.SERVICE**

**I.**  <u>**TO BE SERVED BY THE COURT VIA NEF**</u>**:**

- Robert D Bass    rbass@greenbass.com
- Russell Clementson    russell.clementson@usdoj.gov
- Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com
- Caroline Djang    crd@jmbm.com
- Joseph A Eisenberg    jae@jmbm.com
- Thomas M Geher    tmg@jmbm.com
- Jeffrey J Hagen    hagenlaw@earthlink.net
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- Charles Liu    cliu@mrllp.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- David J Williams    dwilliams@mrllp.com


**III.**  <u>**SERVED BY EMAIL**</u>**:**

- Anne W Hamann    ahamann@piteduncan.com, ecfcacb@piteduncan.com
- Erin L Laney    ecfcacb@piteduncan.com
- Steven M Lawrence    generalmailaswlawoffice.com@alvaradoca.com
- Christopher M McDermott    ecfcacb@piteduncan.com
- Brian A Paino    ecfcacb@piteduncan.com
- Darren J Welsh    darren@dwelshlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.