Leslie A. Cohen, Esq. (SBN: 93698)
leslie@lesliecohenlaw.com
J'aime K. Williams Esq. (SBN 261148)
jaime@lesliecohenlaw.com
LESLIE COHEN LAW, PC
506 Santa Monica Blvd., Suite 200
Santa Monica, CA 90401
Telephone:  (310) 394-5900
Facsimile:  (310) 394-9280

Attorneys for Perry & Rita Klein

David J. Winterton Esq.
Nevada Bar No. 004142
DAVID J. WINTERTON & ASSOCIATES LTD.
211 N. Buffalo Dr., Suite A
Las Vegas, Nevada 89145
Phone: (702) 363-0317
Facsimile:(702)363-1630

Co-counsel for Perry and Rita Klein

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

In re

SHALAN ENTERPRISES, LLC
Substantially consolidated with
Alan Rapoport,

    Debtor.

☐ This pleading affect Shalan only
☐ This pleading affect Rapoport only
☒ This pleading affects both Shalan
   and Rapoport

Case No.: 2:09-bk-43499-PC
Case No.: 2:09-bk-43263-PC
Chapter 11

**NOTICE OF MOTION AND MOTION TO ESTIMATE KLEINS' CLAIM FOR VOTING PURPOSES**

Date: December 8, 2010
Time: 9:30
Courtroom: 1539

**TO THE HONORABLE PETER CARROLL, UNITED STATES BANKRUTPCY JUDGE;**

**SHALAN ENTERPRISES LLC, ALAN RAPOPORT AND THEIR ATTORNEYS OF**

**RECORD:**

  **PLEASE TAKE NOTICE THAT** on December 8, 2010 at 9:30 a.m. in Courtroom 1539

located at 255 E . Temple Street, Los Angeles, California, Perry and Rita Klein (the "Kleins") shall

and hereby do move (the "Motion") the Court for an order  approving the estimate of their claim

for voting purposes in the above-captioned  Chapter 11 bankruptcy cases.

  The Motion is based upon this notice, the Motion, the Declaration of David Winterton

attached thereto and the exhibits attached thereto, and evidence to be submitted at the hearing on

the Motion.

  **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013(f),

any opposition to the Motion must be in writing and must be filed with the Bankruptcy Court and

served on the Kleins' counsel at the address set forth above no later than fourteen (14) calendar

days before the hearing.   Failure to file a written opposition may be treated by the Court as consent

to the granting of the Motion.


Dated November 10, 2010     DAVID J. WINTERTON & ASSOC. LTD.

           By: /s/ David J. Winterton Esq.
            David J. Winterton Esq.
            Attorney for Perry and Rita Klein

LESLIE COHEN ESQ.
California Bar No.
LESLIE COHEN LAW
506 Santa Monica Blvd., Suite 200
Santa Monica, CA 90401
Phone: (310) 394-5900
Facsimile: (310) 394-9280
Attorney for Perry and Rita Klein

DAVID J. WINTERTON ESQ.
Nevada Bar No. 004142
DAVID J. WINTERTON & ASSOCIATES LTD.
211 N. Buffalo Dr., Suite A
Las Vegas, Nevada 89145
Phone: (702) 363-0317
Facsimile:(702)363-1630
Co-counsel for Perry and Rita Klein
david@davidwinterton.com

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| In re: | Case No.    2:09-bk-43263-RE |
|---|---|
| SHALAN ENTERPRISES, LLC<br>Substantially consolidated with<br>Alan Rapoport, | Chapter 11 |
| Debtor | DATE:"F gego dgt"; ."4232<br>TIME:"; 52"c0 0<br>COURTROOM: 1539, 255 East Temple Street,<br>Los Angeles, CA 90012 |
| ☐ This pleading affect Shalan only<br>☐ This pleading affect Rapoport only<br>☒ This pleading affects both Shalan<br>and Rapoport | |

## MOTION TO ESTIMATE KLEINS' CLAIM FOR VOTING PURPOSES

COMES NOW creditors Klein, by and through their counsel of record, and hereby move to estimate their claim for purposes of voting on the plan. This motion is made pursuant to Rule 3018(a), other authorities cited herein, and the attached declarations and documents, as follows:

A. **Statement of Facts**

1. Kleins wish to vote for the plan for their unsecured and secured claims.

2. In April of 2006, Kleins obtained a $9,972,800.00 verdict against Rapoport. Exhibit B at 1.

3. The Nevada Supreme Court affirmed in part, reversed in part, and remanded in part. Exhibit B. The court affirmed $3,275,883.67 in favor of Klein.

1

4.   The affirmed portion of the judgment with interest has risen to $4,431,417.98.  See, Exhibit C.

5.   On March 17, 2010, Kleins' filed their proof of claim in the amount of $9,715,869.11–the secured portion is $4,290,869.11, and the unsecured portion is $5,425,000.00.  Claim 7-1.

6.   On May 28, 2010 Rapoport filed an objection to Kleins' claim which disputed the remanded $5,425,000.00 portion of the claim.  Docket No. 80 at 5.

7.   Relief from the automatic stay was granted to liquidate the remanded claim.  Docket No. 114.

8.   On October 6, 2010, Kleins filed a Disclosure Statement and Plan.  Docket 138 and 139.

9.   The hearing on the adequacy of the Disclosure Statement is set for November 17, 2010.

10.  Kleins are secured in the following properties, with Debtor valuing the property as follows:  See Docket 33 (Shalan Enterprises).

| Property Address | Value | Encumbrance | Kleins' Equity |
|---|---|---|---|
| 5834 Cape Horn | $460,000.00 | (1st) First Bank, $1,680,494.04, cross-collateralized<br>(2nd) Kleins, $4,290,869.11, cross-collateralized | $ 0.00 |
| 552 Highview St. | $480,000.00 | (1st) Wells Fargo Bank, $41,936.13<br>(2nd) Kleins, $4,290,869.11, cross-collateralized | $ 438,063.87 |
| 27312 Pinavette | $480,000.00 | (1st) GMAC Mortgage, $65,893.26<br>(2nd) Kleins, $4,290,869.11, cross-collateralized | $ 414,106.74 |
| 5645 Slicers Circle | $480,000.00 | (1st) GMAC Mortgage, $72,717.14<br>(2nd) Kleins, $4,290,869.11, cross-collateralized | $ 407,282.86 |
| 21981 Sundowners | $480,000.00 | (1st) Wells Fargo Home Mortgage, $55,833.23<br>(2nd) Kleins, $4,290,869.11, cross-collateralized | $ 424,166.77 |
| 166 Walter Cir. | $460,000.00 | (1st) Wells Fargo Bank, $81,102.89<br>(2nd) Kleins, $4,290,869.11, cross-collateralized | $ 378,898.11 |
| 2 Rue Allard[1] | 3,500,000.00 | (1st) CitiMortgage, $1,434,598.38<br>(2nd) Kleins, $4,290,869.11, cross-collateralized | $ 2,065,401.62 |
| **Total** | | | $ 4,127,919.97 |

11.  Kleins dispute the value of 2 Rue Allard as the property has been damaged.  See, Adversarial Case, 2:09-BK-43499-SB, Docket 1 ¶34.

12.  With interest, Kleins Judgment has risen to $4,431,417.98.  See, Exhibit C.

---

[1]The Debtor lists the value of 2 Rue Allard at $4,000,000.00, however, as discussed herein, the Debtor allowed a realtor to cause $500,000.00 of damage to 2 Rue Allard.

1    13. Hence, with Debtor's valuation, the current undisputed portion of Kleins claim leaves

2        $303,498.00 as unsecured ($4,431,417.98  -  $4,127,919.97 = $303,498.00).

3    B.    **Points and Authorities**

4        "Temporary allowance" of the claim under Bankruptcy Rule 3018(a) is a measure short of

5    "estimation" that would adequately enable Kleins' judgment to be taken into account for purposes of

6    moving forward with a plan of reorganization.    In re Bellucci, 119 B.R. 763, 778 (Bankr. E.D. Cal.

7    1990).

8        The holder of a claim to which an objection has been filed may seek to have the claim temporarily

9    allowed pursuant to Bankruptcy Rule 3(a).  Notwithstanding objection to a claim or interest, the

10   court after notice and hearing may temporarily allow the claim or interest in an amount which the court

11   deems proper for the purpose of accepting or rejecting the plan.  Id., see also, In re Marin Town Center,

12   142 B.R. 374, 378 (N.D. Cal. 1992).

13       Notwithstanding objection to a claim or interest, the court after notice and hearing may
         temporarily allow the claim or interest in an amount which the court deems proper for the
14       purpose of accepting or rejecting a plan.

15   Bankr. R. 3018(a). In this manner, a creditor whose claim is not otherwise "deemed allowed" under 11

16   U.S.C. § 502(a) may participate in the reorganization.  Belluci at 778.    A motion is required to obtain

17   temporary allowance of a claim, and may be made by either the claimant or another party in interest.    Id.

18       Because temporary allowance order under Fed. R. Bankr. P 3018(a) only arises if there is objection

19   to claim, burden of proof is on claimant to present sufficient evidence that claimant has colorable claim

20   capable of temporary evaluation.  Armstrong v Rushton (In re Armstrong), 292 BR 678 (2003, BAP10).

21       1.    **The Court Should Allow the Undisputed Portion of Klein's Claim at It's Value**

22       Only a portion of Kleins' claim is disputed.   The Nevada Supreme Court affirmed $3,275,883.67 in

23   favor of Klein.  With interest, that claim is equal to $4,431,417.98.   The Debtor did not dispute the

24   portion of Kleins claim that was affirmed by the Supreme Court.  Accordingly, this court ought to begin

25   its estimation of Kleins' claim by allowing a claim equal to $4,431,417.98 for voting purposes.

26       2.    **Estimation of the Disputed Portion of Kleins' Claim.**

27       a.    **A Portion of Klein's Undisputed Claim Is Unsecured If 2 Rue Allard is Valued Less
              than the Scheduled Amount**

28

3

1    The value of the unencumbered security in the Debtor's schedules is $4,127,919.97.  The Debtor

2    values 2 Rue Allard at $4,000,000.00.  Docket 33.  Since the bankruptcy filing, Rapoport claims that his

3    realtor caused $500,000.00 in property damage to 2 Rue Allard.  See, Adversarial Case 2:10-ap-02122-

4    PC, Docket 1, at ¶34.  Accordingly, Kleins security interest in 2 Rue Allard, has dropped by

5    $500,000.00 to $1,565,401.00.  The portion of the undisputed claim which is unsecured is $303,498.00

6    ($4,431,417.98  -  $4,127,919.97 = $303,498.00).

7        b.    **The Disputed Portion of the Claim.**

8    The Debtors' dispute, the remanded portion of Klein's claim.  Docket 90.  The remanded issues

9    center around Rapoport's knowledge of the Kleins' partnership interest, Rapoport's abuse of the Nevada

10   court system, Rapoport's ouster of Kleins, and Rapoport's infliction of emotional distress on Kleins.

11   Exhibit B.  The following facts, bearing citations to the appellate record, support that the disputed

12   portion of Kleins' claim could be estimated at $5,425,000.00.  Exhibit A.

13       c.    **Klein and Rapoport's Were Business Partners**

14   The Rapoport and Klein partnership's business model was to develop three projects at a time. 8

15   App. 1706.  Klein found 2 Rue Allard wherein the next three years Klein went on and off title while he

16   developed the property. 13 App. 2780-2809. After completion of 2 Rue Allard, the parties started

17   development of 4 Rue Allard. 8 App. 1711, 102, 5-23.  In September 2003,  the Kleins moved into 2

18   Rue Allard with their personal property.  8 App. 1712, at 106-107: 20-10.

19   In late 2003, the partnership dispute escalated when Rapoport did not put Klein back on title to 2

20   Rue Allard and refused to sign documents protecting Klein's interest. 13 App. Ex. 211.  Early December

21   2003, the parties held a recorded meeting. 13 App. Ex. 211.  At the meeting, Rapoport reassured Klein

22   that they were partners and that he would have no problem proving his case in a lawsuit. 13 App. Ex.

23   211, 11:16 to 11:25.  Rapoport further reassured Klein of his ownership interest in 2 Rue Allard by

24   representing, "quote, unquote, do we own this house together?", wherein Klein responded, "Yes." 13

25   App. Ex. 211, 9:11.  Of  4 Rue Allard, Rapoport assured Klein, "Quote, unquote, do we own the lot next

26   door together?" wherein Klein responded "Yes."  13 App. Ex. 211, 9:13. Rapoport continued, "I just

27   don't understand why you think you don't have rights.  You have every single right.  Everybody knows

28   that we did this.  Does Gene [Northup] know that we're doing this?  I mean, I want the world to know

4

this." 13 App. Ex. 211, 11:35. Rapoport plainly admitted Kleins ownership interest and that they had

"every single right" to the partnership. 13 App. Ex. 211, 9:13.   Despite Rapoport's knowledge,

Rapoport unlawful attempted to take Kleins interest.

### (1)   False Representation that Kleins Were Construction Workers

Rapoport attempted and failed at unlawful self-help eviction.  8 App. 1714, 114-115, 119-120, 15-

5. After Rapoport's self-help lockout failed, Rapoport falsely represented that the Kleins never were

owners of 2 Rue Allard. 9 App. 1832, 32-33, 22-3.  Rapoport also falsely represented to the Lake Las

Vegas community and police that the Kleins were "construction workers" who just appeared in 2 Rue

Allard without his permission. 9 App. 1832, 32-33: 22-3.

### (2)   Henderson Summary Eviction Attempt

On December 22, 2003, Rapoport attempted to summarily evict Kleins from 2 Rue Allard.  13 App.

2816-2817.  Despite his actual knowledge of the partnership and Kleins interest, Rapoport falsely

represented to the Court that the Kleins were "squatters" who moved into 2 Rue Allard. 13 App. 2816.

Rapoport also falsely claimed the Kleins were to be in the house for two weeks. 13 App. 2816.   The

Henderson Justice Court denied the eviction. 13 App. 2819.

### (3)   Alan Rapoport's Criminal Threat to Kleins

Angry at the Kleins for asserting their rights, Rapoport threatened Kleins. 13 App. Ex. 207.

Rapoport, "I am going to take this all the way, there is no offer on the table anymore, I'm going civil and

criminal . . ." 13 App. Ex. 207. "Do yourself a favor and do your best to protect yourself, build a big

wall, because insulting and bringing outsiders in, big mistake." 13 App. Ex. 207.

### (4)   District Court Order Allowing  Kleins to Stay in 2 Rue Allard

Rapoport immediately filed a Motion for Summary Judgment in the District Court on order

shortening time. 13 App 2827-2828.  The District Court properly denied the Motion and entered an order

allowing the Kleins to stay in possession of the 2 Rue Allard. 13 App. 2871-2872.

### (5)   Alan Rapoport Tied Up Kleins' Non-Partnership Property

To harm the Kleins ability to develop Lake Las Vegas, Rapoport intentionally dragged non-

partnership real property commonly known as 6 Via Del Garda into the lawsuit. 8 App.1744, 85-86: 7-5.

Rapoport knew Kleins were very involved in the development of Lake Las Vegas.  8 App. 1783, 125-

5

1    126: 24-3. Rapoport knew the Kleins separately owned 6 Via Del Garda.    Rapoport filed lis pendens

2    and admitted he did so as a retaliatory act.    8 App. 1787, 140-141:23-1.

3                    (6)    **Henderson Temporary Protective Order**

4        Rapoport resorted to fabricating events to establish police reports for a TPO.    Rapoport knew a

5    police report must be filed prior to completing the application for the protective order.    9 App. 1842, 71-

6    72: 25-2.    On February 3, 2003, Rapoport and others came at Klein with cue balls in their hands,

7    threatening Klein, and looking for an altercation. 8 App. 1728, 18-19:16-24.    Klein, Rapoport and Fields

8    filled out police incident reports. 13 App. 2829-2833.    That night, Rapoport prepared typed applications

9    for Temporary Protective Orders alleging the Kleins were mere invited guests who were only to stay for

10    10 days.    13 App. 2834-35.    He filled out the application under penalty of perjury, but at trial, Rapoport

11    admitted to the jury that he knew the Kleins were not invited guests. 9 App. 1842, 73-74, 13-4.    At trial,

12    Rapoport further admitted that he knew that Rita Klein did not engage in any violence. 9 App. 1842, 77-

13    78:15-8.

14        Henderson Justice Court denied the application for the TPOs finding that "the conduct alleged to

15    have been committed by [Kleins] did not fit the definition of 'stalking' or 'harassment' as defined by

16    Nevada law," and referred the matter back to District Court.    13 App. 2843-2846.

17                    (7)    **Rapoport Parading Around 2 Rue Allard Naked in Front of Rita Klein**

18        On February 5, Rapoport walked up to Rita Klein in the home completely naked, and told her that

19    she should leave the home. 9 App. 2016, 203-204.    This outrageous conduct embarrassed and

20    humiliated Rita Klein. 9 App. 2016, 204:7-9.

21                    (8)    **Las Vegas Temporary Protective Order**

22        Rapoport found out that his request for the TPO was denied on February 4, 2003,  at 5:30 p.m. 9

23    App. 1843, 78, 5-8.  Without further altercation, on February 6, Rapoport submitted new TPO

24    applications to the  Las Vegas Justice Court. 13 App. 2850-2856.  The applications nearly mirrored the

25    Henderson applications. 13 App. 2850-2856.  Rapoport, however, falsely swore that he needed

26    protection at a Las Vegas property known as, 2750 Maryland Pkwy. 13 App. 2852 and 2856.  At trial

27    Rapoport tried  to justify his false representation by testifying he had an office  at 2750 Maryland Pkwy,

28    visited the tenant often, and visited the location approximately 50 times.  9 App. 1844, 81-82, 5-19.

                                    6

1   Klein, however, called the only tenant at the property since 1986 to testify. 9 App. 1865-1866, 166-68.

2   Turns out, Rapoport's alleged "office" consisted of only two-by-fours since 1992 and only homeless

3   people occupied the building. 9 App. 1866, 167 2-8.  The tenant also testified that he did not know,

4   hadn't met, or seen Alan Rapoport.  9 App. 1867, 172:1-21.

5       Knowing the TPO application was false, Rapoport had Sibley processed the applications directly

6   through local Justice Court Judge Abbatangelo. 9 App. 1913, 84:13-25.   Sibley made direct contact with

7   Abbatangelo's campaign manager and Abbatangelo regarding the TPOs. 9 App. 1913, 85-86:9-1.

8   Abbatangelo granted Rapoport's protective orders.  13 App. 2847-2848; 2857-2858.    However, the

9   protective order against Rita Klein was granted 24 minutes before the Application was presented to the

10  court. See 13 App. 2847 and 2854.

11          (9)    **Arrest of Perry Klein**

12      After Sibley channeled the TPO through the Las Vegas Justice Court, he served the Kleins.  8 App.

13  1730, 27:13-14.  Kleins were forced to quickly gather some personal belongings and leave 2 Rue Allard.

14  8 App. 1730, 28-29.  Kleins locked their room, business papers, personal financial papers, and their

15  personal belongings. 8 App. 1730, 29; 8 App 1731, 1-25.   Police instructed Rapoport not to touch

16  Kleins' property.  8 App. 1731, 31:12-13.

17      After leaving, Rita Klein realized that she had left her medication at 2 Rue Allard. 8 App. 1732,

18  34:16-24.  Klein returned to 2 Rue Allard. 8 App. 1732, 36:12-20.   Kleins' room was unlocked, and

19  their personal property had been rifled through. 8 App. 1732, 37:5-17.  The  police were called wherein

20  Klein was cuffed, arrested and thrown into jail. 8 App. 1733, 38:16-24.  Klein's arrest in front of his

21  neighbors and caused great humiliation. 8 App. 1733, 38:16-24.

22      The following Monday, the District Court  allowed the Kleins back in the property. 13 App. Ex.

23  194. After the hearing, the Kleins were notified that Abbatangelo was holding a hearing.  8 App. 1735,

24  46:18-20.  At the hearing, Abbatangelo's campaign manager was sitting on the bench. 8 App. 1735,

25  47:5-7.  The court allowed Rapoport to have a party planned the next day at 2 Rue Allard, and Kleins

26  were temporarily excluded from the property.  8 App. 1735, 49:3-14. After the party, Klein could retake

27  2 Rue Allard.  8 App. 1735, 49:3-14.  While leaving the courthouse Klein witnessed  Rapoport, Sibley

28  and the judge's campaign manager high-fiving.  8 App. 1737, 55:5-22.

1   (10)   **Kleins Personal Property**

2   When the Kleins reentered the property, Rita Klein's car had been vandalized, the locked business

3   papers were in the garbage can, $1,000 of cash was missing, and their financial papers were missing.  8

4   App. 1736, 51:7-21.  Later, Rapoport had possession of Kleins' confidential financial papers and showed

5   it to third parties. 9 App. 1855, 126:14-16.  Rapoport responded that it was too bad for the Kleins as they

6   were supposed to get out. 9 App.1856, 127:2-4.

7   (11)   **Rapoport's Party**

8   The day after the Abbatangelo hearing,  February 11, 2004, Rapoport held his party and Klein

9   stayed away from 2 Rue Allard. 8 App. 1736, 52:12-17; 13 App. 2821. However, legal documents were

10  faxed from 2 Rue Allard to the Abbatangelo's court the night of the party. See 13 App. 2877-2882; 9

11  App. 1847:93-94, 21-14.

12  (12)   **Rapoport Obtains Sole Possession of Partnership Property**

13  After Rapoport's misrepresentations and ex-parte communication, Judge Abbatangelo kicked

14  Kleins out 2 Rue Allard and the Kleins were not allowed to reenter the property other than to retrieve

15  personal belongings. 13 App. 2883; 9 App. 1856, 128: 7-14; 8 App. 1736, 50-52.  With the Kleins

16  removed,  Rapoport took exclusive possession of the property, maintained he was the sole owner of 2

17  Rue Allard, and that the Kleins were entitled to nothing. 8 App. 1801, 196-197:17-9.

18  3.  **On Remand**

19      a.   **Abuse of Process**

20  Prior to trial, Kleins attempted to depose Abbatangelo.  Exhibit D.  Abbatangelo asserted judicial

21  privilege and prevented Kleins from deposing him.   Exhibit D.  At trial, Rapoport attempted to call

22  Abbatangelo which was not permitted.  Exhibit B at 15.  The Supreme Court remanded and ruled that

23  "Judge Abbatangelo should have been allowed to testify regarding his personal relationship, or lack there

24  of [sic], with Rapoport."  Exhibit B at 15.

25  Abbatangelo's testimony, however, will not help Rapoport defend his abuses of Nevada courts.

26  Abbatangelo is a scandal-laden judge, who among other scandals, is convicted of abusing his wife.

27  Exhibit A.  Abbatangelo recently lost his re-election bid according to the unofficial results.  Exhibit A.

28  Rapoport's own abuses cannot be explained by Abbatangelo.  Rapoport's abuses include that (1) swore

8

1 out false affidavits to the Henderson Justice court, (2) swore out false summary judgment affidavits to

2 the District Court, (3) caused Perry Klein to be jailed on false allegations, and (4) submitted false

3 affidavits to Abbatangelo, among others.  These are Rapoport's doings.   Klein, and their lawyer's,

4 defended each of these abuses, and the jury awarded Kleins $750,000.00 in compensatory damages.

5      Abbatangelo's testimony will likely add to Kleins damages.  Abbatangelo will either admit or deny

6 knowledge of Rapoport's scheme.  If admitted, Rapoport's unlawful scheme will be revealed.  If denied,

7 Abbatangelo can only assert that he evicted Kleins based on the evidence Rapoport provided.  Rapoport,

8 however, has already admitted the falsity of the evidence.  Judge Herndon, the trial judge, stated if Judge

9 Abbatangelo was cross examined it would be far more prejudicial for Rapoport because the judicial

10 privilege would have to be invoked before the jury.  11 App. 2422.

11      At trial, the jury awarded $750,000.00 in compensatory damages, and $1,000,000.00 in punitive

12 damages for the Abuse of Process Claim.  Exhibit E at 921 and 1040.  The remanded damages could

13 exceed the 1.75 million mark.[2]  Kleins ask the court to estimate the claim at the same level that the prior

14 jury awarded, $1,750,000.00.

15           b.   **Ouster**

16      Kleins were ousted from 2 Rue Allard.  The Supreme Court remanded to allow Kleins to

17 demonstrate that Kleins lived in the property for a partnership purpose.  Exhibit B at 16.  One purpose

18 was to pay down the mortgage.  Rapoport asserted that the value of Kleins rental was $15,000.00 a

19 month.  Exhibit F (Tr. Exhibit 79).  Klein was dispossessed of the property for twenty-six months.

20 Economic damages which are directly associated with Rapoport's exclusive possession of 2 Rue Allard,

21 without ancillary damages, are easily equal to $390,000.00. A jury could award non-economic and

22 punitive damages which far exceed the damages that the first jury awarded, or $1,075,000.00.[3]   Kleins

23 ask the court to estimate the claim at the verdict amount of $1,075,000.00.

24 _____

25      [2]      $750,000.00          Compensatory Damages
26      x3    $2,250,000.00          Punitive Damages

27      [3]      $390,000.00          Economic Damages
      x3    $1,170,000.00          Non-economic Damages
28      x3    $4,680,000.00          Punitive Damages

9

1              c.      **Punitive Damages for Infliction of Emotional Distress**

2         The Supreme Court remanded the amount of the punitive award for Infliction of Emotion Distress.

3    The question to the jury is not if, but how much in punitive damages.  The prior jury awarded,

4    $1,450,000.00 in damages but mis-calculated economic damages.  Exhibit B.  The jury believed

5    Rapoport intended to hurt Klein emotionally as the jury awarded $1,250,000.00 in punitive damages.

6    However, Nevada law limits these punitive damages to $300,000.00.  Exhibit B.  Kleins ask the court to

7    estimate, for purposes of voting, the punitive claim at $300,000.00.

8    C.   **Conclusion**

9         Debtors only dispute a portion of Kleins' claim.  With interest, $4,431,417.98 of Kleins' claim is

10   undisputed.  Kleins' undisputed portion of their claim should be allowed for voting purposes.  Most of

11   this undisputed portion is secured, and $303,498.00 is unsecured.

12        The disputed portion of the claim must also be estimated.  Judge Abbatangelo's testimony will not

13   help Rapoport defend his own abuses of the Nevada Court system.  Abbatangelo will either admit

14   knowledge of Rapoport scheme, or deny it.  If denied, Rapoport will be left to himself to explain why he

15   abused the Nevada court system.  While a jury could find higher damages, the court ought to estimate

16   the Abuse of Process claim to be $1,750,000.00; the Ouster claim to be $1,075,000.00, and the punitive

17   damages on the Infliction of Emotional Distress to be $300,000.00.

18        The disputed and undisputed portions of Kleins claim ought to be estimated to be  $7,556,417.98

19   ($1,750,000 + $1,075,000 + $300,000 $4,431,417.98)

20        DATED this __10__ day of __November__, 2010

21

22     _/s/ David J. Winterton_____
       DAVID J. WINTERTON, ESQ.
23     Nevada Bar No. 004142
       DAVID J. WINTERTON & ASSOCIATES LTD.
24     211 N. Buffalo Dr., Suite A
       Las Vegas, Nevada 89145
25     Phone: (702) 363-0317
       Facsimile:(702)363-1630
26     Co-counsel for Perry and Rita Klein
       david@davidwinterton.com
27

28

                                              10

**Exhibit A**

1  LESLIE COHEN ESQ.
   California Bar No.
2  LESLIE COHEN LAW
   506 Santa Monica Blvd., Suite 200
3  Santa Monica, CA 90401
   Phone: (310) 394-5900
4  Facsimile: (310) 394-9280
   Attorney for Perry and Rita Klein
5
   DAVID J. WINTERTON ESQ.
6  Nevada Bar No. 004142
   DAVID J. WINTERTON & ASSOCIATES LTD.
7  211 N. Buffalo Dr., Suite A
   Las Vegas, Nevada 89145
8  Phone: (702) 363-0317
   Facsimile:(702)363-1630
9  Co-counsel for Perry and Rita Klein
   david@davidwinterton.com
10
                    UNITED STATES BANKRUPTCY COURT
11                   CENTRAL DISTRICT OF CALIFORNIA
                       LOS ANGELES DIVISION
12

13  | In re:                              | Case No.    2:09-bk-43263-SB |
    |                                      |                              |
14  | SHALAN ENTERPRISES, LLC             | Chapter 11                   |
    |    Substantially consolidated with   |                              |
15  |    Alan Rapoport,                    |                              |
    |                                      |                              |
16  |            Debtor                    |                              |
    |                                      |                              |
17  | ☐ This pleading affect Shalan only  |                              |
    | ☐ This pleading affect Rapoport only|                              |
18  | ☒ This pleading affects both Shalan |                              |
    |    and Rapoport                      |                              |

19
            **DECLARATION IN SUPPORT OF MOTION TO ESTIMATE CLAIM**
20
        I affirm the following facts to be true, or upon information and belief, state them to be true under
21  penalty of perjury and under oath and affirmation, under the laws of the United States of America.

22  1.   The citations to facts set forth in Section B.2.c of the motion are citation to the trial record in Case

23       no. A478057, in the Eighth Judicial District Court, Clark County, State of Nevada, which trial was

24       held in March and April of 2006.

25  2.   Exhibit B is a true and correct copy of the Nevada Supreme Court's Order Affirming in Part,

26       Reversing in Part and Remanding, dated May 5, 2009.

27  3.   The calculations set forth in Exhibit C to the motion are, upon information and belief, accurate, and

28       based on the judgment interest rate as allowed by Nevada law.

    4.   Exhibit D is a true and correct copy of the Order Affirming and Adopting Discovery

Commissioner's Report and Recommendations, dated August 24, 2005 in the District Court, Clark County, Nevada, case no. A478057.

5. Exhibit E is a true and correct copy of the Special Verdict Forms, and Verdict from the punitive phase, in Case no. A478057 in the District Court, Clark County, Nevada.

6. Exhibit F is a true and correct copy of the Summary Eviction Application filed in the Henderson Justice Court, Clark County, Nevada on December 22, 2003.

7. I downloaded the 2010 General Election Unofficial Final Results from the Clark County Election Department webpage. See attachment to this declaration. The results show that Abbatangelo lost his re-election bid. To date, official results have not been posted. See, attachment to this declaration.

8. Attached hereto are two newspaper articles that I downloaded from the Las Vegas Review Journal, and Las Vegas Sun web pages, indicating that Abbatangelo pleaded no contest to Battery Domestic Violence.

DATED this 8 day of Nov , 2010

DAVID E. DOXEY
Nevada Bar No. 008429
DAVID J. WINTERTON & ASSOCIATES LTD.
211 N. Buffalo Dr., Suite A
Las Vegas, Nevada 89145
Phone: (702) 363-0317
Facsimile:(702)363-1630
Nevada Co-counsel for Perry and Rita Klein
ddoxey@davidwinterton.com



---

## 2010 General Election
### November 2, 2010

---

## *Unofficial Final Results*

Provisional Ballots are not included in the unofficial results reported on election night.

*These results reflect only ballots cast in Clark County.*
*To determine the final outcome of statewide contests,*
*refer to the Nevada Secretary of State's website at*
*http://sos.state.nv.us/*

11/02/2010 11:38:36 PM

Race Index Page

Click here to download the turnout data file

| | |
|---|---:|
| **Precincts Reporting:** | **100.00%** |
| **Total Registration:** | **736,663** |
| **Total Turnout:** | **466,465 (63.32%)** |
| **Election Day Turnout:** | **174,341 (23.67%)** |
| **Early Vote Turnout:** | **258,283 (35.06%)** |
| **Mail Turnout:** | **33,841 (4.59%)** |

| **Precincts Reporting:** 1176 of 1176 (100.00%) | | | |
|---|---|---:|---:|
| **Candidate** | **Graph** | **Votes** | **%** |
| Angle, Sharron | | 192,257 | 41.35% |
| Ashjian, Scott | | 2,814 | 0.61% |

| Candidate | | Votes | % |
|---|---|---|---|
| Anderson, Craig | | 2,729 | 41.11% |
| Lyon, John W. | | 1,947 | 29.33% |
| Patten, Darren | | 688 | 10.36% |
| Stratton, Blake | | 1,274 | 19.19% |

| Precincts Reporting: 1176 of 1176 (100.00%) | | | |
|---|---|---|---|
| Candidate | Graph | Votes | % |
| Bisch, Laurie P. | | 142,148 | 34.74% |
| Gillespie, Douglas C. | | 267,016 | 65.26% |

| Precincts Reporting: 829 of 829 (100.00%) | | | |
|---|---|---|---|
| Candidate | Graph | Votes | % |
| Abbatangelo, Tony | | 120,319 | 49.73% |
| Marshall, Janiece | | 121,622 | 50.27% |

| Precincts Reporting: 829 of 829 (100.00%) | | | |
|---|---|---|---|
| Candidate | Graph | Votes | % |
| Kephart, William 'Bill' | | 141,205 | 58.98% |
| Kuzemka, Kristine | | 98,222 | 41.02% |

| Precincts Reporting: 829 of 829 (100.00%) | | | |
|---|---|---|---|
| Candidate | Graph | Votes | % |

**reviewjournal**.com

 PRINT THIS

Powered by  Clickability

 Click to Print

SAVE THIS | EMAIL THIS | Close

Feb. 26, 2009
Copyright © Las Vegas Review-Journal

# Justice of peace gets house arrest, community service in domestic violence case

LAS VEGAS REVIEW-JOURNAL

A Las Vegas justice of the peace was sentenced to spend two days in jail Wednesday after he pleaded no contest to one count of misdemeanor battery domestic violence.

Tony Abbatangelo, 43, was also ordered to perform community service and attend domestic violence counseling for six months, said Clark County District Attorney David Roger.

Roger said Abbatangelo will be able to serve his jail sentence on house arrest.

Abbatangelo was accused of attacking his wife at the couple's home in November. His wife of 13 years told authorities that Abbatangelo grabbed her by the neck, choked her and screamed at her during a fight.

His wife filed a complaint with Las Vegas police.

She applied for a temporary protection order against Abbatangelo in November.

Abbatangelo has served as a justice of the peace since 1996.

Court officials reassigned the battery domestic violence cases before him after he was charged.

**Find this article at:**
http://www.lvrj.com/news/40349017.html

 Click to Print

SAVE THIS | EMAIL THIS | Close

☐ Check the box to include the list of links referenced in the article.

Copyright © Las Vegas Review-Journal, 1997 - 2008

Go Green! Subscribe to the electronic Edition at www.reviewjournal.com/ee/

Las Vegas Sun

**COURTS:**

# Judge charged with domestic battery to plead guilty today

**By Jeff German**

Wednesday, Feb. 25, 2009 | 2 a.m.

Las Vegas Justice of the Peace Tony Abbatangelo is slated to plead guilty to a misdemeanor domestic battery charge today.

District Attorney David Roger said there is no plea agreement with Abbatangelo, but his office is recommending the minimum punishment. Roger said that is what the office would do for any first-time offender.

Abbatangelo "is being treated the same as any other citizen," Roger said.

The minimum sentence calls for two days behind bars at the Clark County Detention Center, 48 hours of community service, six months of domestic violence counseling and a $200 fine, Roger said.

Abbatangelo, 43, who is up for reelection in 2010, also faces potential sanctions from the Nevada Judicial Discipline Commission, which courthouse sources said has requested copies of the police reports of the Nov. 12 altercation between Abbatangelo and his wife, Sue, who is the sister of District Judge Michelle Leavitt.

David Sarnowski, the commission's executive director, could not be reached for comment Tuesday.

According to the one-count criminal complaint against Abbatangelo, the judge allegedly choked his wife and threatened to punch her during the fight. The couple were separated at the time.

Roger said his office was prepared to try the battery case Friday in front of visiting Justice of the Peace Richard Glasson of Lake Tahoe.

Instead, Glasson is to accept Abbatangelo's guilty plea in Justice Court this afternoon by teleconference from Lake Tahoe.

Abbatangelo's attorney, Thomas Pitaro, declined to comment.

Justice Court officials removed Abbatangelo from hearing domestic violence cases after he was charged last year to avoid any potential conflicts. The removal is expected to remain in effect following Wednesday's plea.

© **Las Vegas Sun, 2010, All Rights Reserved. Job openings. Published since 1950. Contact us to**

**Exhibit B**

## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| PERRY KLEIN AND RITA KLEIN,<br>Appellants/Cross-Respondents,<br>vs.<br>ALAN RAPOPORT; ALAN AND<br>SHELLEY RAPOPORT FAMILY TRUST<br>DATED OCTOBER 15, 1999; ALAN<br>RAPOPORT AS TRUSTEE AND<br>SHELLEY RAPOPORT AS TRUSTEE<br>AND 2 RUE ALLARD, A LIMITED<br>LIABILITY COMPANY,<br>Respondents/Cross-Appellants. | No. 47167<br><br>**FILED**<br><br>MAY 05 2009<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY _____<br>DEPUTY CLERK |

## ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING

This is an appeal and cross-appeal from a judgment on a jury verdict and the district court's judgment as a matter of law in a torts, contracts, and partnership action. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge. The parties are familiar with the facts and we do not recount them except as pertinent to our disposition.

This appeal arose from an action for breach of contract brought against respondent/cross-appellant Alan Rapoport involving the development of property at Lake Las Vegas. When Rapoport sought to have appellants/cross-respondents Perry and Rita Klein removed from the partnership property, the Kleins raised a multitude of tort claims. The jury awarded the Kleins $4,972,800 in compensatory damages and $5,000,000 in punitive damages.

Thereafter, Rapoport moved for a new trial, which the district court denied. Rapoport also moved for judgment as a matter of law, which the district court granted in part. Pursuant to the district court's ruling,

awards on the following claims were either reduced or eliminated: (1) conspiracy to oust, (2) slander per se, (3) interference with economic advantage, and (4) intentional infliction of emotional distress. However, the district court denied Rapoport's remaining motions for judgment as a matter of law regarding the claims of: (5) breach of contract, (6) negligent misrepresentation, (7) abuse of process, (8) ouster, and (9) conversion of a partnership interest.[1]

On appeal, the Kleins argue that the district court improperly reduced the jury's award of damages. On cross-appeal, Rapoport contends that the district court erred in refusing to grant judgment as a matter of law on the remaining claims. Rapoport also contends that the district court abused its discretion in denying a new trial. We address, in turn, the arguments regarding the district court's grant or denial of judgment as a matter of law for: (1) conspiracy to oust, (2) slander per se and libel,[2] (3) interference with economic advantage, (4) intentional infliction of emotional distress, (5) breach of contract, (6) negligent misrepresentation, (7) abuse of process, (8) ouster, and (9) conversion of a partnership

---

[1]There are some remaining causes of action which Rapoport did not raise in his motion for judgment as a matter of law. Those causes of action are also not disputed here, thus the district court's judgment is affirmed with respect to slander of title, breach of implied covenant of good faith and fair dealing, invasion of privacy, conversion of personal property, and fraudulent conveyance.

[2]While the district court did not grant judgment as a matter of law for the libel claim, the Kleins' argument regarding slander per se is intertwined with the libel claim so we address both together.

EME COURT
OF
NEVADA

interest. We then address Rapoport's argument that the district court abused its discretion in denying a new trial.[3]

Standard of review

"Under NRCP 50(a)(1), the district court may grant a motion for judgment as a matter of law if the opposing party 'has failed to prove a sufficient issue for the jury,' so that his claim cannot be maintained under the controlling law." Nelson v. Heer, 123 Nev. ___, ___, 163 P.3d 420, 424 (2007) (quoting NRCP 50(a)(1)). "In applying that standard and deciding whether to grant a motion for judgment as a matter of law, the district court must view the evidence and all inferences in favor of the nonmoving party." Id. "This court applies the same standard on review that is used by the district court." Id. (citing Banks v. Sunrise Hospital, 120 Nev. 822, 839, 102 P.3d 52, 64 (2004)). "A renewed motion for judgment as a matter of law under NRCP 50(b) is subject to the same standard as a motion filed at the close of evidence under NRCP 50(a)." Id. "Thus, the standard of appellate review for an order under either NRCP 50(a) or 50(b) is de novo." Id. at 425.

(1) Conspiracy to oust

The district court determined that damages for conspiracy to oust may not be awarded separate and apart from the damages already awarded for ouster. Consequently, the jury's award of $50,000 in compensatory damages was stricken by the district court. The district

---

[3]Rapoport also argues the punitive damages award is unconstitutionally excessive and will financially decimate him. We do not address this issue because the result of our decision will be a reduction of the punitive damages. We conclude that the resulting $450,000 in punitive damages is not excessive.

05/05/2009 13:52 FAX Case 2:09-bk-43263-PC Doc 155 Filed 11/10/10 Entered 11/10/10 13:44:27 Desc
Main Document Page 24 of 70

☑004/010

court also struck the $275,000 punitive damages awarded for conspiracy to oust, reasoning that punitive damages can not be awarded when there are no compensatory damages for that cause of action.

The Kleins argue that the district court erred in striking the compensatory and punitive damages for conspiracy to oust. First, the Kleins argue that the district court erred in striking the compensatory damages awarded on their conspiracy to oust claim. The jury found Rapoport liable for ouster and conspiracy to oust. The Kleins claim they suffered economic damages that exceeded the amount of the combined economic damages awarded against Rapoport for ouster and conspiracy to oust. The Kleins argue that because their damages were greater than the award, the district court's action in striking the conspiracy to oust damages negates the jury's intent to apportion the damages between the two causes of action. We disagree.

This court has held that the damages awarded in a civil action are not for the conspiracy itself, but rather for the injury to the plaintiff produced by the specific overt acts. Aldabe v. Adams, 81 Nev. 280, 286, 402 P.2d 34, 37 (1965), overruled by Siragusa v. Brown, 114 Nev. 1384, 971 P.2d 801 (1998). In fact, "'[t]he charge of conspiracy in a civil action is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts.'" Id. at 286-87, 402 P.2d at 37-38 (quoting Rutkin v. Reinfeld, 229 F.2d 248, 252 (2d Cir. 1956). The damages for conspiracy to oust merge with those for ouster and so damages for conspiracy to oust are not awarded independently of ouster. Therefore, the district court properly struck the compensatory damages for conspiracy to oust.

Second, the Kleins argue that the district court improperly eliminated the punitive damages award after striking the compensatory damages for conspiracy to oust.[4]  To support their argument, the Kleins rely on Cerminara v. California Hotel and Casino, 104 Nev. 372, 760 P.2d 108 (1988). We disagree.

In Cerminara, the lower court eliminated the punitive damages award because there were no underlying compensatory damages to support it. Id. at 376, 760 P.2d at 110. This court liberally construed the jury verdict form and reinstated the punitive damages. Id. at 377, 760 P.2d at 110. In doing so, this court rested its decision on an interpretation of the compensatory award, determining the award compensated the plaintiff for each of his causes of action, and thus, the punitive damages were supported by a compensatory award. Id.

Cerminara is distinguishable from this case because there was no such ambiguity in the jury verdict form here.  The jury in this case addressed each cause of action separately.  Once the district court had stricken the compensatory damages, punitive damages could not be awarded for that cause of action because punitive damages cannot be awarded in the absence of compensatory damages.  Amoroso Constr. v. Lazovich and Lazovich, 107 Nev. 294, 298, 810 P.2d 775, 777-78 (1991). Because the compensatory damages award was stricken, the district court correctly eliminated the punitive damages award for conspiracy to oust.

---

[4]The Kleins also raise this argument with regards to slander per se and intentional infliction of emotional distress.  We address this issue in depth only once as the reasoning remains the same for each.

As a result, the district court's judgment striking the compensatory and punitive damages award for conspiracy to oust is affirmed.

(2) <u>Slander per se and libel</u>

The district court struck the jury's award of $20,000 in compensatory damages for slander per se. The district court found the damages were duplicative since they arose from the same conduct as the libel claim. The district court also struck the $75,000 punitive damages award associated with slander per se because the compensatory damages award had been stricken.

The Kleins maintain the district court erred in striking the compensatory and punitive damages awarded for slander per se. The Kleins argue that they are entitled to compensatory damages for both slander per se and libel because they are separate causes of action with different elements. For the reasons set forth below, we disagree.

The only difference between libel and slander per se is that libel requires proof of actual damages resulting from a defamatory statement whereas slander per se does not. The claims of libel and slander per se were pleaded as the same cause of action, concerned the same conduct, and alleged the same damages. As a result, we conclude that the libel and slander per se claims were really one cause of action. Here, the Kleins were able to prove actual damages. Therefore, the slander per se award was subsumed by the libel award. Thus, the district court's decision to strike the compensatory damages award for slander per se is affirmed. Moreover, because the compensatory damages award was properly eliminated as to the slander per se claim, the district court was

also correct in striking the punitive damages award for that claim. Amoroso, 107 Nev. at 298, 810 P.2d at 777-78.[5]

### (3) Interference with economic advantage

The district court found insufficient evidence for the $120,000 in economic damages awarded for interference with economic advantage but confirmed the noneconomic portion of the compensatory damages award. The district court applied the punitive damages cap set forth in NRS 42.005 to each cause of action and reduced the punitive damages award for interference with economic advantage from $1,500,000 to $1,110,000.

The Kleins argue that they provided sufficient evidence of economic damages for the interference with economic advantage cause of action and therefore the district court erred in eliminating that portion of the compensatory damages award. The Kleins claim the economic damages awarded by the jury arose from Rapoport's actions in filing a lis pendens against 6 Via Del Garda, which interfered with the Kleins' professional contacts and prevented the Kleins from developing that property as expected. We disagree.

We conclude that the compensatory damages awarded for the claim of interference with economic advantage are duplicative of the damages awarded for the breach of contract claim because both claims addressed the same injury. See Colorado Environments v. Valley Grading, 105 Nev. 464, 471-72, 779 P.2d 80, 84 (1989) (disapproving of double recovery for the same injury). Therefore, the district court's decision to

---

[5]The $10,000 in compensatory damages and $75,000 in punitive damages awarded for the libel claim are affirmed.

strike the $120,000 in economic damages is affirmed and its decision to uphold the $370,000 in noneconomic damages awarded by the jury is reversed. Because that leaves no compensatory damages award, the punitive damages award for this cause of action are reversed. <u>Amoroso</u>, 107 Nev. at 298, 810 P.2d at 777-78.[6]

### (4) Intentional infliction of emotional distress

The district court found insufficient evidence to support the economic portion of the compensatory damages award for intentional infliction of emotional distress and therefore struck the $100,000 award. The district court also struck the $100,000 award for noneconomic damages after determining the emotional distress damages were already contained in the noneconomic awards for the other separate causes of action and thus, the intentional infliction of emotional distress award was duplicative. The district court then struck the $1,250,000 punitive damages award for intentional infliction of emotional distress because the compensatory damages award had been stricken.

In their briefs, the Kleins argued that the district court erred when it struck the compensatory damages awarded for intentional infliction of emotional distress. The Kleins claimed that the noneconomic damages were not duplicative and that this is evidenced by the fact that the jury found liability on certain claims but did not award damages on all of those claims. The Kleins argued this shows the jury carefully awarded

---

[6]Given this decision, we do not address the Kleins' argument regarding the district court's application of NRS 42.005, the punitive damages cap. We address this issue below, with regards to the claim of intentional infliction of emotional distress.

damages for each cause of action, making sure not to duplicate damages. We disagree.

During oral argument, the Kleins' counsel conceded that the evidence presented at trial would only support an award of $1,200 in economic damages. We agree that the evidence supports such an award. Accordingly, we conclude that the portion of the district court's judgment striking the compensatory damages award for the intentional infliction of emotional distress is reversed to the extent that an award of $1,200 was appropriate.

Further, the noneconomic damages awarded for intentional infliction of emotional distress were duplicative of the noneconomic damages awarded for the other causes of action. The Kleins were already compensated for their emotional distress through the noneconomic damages awarded for negligent misrepresentation, libel, and slander of title. The injury caused by the intentional infliction of emotional distress is the same emotional distress compensated for by the other noneconomic damages awards, making this award duplicative. The district court's decision striking the noneconomic damages is affirmed. See Colorado Environments, 105 Nev. at 471-72, 779 P.2d at 84.

The district court struck the punitive damages awarded for intentional infliction of emotional distress because there was no longer a compensatory damages award for that cause of action. Having reversed the district court's decision regarding the economic award and concluded that a compensatory damages award of $1,200 was warranted, punitive damages are appropriate.

However, NRS 42.005(1), which contains the punitive damages cap, applies and will reduce the punitive damages awarded for

intentional infliction of emotional distress. NRS 42.005(1), which reduces the amount of punitive damages awarded based on the amount of compensatory damages awarded, provides in relevant part:

> [I]n an action for the breach of an obligation . . . the plaintiff, in addition to the compensatory damages, may recover damages for the sake of example and by way of punishing the defendant. [P]unitive damages made pursuant to this section may not exceed:
>
> (a) Three times the amount of compensatory damages awarded to the plaintiff if the amount of compensatory damages is $100,000 or more; or
>
> (b) Three hundred thousand dollars if the amount of compensatory damages awarded to the plaintiff is less than $100,000.

The Kleins argue the punitive damages cap in NRS 42.005 should be applied to the award as a whole, not each individual cause of action. We disagree.

Statutory interpretation is a question of law that this court reviews de novo. Leven v. Frey, 123 Nev. __, __, 168 P.3d 712, 714 (2007). We interpret statutes in accordance with their plain meaning and generally do not look beyond the plain language of the statute absent ambiguity. Seput v. Lacayo, 122 Nev. 499, 502, 134 P.3d 733, 735 (2006).

The plain language of NRS 42.005 makes the punitive damages cap applicable to each "breach of an obligation." "It is well established that when a statute's language is plain and unambiguous, and the statute's meaning clear and unmistakable, the courts are not permitted to look beyond the statute for a different or expansive meaning or construction." Destefano v. Berkus, 121 Nev. 627, 629, 119 P.3d 1238, 1239-40 (2005). We conclude that the statute's meaning is clear and unmistakable; the term "breach of an obligation" signifies a single cause of

action. Thus, the punitive damages cap applies separately to each of the punitive damages awarded for the individual tort claims.

     In this case, the compensatory damages awarded for intentional infliction of emotional distress was less than $100,000 and thus, application of NRS 42.005(1)(b) reduces the punitive damages award for the intentional infliction of emotional distress to $300,000. Accordingly, the judgment is reversed in this respect and the district court is instructed to reduce the punitive damages award to $300,000.

     (5) Breach of contract[7]

     Rapoport argues that an improper measure of damages was applied to the breach of contract claim. Rapoport claims the proper measure of damages for the breach of contract claim was profits after expenses, instead of the full sales price for the property, which he contends was the actual measure of damages used. We disagree with Rapoport's contention that an improper measure of damages was used.

     Although the Kleins could have sought to specifically enforce the partnership agreement, the parties agreed Rapoport would retain the property and the Kleins would sue for damages. The Kleins were entitled to damages for the breach of the partnership agreement and that included their lost profits after expenses. Jeaness v. Bresnilian, 101 Nev. 536, 539,

---

     [7]We note that the parties and the district court treated this as a motion for judgment as a matter of law; however, Rapoport argued before this court as if it was a motion for a new trial. This court reviews a district court's grant or denial of a motion for a new trial under an abuse of discretion standard. Krause Inc. v. Little, 117 Nev. 929, 933, 34 P.3d 566, 569 (2001). Nonetheless, the outcome remains the same as Rapoport has failed to demonstrate the district court abused its discretion, as the proper measure of damages was used.

05/05/2009 18:57 FAX Case 2:09-bk-43263-PC Doc 155 Filed 11/10/10 Entered 11/10/10 13:44:27 Desc
Main Document Page 32 of 70

@002/010

706 P.2d 143, 145-46 (1985). The record does not support Rapoport's claim that the Kleins were awarded the full sales price for the property. In fact, the Kleins argued for damages based upon a calculation of profits after expenses and presented evidence to the jury accordingly.

Contrary to Rapoport's claim, the proper measure of damages was applied for the breach of contract claim. The damages awarded reflect the Kleins' share of the lost profits after expenses. Therefore, the jury's award of $2,857,800 is affirmed.

### (6) Negligent misrepresentation

Rapoport claims the jury was not properly instructed on negligent misrepresentation and that the elements of the cause of action were not proven. Rapoport argues that because nothing in the jury instruction said that the Kleins' reliance had to be justifiable, Rapoport is entitled to a new trial on negligent misrepresentation. We disagree.

The definition of the tort of negligent misrepresentation is:

> One who, in the course of his business, profession or employment, or in any action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Barmettler v. Reno Air, Inc., 114 Nev. 441, 449, 956 P.2d 1382, 1387 (1998) (citing Bill Stremmel Mtrs. v. First Nat'l Bank, 94 Nev. 131, 134, 575 P.2d 938, 940 (1978)). The Ninth Circuit has stated that "under a theory of negligent misrepresentation, the plaintiff must be an intended beneficiary of the contract. [Their] reliance on the [information] is

otherwise not justified." Glenn K. Jackson, Inc., v. Roe, 273 F.3d 1192, 1200 n.3 (9th Cir. 2001).

Here, Jury Instruction No. 40 embodied this principle by requiring the plaintiff to prove, "[t]hat the information was supplied for the guidance of the plaintiff in his business." The instruction requires that the jury find, by a preponderance of the evidence, that the information supplied by the defendant was specifically intended for the plaintiff's use— i.e., the plaintiff was the "intended beneficiary." In this case, the evidence demonstrated that the Kleins were the intended beneficiaries of the partnership agreement and therefore their reliance was justifiable.

Rapoport argues that the Kleins could not have justifiably relied on his statements because he refused to sign any paperwork. This argument fails, however, because justifiable reliance is not affected by the actions of the party who allegedly misrepresented the information, but is governed by the relationship between the two parties. See Glenn K. Jackson, Inc., 273 F.3d at 1200 n.3.

We therefore conclude that the jury was properly instructed regarding the law of negligent misrepresentation. Because there was no error in the jury instruction, the district court correctly upheld the jury's verdict. Accordingly, the jury's award of $250,000 in compensatory damages for negligent misrepresentation is affirmed.

(7) Abuse of process

Judge Abbatangelo granted Rapoport a temporary order of protection (TPO) against the Kleins. This precipitated the Kleins' removal from the partnership property. Rapoport's repeated attempts to remove the Kleins from the property, culminating in the TPO issued by Judge

Abbatangelo, led to the Kleins' multitude of claims in tort. At trial, testimony by Gene Northup, the realtor for the partnership property, suggested Judge Abbatangelo had a personal relationship with Rapoport. Northup testified he saw Judge Abbatangelo in Rapoport's office at a party held at the partnership property.

Rapoport sought to take Judge Abbatangelo's deposition and the justice court moved for a protective order pursuant to NRCP 26(c) because the majority, if not all, of the anticipated deposition would be directed at the judge's judicial activities. The discovery commissioner recommended granting the protective order and the district court sustained the recommendation. Then Rapoport sought to have Judge Abbatangelo testify that he was not at the party and had granted the TPO following normal procedures. Even though it appears Judge Abbatangelo was willing to testify, the district court did not allow him to testify. Following the trial, the district court denied Rapoport's motion for judgment as a matter of law for the abuse of process claim. The district court determined the concern over the references to Judge Abbatangelo was overblown. The district court found the testimony about how a TPO is typically granted was clear and that having Judge Abbatangelo testify would be inappropriate and more prejudicial than not because his testimony would have been severely limited due to the judicial privilege.

Rapoport argues the Kleins failed to prove their abuse of process claim. Rapoport also argues he was denied the opportunity to defend on this claim because he was not allowed to call Judge Abbatangelo to testify regarding the extent of his relationship with Rapoport. For the reasons set forth below, we agree with Rapoport's contentions.

"[T]his court will not overturn the district court's exclusion of relevant evidence absent an abuse of discretion." <u>Hansen v. Universal Health Servs.</u>, 115 Nev. 24, 27, 974 P.2d 1158, 1160 (1999).

We conclude that Judge Abbatangelo's testimony was relevant and necessary to Rapoport's defense on the abuse of process claim. The testimony was extremely probative, and could have been limited to the sole issue of whether he was at the party in question or had a relationship with Rapoport. Because Judge Abbatangelo was not allowed to testify, Rapoport was unable to defend himself against the Kleins' accusations that the TPO was improperly obtained because Rapoport and the judge were friends.

While it is well settled that judicial proceedings are entitled to a presumption of regularity and any "examination [into the mental process] of a judge would be destructive of judicial responsibility," <u>United States v. Morgan</u>, 313 U.S. 409, 422 (1940), judges are not absolutely immune from subpoenas for oral testimony. Here, Judge Abbatangelo could have testified regarding his relationship with Rapoport without discussing matters within the scope of his adjudicative duties. This is especially true under these circumstances, where there were allegations of impropriety that Judge Abbatangelo could, and was willing to, dispel with his testimony.

Accordingly, we conclude that the district court abused its discretion by excluding the judge's testimony entirely. Judge Abbantangelo should have been allowed to testify regarding his personal relationship, or lack there of, with Rapoport. The claim of abuse of process is therefore reversed and remanded for a new trial in which Judge

Abbatangelo should be permitted to testify for the limited purpose of explaining his relationship with Rapoport.

(8) <u>Ouster</u>

Rapoport argues the Kleins failed to prove the elements of ouster. Rapoport contends the jury was either misinstructed or manifestly disregarded the district court's instruction regarding ouster, resulting in the need for a new trial on the issue. Rapoport argues the Kleins failed to demonstrate that they were entitled to any damages at all on this claim because the parties' agreement did not entitle them to live in or possess the property. Rapoport argues the Kleins were only entitled to share in the profits from the sale. We agree.

For claims relating to insufficiency of evidence the standard of review is whether substantial evidence supports the verdict. <u>Taylor v. Thunder</u>, 116 Nev. 968, 974, 13 P.3d 43, 46 (2000). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." <u>Id. (internal quotations and citations omitted).</u> If there is conflicting evidence this court is not free to weigh the evidence; instead, "all inferences must be drawn in favor of the prevailing party." <u>Smith v. Timm</u>, 96 Nev. 197, 202, 606 P.2d 530, 532 (1980).

"Ouster occurs when a cotenant obtains sole possession of the land that is adverse to the other cotenants . . . ." <u>Yakavonis v. Tilton</u>, 968 P.2d 908, 908-09 (Wash. Ct. App. 1998). Therefore, to demonstrate ouster the claimant must show that he has a right to possess a piece of property and an inability to possess that property because of the actions of another party. Thus, the Kleins must show, through partnership law or their agreement with Rapoport, that a term of the partnership included the right to possess and reside on the property.

NRS 87.240(1) states the extent of the property rights of partners include "his rights in specific partnership property." In State v. Elsbury this court held that right "meant simply that a partner . . . has an equal right with his copartners to use or possess any partnership property for any proper partnership purpose." State v. Elsbury, 63 Nev. 463, 466, 175 P.2d 430, 432 (1946). Although the Kleins have a right to use the property for a proper partnership purpose, they "cannot otherwise possess [the property] without the consent of [their partner]." Id.

The Kleins failed to present substantial evidence that they were entitled to live on or possess the property. While partnership law does provide a partner with the right to possess the partnership property for a proper partnership purpose, the Kleins presented no evidence that they were living on the property for a partnership purpose. Instead, the Kleins and Rapoports were all living on the partnership property and using it as a private residence. The Kleins were required to provide evidence that they were living on the property for a partnership purpose or that their partnership agreement with Rapoport included the right to live on or possess the partnership property. The Kleins also failed to provide substantial evidence that their partnership agreement allowed them to live on the property. Because the Kleins failed to present substantial evidence of their right to possess the property, they have failed to prove the elements of ouster. Therefore, judgment for the claim of ouster is reversed and remanded for a new trial.

(9) Conversion of a partnership interest

Rapoport argues that even though a partnership interest entitles a partner to "his share of the profits and surplus, and the same is

personal property," the underlying partnership property itself cannot be converted. NRS 87.260. We agree.

NRS 87.240 provides, "[t]he property rights of a partner are: 1. [h]is rights in specific partnership property; 2. [h]is interest in the partnership; and 3. [h]is right to participate in the management." NRS 87.260 goes on to state "[a] partner's interest in the partnership is his share of the profits and surplus, and the same is personal property." This court has clarified that "[a] partner has no individual property in any specific assets of the [partnership]." Elsbury, 63 Nev. at 468, 175 P.2d at 433.

It is clear from this court's jurisprudence that the only personal property the Kleins owned in regards to the partnership was the profits and surplus from the property, not the physical property itself, and therefore Rapoport could not convert ownership of the property. Therefore, the judgment with respect to the claim of conversion of a partnership interest is reversed.

Rapoport's motion for a new trial

Rapoport is seeking a new trial, claiming the jury's verdict was based on passion and prejudice and was excessive.[8] We conclude that this claim is without merit.

---

[8]Rapoport also argues his defense counsel had an unwaivable conflict of interest which rendered counsel ineffective. However, there is no ineffective assistance of counsel claim in a civil appeal. See e.g., Sanjines v. Ortwein and Assoc., 984 S.W.2d 907, 910 (Tenn. 1998) (stating that ineffective assistance of counsel arises in context of a criminal proceeding). Therefore, we do not address this argument.

This court reviews a district court's grant or denial of a motion for a new trial under an abuse of discretion standard. *Wyeth v.* *Little*, 117 Nev. 929, 933, 34 P.3d 566, 569 (2001). A court is not justified in granting a new trial on the grounds of excessive damages, unless the verdict is "so flagrantly improper as to indicate passion, prejudice or corruption in the jury." Stackiewicz v. Nissan Motor Corp., 100 Nev. 443, 454, 686 P.2d 925, 932 (1984). "The mere fact that a verdict is large is not itself indicative of passion and prejudice." Hazelwood v. Harrah's, 109 Nev. 1005, 1010, 862 P.2d 1189, 1192 (1993).

The district court determined there was not sufficient merit in the motion to grant a new trial. We agree. In this case, the verdict was not flagrantly improper and the size of the verdict is not enough to indicate passion and prejudice. Therefore, the district court did not abuse its discretion in denying the motion for a new trial. Accordingly, we

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART and REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

cc:    Hon. Douglas W. Herndon, District Judge
       Lester H. Berkson, Settlement Judge
       David J. Winterton & Associates, Ltd.
       Lewis & Roca, LLP/Las Vegas
       Eighth District Court Clerk

**Exhibit C**

## JUDGMENT BALANCE

| | |
|---|---|
| **JUDGMENT TOTAL** | 3,529,000.00 |
| Less Satisfaction | - |
| **NET BALANCE** | 3,529,000.00 |
| **Judgment Date** | 03/20/06 |
| Date Interest Begin to Run | 3/20/2006 |
| **Date of Filing Bankruptcy** | 11/20/2009 |
| Today's Date | 11/3/2010 |

| Judgment Interest Rate Period | Number of Days During Period Since Interest Began | Judgment Total | Less Satisfaction | Judgment Interest Rate | Daily Interest Rate | Daily Interest | Interest Earned During Period | Interest Totals as of Important Dates | Total Judgment as of Important Dates |
|---|---|---|---|---|---|---|---|---|---|
| January 1, 2003 | - | $ - | $ - | 6.25% | 0.000171 | - | - | | |
| July 1, 2003 | 0 | | $ - | 6.00% | 0.000164 | - | - | | |
| January 1, 2004 | 0 | | $ - | 6.00% | 0.000164 | - | - | | |
| July 1, 2004 | 0 | | $ - | 6.25% | 0.000171 | - | - | | |
| January 1, 2005 | 0 | | $ - | 7.25% | 0.000199 | - | - | | |
| July 1, 2005 | 0 | | $ - | 8.25% | 0.000226 | - | - | | |
| January 1, 2006 | 101 | $ 3,275,883.67 | $ - | 9.25% | 0.000253 | 830.19 | 83,849.16 | | |
| July 1, 2006 | 180 | $ 3,275,883.67 | $ - | 10.25% | 0.000281 | 919.94 | 165,589.19 | | |
| January 1, 2007 | 180 | $ 3,275,883.67 | $ - | 10.25% | 0.000281 | 919.94 | 165,589.19 | | |
| July 1, 2007 | 180 | $ 3,275,883.67 | $ - | 10.25% | 0.000281 | 919.94 | 165,589.19 | | |
| January 1, 2008 | 180 | $ 3,275,883.67 | $ - | 9.25% | 0.000253 | 830.19 | 149,434.15 | | |
| July 1, 2008 | 180 | $ 3,275,883.67 | $ - | 7.00% | 0.000192 | 628.25 | 113,085.30 | | |
| January 1, 2009 | 180 | $ 3,275,883.67 | $ - | 5.25% | 0.000144 | 471.19 | 84,813.97 | | |
| 7/1/2009 to Date of Filing | 140 | $ 3,275,883.67 | $ - | 5.25% | 0.000144 | 471.19 | 65,966.42 | 993,916.57 | $4,269,800.24 |
| Date of Filing to 12/31/2009 | 40 | $ 3,275,883.67 | $ - | 5.25% | 0.000144 | 471.19 | 18,847.55 | | |
| 1/1/2010 to 6/3/2010 | 180 | $ 3,275,883.67 | $ - | 5.25% | 0.000144 | 471.19 | 84,813.97 | | |
| 7/1/2010 to 11/1/2010 | 123 | $ 3,275,883.67 | $ - | 5.25% | 0.000144 | 471.19 | 57,956.22 | 1,155,534.31 | $4,431,417.98 |

**Exhibit D**

1  **ORDR**
   DAVID ROGER
2  District Attorney
   **CIVIL DIVISION**
3  State Bar No. 002781
   By:  **ROBERT J. GOWER**
4  Deputy District Attorney
   State Bar No. 001868
5  500 South Grand Central Parkway
   P. O. Box 552215
6  Las Vegas, Nevada  89155-2215
   (702) 455-4761
7  Fax (702) 382-5178
   Attorneys for Las Vegas Township
8      Justice Court, Justice of the Peace
       Tony L. Abbatangelo and
9      Angela Holland

FILED

Aug 24  10 ᵴ⁰ ᴬᴹ '05

*Shirley B. Parraguirre*
CLERK

DISTRICT COURT

10                          CLARK COUNTY, NEVADA

11

12  PERRY KLEIN, an individual,                    )
                                                   )
13              Plaintiff,                          )    Case No:    A478057
                                                   )    Dept No:    XIII
14      vs.                                         )
                                                   )
15  ALAN RAPOPORT, an individual; SHELLEY          )
    RAPOPORT, an individual; ASHLEY                 )
16  RAPOPORT, an individual; JASON HUFFER, an)
    individual; SCOTT SIBLEY, an individual;       )
17  CHRIS FIELDS, an individual; and DOES I        )
    through X, inclusive, and ROE CORPORATION )
18  I through X, inclusive,                         )
                                                   )
19              Defendants.                         )
    _____)

20      **ORDER AFFIRMING AND ADOPTING DISCOVERY
21      COMMISSIONER'S REPORT AND RECOMMENDATIONS**

22                          Date of Hearing:  July 25, 2005
                            Time of Hearing:  In Chambers

23      Plaintiff, Perry Klein's,  Motion to Reconsider Order Re: Commissioner's Report

24  Regarding Motion for Protective Order and Ex Parte Motion for Stay of Subpoenas and

25  Depositions Pending Court's Ruling on Motion for Protective Order was scheduled on July

26  25, 2005 in Chambers for review and decision.

27      The Court having entered an Order adopting the Discovery Commissioner's Report

28  and Recommendations on May 20, 2005, which had recommended granting  Las Vegas

1  Township Justice Court, Justice of the Peace Tony L. Abbatangelo and Angela Holland's

2  Motion for Protective Order and the Plaintiff having filed a Motion for Reconsideration of

3  that Order;

4        IT IS HEREBY ORDERED that the Plaintiff's Motion for Reconsideration is granted

5  since the Court finds that the Plaintiff filed a timely objection to the Discovery

6  Commisioner's Report and Recommendations.

7        IT IS FURTHER ORDERED that there are no extraordinary circumstances which

8  would warrant allowing the Plaintiff to challenge the presumption of regularity in the Justice

9  Court's judicial proceedings or allowing the Plaintiff to deive into those proceedings through

10  the mind of Justice of the Peace Abbatangelo.

11        IT IS FURTHER ORDERED that the issue of the Justice Court Temporary Protective

12  Order has limited, if any, relevance to the issues before this Court in the instant case.

13        IT IS FURTHER ORDERED that the Court finds that the Discovery Commissioner's

14  Report and Recommendations is legally appropriate and hereby adopts the same in its

15  entirety.

16        DATED this _22_ day of August, 2005.

17

18                              DOUGLAS W. HERNDON
                               _____
19                              DISTRICT COURT JUDGE

20  Submitted by:

21  DAVID ROGER
   DISTRICT ATTORNEY

22

23  By: _Robert J. G._____
      ROBERT J. GOWER
24    Deputy District Attorney
      State Bar No. 001868
25    500 S. Grand Central Pkwy. 5th Flr.
      P. O. Box 552215
26    Las Vegas, NV 89155-2215
      Attorney for as Vegas Township
27       Justice Court, Justice of the Peace
         Tony L. Abbatangelo and
28       Angela Holland

**Exhibit E**

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| PERRY KLEIN, an individual, | Case No.: A 478057 |
| Plaintiff, | Dept. No.: III |
| vs. | |
| ALAN RAPOPORT, an individual SHELLEY RAPOPORT an individual ASHLEY RAPOPORT an individual JASON HUFFER, an individual SCOTT SIBLEY, an individual, CHRIS FIELDS an individual, ALAN AND SHELLY RAPOPORT FAMILY TRUST dated October 15, 1999; ALAN RAPOPORT as Trustee and SHELLY RAPOPORT as Trustee; 2 RUE ALLARD a limited liability company and DOES I through X, inclusive, and ROE CORPORATIONS I through X, inclusive | SPECIAL VERDICT FORMS |
| Defendants, | |
| and related actions. | |

FILED IN OPEN COURT
MAR 1 3 2006    2:00 PM
SHIRLEY B. PARRAGUIRRE, CLERK
BY _____
MELISSA SWINN    DEPUTY

The following special verdict forms have been prepared to assist in rendering your decision. Follow each question on the verdict form, in the order they are presented.

DATED this 10 day of March , 2006

_____
District Court Judge

RECEIVED
MAR 13 2006
COUNTY CLERK

0919

VERDICT FORM _____

**FRAUD**

1.  ALAN RAPOPORT is liable [yes] is not liable
    [no] for FRAUD.                                         No

    a.  If he is liable, the jury awards economic
        damages in the amount of                       $      0

    b.  If he is liable,  the jury awards non-
        economic damages in the amount of              $      0

**NEGLIGENT MISREPRESENTATION**

1.  ALAN RAPOPORT is liable [yes] is not liable
    [no] for NEGLIGENT MISREPRESENTATION            Yes

    a.  If he is liable, the jury awards economic
        damages in the amount of                       $      0

    b.  If he is liable,  the jury awards non-
        economic damages in the amount of              $  250,000

**BREACH OF CONTRACT**

**For Perry Klein's Claims against Alan Rapoport**

1.  ALAN RAPOPORT is liable [yes] is not liable
    [no] for BREACH OF CONTRACT.                    Yes

    a.  If he is liable, the jury awards damages
        in the amount of                               $  2,857,800

**For Alan Rapoport's Claims Against Perry Klein**

1.  PERRY KLEIN is liable [yes] is not liable [no]
    for BREACH OF CONTRACT.                          No

    a.  If he is liable, the jury awards damages
        in the amount of                               $      0

**BREACH OF IMPLIED CONVENANT OF GOOD FAITH AND FAIR DEALING**

1.  ALAN RAPOPORT is liable [yes] is not liable [no]
    for BREACH OF IMPLIED COVENANT OF
    GOOD FAITH AND FAIR DEALING.                     Yes

    a.    If he is liable, the jury awards economic
damages in the amount of      $    *0*

    b.    If he is liable, the jury awards non-
economic damages in the amount of    $    *0*

## UNJUST ENRICHMENT

1.    ALAN RAPOPORT is liable [yes] is not liable
[no] for UNJUST ENRICHMENT      *No*

    a.    If he is liable, the jury awards
disgorgement damages in the amount of    $    *0*

2.    SHELLEY RAPOPORT is liable [yes] is not liable
[no] for UNJUST ENRICHMENT      *No*

    a.    If she is liable, the jury awards
disgorgement damages in the amount of    $    *0*

## ABUSE OF PROCESS

1.    ALAN RAPOPORT is liable [yes] is not liable
[no] for ABUSE OF PROCESS      *YES*

    a.    If he is liable, the jury awards economic
damages in the amount of      $    *0*

    b.    If he is liable, the jury awards non-
economic damages in the amount of    $ *750,000*

2.    SCOTT SIBLEY is liable [yes] is not liable [no]
for ABUSE OF PROCESS      *YES*

    a.    If he is liable, the jury awards economic
damages in the amount of      $    *0*

    b.    If he is liable, the jury awards non-
economic damages in the amount of    $ *10,000*

## OUSTER

1.    ALAN RAPOPORT is liable [yes] is not liable
[no] for OUSTER      *YES*

    a.    If he is liable, the jury awards economic
damages in the amount of    $ *125,000*

VERDICT FORM _____

b.   If he is liable, the jury awards non-
    economic damages in the amount of                    $ 200,000

2.   SHELLEY RAPOPORT is liable [yes] is not liable
    [no] for OUSTER                                      No

   a.   If she is liable, the jury awards economic
       damages in the amount of                          $ 0

   b.   If she is liable, the jury awards non-
       economic damages in the amount of                 $ 0

## CONSPIRACY TO OUST

1.   ALAN RAPOPORT is liable [yes] is not liable
    [no] for CONSPIRACY TO OUST                          YES

   a.   If he is liable, the jury awards economic
       damages in the amount of                          $ 50,000

   b.   If he is liable, the jury awards non-
       economic damages in the amount of                 $ 0

2.   SHELLEY RAPOPORT is liable [yes] is not liable
    [no] for CONSPIRACY TO OUST                          No

   a.   If she is liable, the jury awards economic
       damages in the amount of                          $ 0

   b.   If she is liable, the jury awards non-
       economic damages in the amount of                 $ 0

3.   SCOTT SIBLEY is liable [yes] is not liable [no]
    for CONSPIRACY TO OUST                               YES

   a.   If he is liable, the jury awards economic
       damages in the amount of                          $ 10,000

   b.   If he is liable, the jury awards non-
       economic damages in the amount of                 $ 0

## INVASION OF PRIVACY

1.   ALAN RAPOPORT is liable [yes] is not liable
    [no] for INVASION OF PRIVACY                         YES

VERDICT FORM _____

a.   If he is liable, the jury awards economic
     damages in the amount of                              $   *0*

b.   If he is liable,  the jury awards non-
     economic damages in the amount of                     $   *0*

2.   SHELLEY RAPOPORT is liable [yes] is not liable
     [no] for INVASION OF PRIVACY                          **No**

a.   If she is liable, the jury awards economic
     damages in the amount of                              $   *0*

b.   If she is liable,  the jury awards non-
     economic damages in the amount of                     $   *0*

3.   CHRIS FIELDS is liable [yes] is not liable [no]
     for INVASION OF PRIVACY                               **No**

a.   If he is liable, the jury awards economic
     damages in the amount of                              $   *0*

b.   If he is liable,  the jury awards non-
     economic damages in the amount of                     $   *0*

## CONVERSION

### Partnership Interest

1.   ALAN RAPOPORT is liable [yes] is not liable
     [no] for CONVERSION as it related to a
     partnership interest                                  **YES**

a.   If he is liable, the jury awards economic
     damages in the amount of                              $   *0*

b.   If he is liable,  the jury awards non-
     economic damages in the amount of                     $   *0*

2.   SHELLEY RAPOPORT is liable [yes] is not liable
     [no] for CONVERSION as it relates to a
     partnership interest                                  **No**

a.   If she is liable, the jury awards economic
     damages in the amount of                              $   *0*

b.   If she is liable,  the jury awards non-
     economic damages in the amount of                     $   *0*

VERDICT FORM _____

#### Bedroom Property

1. ALAN RAPOPORT is liable [yes] is not liable [no] for CONVERSION as it related to the bedroom property

YES

   a.   If he is liable, the jury awards economic damages in the amount of

$ 0

   b.   If he is liable, the jury awards non-economic damages in the amount of

$ 0

2. SHELLEY RAPOPORT is liable [yes] is not liable [no] for CONVERSION as it relates to a bedroom property

No

   a.   If she is liable, the jury awards economic damages in the amount of

$ 0

   b.   If she is liable, the jury awards non-economic damages in the amount of

$ 0

3. CHRIS FIELDS is liable [yes] is not liable [no] for CONVERSION as it relates to the bedroom property

No

   a.   If he is liable, the jury awards economic damages in the amount of

$ 0

   b.   If he is liable, the jury awards non-economic damages in the amount of

$ 0

#### Golf Membership

1. PERRY KLEIN is liable [yes] is not liable [no] for CONVERSION as it related to the golf membership

YES

   a.   If he is liable, the jury awards economic damages in the amount of

$ 60,000

   b.   If he is liable, the jury awards non-economic damages in the amount of

$ 0

#### LIBEL (Klein's Claims Against Rapoport)

VERDICT FORM _____

1. ALAN RAPOPORT is liable [yes] is not liable [no] for LIBEL

   **YES**

   a. If he is liable, the jury awards economic damages in the amount of

   $ 0

   b. If he is liable, the jury awards non-economic damages in the amount of

   $ 10,000

2. SHELLEY RAPOPORT is liable [yes] is not liable [no] for LIBEL

   **No**

   a. If she is liable, the jury awards economic damages in the amount of

   $ 0

   b. If she is liable, the jury awards non-economic damages in the amount of

   $ 0

## LIBEL (Rapoport's Claims Against Kleins)

1. PERRY KLEIN is liable [yes] is not liable [no] for LIBEL

   **No**

   a. If he is liable, the jury awards economic damages in the amount of

   $ 0

   b. If he is liable, the jury awards non-economic damages in the amount of

   $ 0

2. RITA KLEIN is liable [yes] is not liable [no] for LIBEL

   **No**

   a. If she is liable, the jury awards economic damages in the amount of

   $ 0

   b. If she is liable, the jury awards non-economic damages in the amount of

   $ 0

## SLANDER (Rapoport's Claims Against Kleins)

1. PERRY KLEIN is liable [yes] is not liable [no] for SLANDER

   **No**

   a. If he is liable, the jury awards economic damages in the amount of

   $ 0

   b. If he is liable, the jury awards non-economic damages in the amount of

   $ 0

<div align="center">VERDICT FORM _____</div>

2.   RITA KLEIN is liable [yes] is not liable [no] for
     SLANDER                                                    No

     a.   If she is liable, the jury awards economic
          damages in the amount of                             $   0

     b.   If she is liable, the jury awards non-
          economic damages in the amount of                    $   0

**SLANDER PER SE (Klein's Claims Against Rapoports)**

1.   ALAN RAPOPORT is liable [yes] is not liable
     [no] for SLANDER PER SE                                   Yes

     a.   If he is liable, the jury awards economic
          damages in the amount of                             $   0

     b.   If he is liable, the jury awards non-
          economic damages in the amount of                    $ 20,000

2.   SHELLEY RAPOPORT is liable [yes] is not liable
     [no] for SLANDER PER SE                                   No

     a.   If she is liable, the jury awards economic
          damages in the amount of                             $   0

     b.   If she is liable, the jury awards non-
          economic damages in the amount of                    $   0

**SLANDER PER SE (Rapoport's Claims Against Kleins)**

1.   PERRY KLEIN is liable [yes] is not liable [no]
     for SLANDER PER SE                                        NO

     a.   If he is liable, the jury awards economic
          damages in the amount of                             $   0

     b.   If he is liable, the jury awards non-
          economic damages in the amount of                    $   0

2.   RITA KLEIN is liable [yes] is not liable [no] for
     SLANDER PER SE                                            No

     a.   If she is liable, the jury awards economic
          damages in the amount of                             $   0

0926

VERDICT FORM _____

b.   If she is liable, the jury awards non-
economic damages in the amount of     $     0

## INTERFERENCE WITH ECONOMIC ADVANTAGE

1.   ALAN RAPOPORT is liable [yes] is not liable
[no] for INTERFERENCE WITH ECONOMIC
ADVANTAGE     YES

a.   If he is liable, the jury awards economic
damages in the amount of     $ 120,000

b.   If he is liable, the jury awards non-
economic damages in the amount of     $ 370,000

## EMOTIONAL DISTRESS

1.   ALAN RAPOPORT is liable [yes] is not liable
[no] for EMOTIONAL DISTRESS     YES

a.   If he is liable, the jury awards economic
damages in the amount of     $ 100,000

b.   If he is liable, the jury awards non-
economic damages in the amount of     $ 100,000

2.   SHELLEY RAPOPORT is liable [yes] is not liable
[no] for EMOTIONAL DISTRESS     NO

a.   If she is liable, the jury awards economic
damages in the amount of     $     0

b.   If she is liable, the jury awards non-
economic damages in the amount of     $     0

## SLANDER OF TITLE

1.   ALAN RAPOPORT is liable [yes] is not liable
[no] for SLANDER OF TITLE     YES

a.   If he is liable, the jury awards economic
damages in the amount of     $     0

b.   If he is liable, the jury awards non-
economic damages in the amount of     $ 20,000

0927

1

VERDICT FORM _____

2

**FRAUDULENT CONVEYANCE**

3    1.   ALAN RAPOPORT fraudulently convey 2 Rue
       Allard to the Alan and Shelly Rapoport Trust?    YES

4

5    2.   ALAN RAPOPORT fraudulently convey 2 Rue
       Allard to 2 Rue Allard, LLC    YES

6

7  DATED this 13th day of March , 2006

8               DEREK STOTT

9  Foreperson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

0928

VERDICT FORM _____

PUNITIVE DAMAGES VERDICT FORM

We, the jury in the above entitled action, find the following special verdict on the questions submitted to us:

<u>Question</u>: Do you find by clear and convincing evidence that the defendant was guilty of, or committed oppression, malice, or fraud in the conduct upon which you base your finding of liability for the Defendant?

    a.    For Alan Rapoport, write the answer "yes" or "no" after the name of each cause of action for which you find the Defendant committed oppression, malice, or fraud:

| <u>Cause of Action</u> | <u>Yes / No</u> |
|---|---|
| Fraud in one of its two varieties | No |
| Breach of Good Faith and Fair Dealing | YES |
| Abuse of Process | YES |
| Ouster | YES |
| Conspiracy to Oust | YES |
| Invasion of Privacy | YES |
| Conversion | YES |
| Libel | YES |
| Slander Per Se | YES |
| Interference with Economic Advantage | YES |
| Intentional Infliction of Emotional Distress | YES |
| Slander of Title | YES |
| Fraudulent Conveyance | YES |

b.  For Defendant Shelley Rapoport:

| Cause of Action | Yes / No |
| --- | --- |
| Ouster | No |
| Conspiracy to Oust | No |
| Invasion of Privacy | No |
| Conversion | No |
| Emotional Distress | |

0930

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

c.    For Defendant Scott Sibley

| Cause of Action | Yes / No |
|---|---|
| Abuse of Process | YES |
| Conspiracy to Oust | YES |

1

INSTRUCTION NO. _____

2      d.    For Defendant Chris Fields

3          Cause of Action              Yes / No

4   Invasion of Privacy                 No

5   Conversion                          No

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

VERDICT FORM _____

2    c.    For Defendant Perry Klein

3                    Cause of Action                Yes / No

4    Libel / Slander                    No

5

6    d.    For Defendant Rita Klein

7                    Cause of Action                Yes / No

8    Libel / Slander                    No

9

10    DATED this 13th day of MARCH , 2006

11

12    O-g SHH    DEREK STOTT

13    Jury Foreman

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3                          DISTRICT COURT

4                       CLARK COUNTY, NEVADA

5   PERRY KLEIN an individual          )

6                  Plaintiff,          )      Case No.    A478057

7         -vs-                         )      Dept No.    III

8   ALAN RAPOPORT, an individual,      )          12:30 P.M
    SHELLEY RAPOPORT an individual,    )
9   ASHLEY RAPOPORT an individual,     )      FILED IN OPEN COURT
    JASON HUFFER, an individual, SCOTT )          MAR 1 5 2006
10  SIBLEY, an individual, CHRIS FIELDS)
    an individual, ALAN AND SHELLEY    )      SHIRLEY B. PARRAGUIRRE, CLERK
11  RAPOPORT FAMILY TRUST dated        )      BY Judy McFadden
    October 15, 1999; ALAN RAPOPORT as )         JUDY McFADDEN DTV
12  Trustee and SHELLEY RAPOPORT as    )
    Trustee; 2 RUE ALLARD a limited    )
13  liability company and DOES 1 through X,)
    inclusive, and ROE CORPORATIONS I  )
14  through X, inclusive; and related actions.)

15                 Defendant(s).       )

16

17                         **VERDICT**

18

19

20

21

22

23

24

25

26

27

28

1039

VERDICT FORM _____

PUNITIVE DAMAGES--BIFURCATED TRIAL--PHASE II

We, the jury in the above entitled action, find the following special verdict on the questions submitted to us:

<u>Question</u>: What amount of punitive damages, if any, shall  be assessed against Defendant?

A.    Alan Rapoport

| Cause of Action | Amount |
|---|---|
| Breach of Good Faith and Fair Dealing | $  0 |
| Abuse of Process | $  1,000,000 |
| Ouster | $  750,000 |
| Conspiracy to Oust | $  275,000 |
| Invasion of Privacy | $  0 |
| Conversion | $  0 |
| Libel | $  75,000 |
| Slander Per Se | $  75,000 |
| Interference with Economic Advantage | $  1,500,000 |
| Intentional Infliction of Emotional Distress | $  1,250,000 |
| Slander of Title | $  75,000 |
| Fraudulent Transfer | $  0 |

6

1

VERDICT FORM _____

2

3      B.      Defendant Scott Sibley

        Cause of Action                          Amount

4   Abuse of Process                      $    75,000

5   Conspiracy to Oust                    $    25,000

6

7   Dated this 15 day of March, 2006

8   O—5 S.H.  DEREK STOTT

9   Foreperson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit F**

# CLARK COUNTY

Fee
Mileag
Copy
TOTA

### HENDERSON TOWNSHIP



## Constable's Office

243 WATER STREET • HENDERSON, NEVADA 89015

EARL MITCHELL
*Constable*

Telephone
(702) 455-7940
(702) 455-7942 - FAX

## DOCUMENT/NOTICE/MESNE
# APPLICATION

### TYPE OF APPLICATION REQUESTED . . . SELECT ONLY ONE

- [ ] 5 DAY VIOLATION OF LEASE.
- [x] 5 DAY NOTICE TO PAY THE RENT OR QUIT THE PREMISES.
- [ ] 5 DAY UNLAWFUL DETAINER. *(This can only be obtained following the expiration of time of the above Notices. (Except 5 Day Pay or Quit.) Attach copy of previously served Notice.)*
- [ ] 30 DAY NOTICE TO QUIT THE PREMISES.
- [ ] 3 DAY NOTICE OF FORECLOSURE.
- [ ] 5 DAY BURGLARY NOTICE: *(This is served for violations of the rent or lease agreement and is NOT associated IN ANY WAY with non-payment of rent.)*

REASON: _____

- [ ] 45 DAY NOTICE.
- [ ] 10 DAY NOTICE. *(Usually associated with mobile home units.)*
- [x] OTHER NOTICE: SUMMARY EVICTION

ONLY MONIES EXCHANGING HANDS WAS CK FROM SQUATTER TO PAY FOR OCT/NOV EXP RELATED TO THEIR TR SQUATTER TO EUROPE

### LANDLORD/OWNER INFORMATION

Business Name: _____
Last Name: RAPOPORT
First Name: ALAN
Address: 2 RUE ALLARD
City: HENDERSON   State: NV   Zip: 89011
Telephone Number: 805-501-5550

### TENANT INFORMATION

Name: PERRY + RITA KLEIN
Address: SAME AS ACROSS
City: _____  State: _____  Zip: _____
Telephone Number: 702-592-8008
Major Cross Street: _____

Additional Information: FRIENDS STAYED IN HOUSE FOR 2 WKS IN SEPT BEFORE GOING TO EUROPE FROM 10/13 - 11/10/03 UPON RETURNING INSTEAD OF LEAVING THEY MOVED ALL THEIR CLOTHING INTO MY DWELLING AND REFUSE TO LEAVE

### RENTAL INFORMATION

Tenancy Began ............. 8 / 15 / 03
Date Rent Due ............. 9 / 15 / 03
Monthly Rent ............. N/A $ 5,000
Cleaning Deposit ... N/A $ 0
Security Deposit ... N/A $ 0
Advanced Rent ............. $ 0
Rent Now Owed ............. $ 60,000 / 60,000
Late Fee ............. $ 3,600 / 3,600

### WARNING

This form is NOT an Eviction Notice. It is NOT a Notice of any kind. It is ONLY to be used as an application by a landlord to obtain a Notice. If you the tenant, receive this form, THROW IT AWAY.

APPLICANT SIGNATURE: _____   DATE: 12/22/03

PLEASE PRINT NAME: ALAN RAPOPORT   PLEASE CIRCLE ONE: Plaintiff  Agent  Owner

TELEPHONE NUMBER: 805-501-5550

## ACCEPTANCE BY CONSTABLE

I have accepted this mesne to be served upon and mailed to the tenant named in this action according to law this

_____ day of _____, 20___

KLE000529

CONSTABLE'S OFFICE CLERK

| In re:<br>SHALAN ENTERPRISES, LLC<br>      Substantially consolidated with Alan Rapoport<br><br>                                       Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 2:09-bk-43263<br><br>                  2:09-bk-43499-SB |
| --- | --- |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

506 Santa Monica Blvd., Suite 200, Santa Monica, CA 90401

A true and correct copy of the foregoing document described **MOTION TO ESTIMATE KLEINS' CLAIM FOR VOTING PURPOSES; MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 11/10/10, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

    Robert D Bass rbass@greenbass.com
    Russell Clementson russell.clementson@usdoj.gov
    Leslie A Cohen leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com
    Caroline Djang crd@jmbm.com
    Joseph A Eisenberg jae@jmbm.com
    Thomas M Geher tmg@jmbm.com
    Jeffrey J Hagen hagenlaw@earthlink.net
    Sheri Kanesaka kanesaka@gmail.com
    Charles Liu cliu@mrllp.com, fbaig@mrllp.com
    United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
    David J Williams dwilliams@mrllp.com

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On __11/10/10_____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                           **F 9013-3.1**

| In re:<br>SHALAN ENTERPRISES, LLC<br>    Substantially consolidated with Alan Rapoport<br><div align="right">Debtor(s).</div> | CHAPTER  11<br><br>CASE NUMBER  2:09-bk-43263<br><br>                2:09-bk-43499-SB |
| --- | --- |

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____11/10/10_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

   Anne Hamann  ahamann@piteduncan.com
Erin Laney  ecfcacb@piteduncan.com
Steven Lawrence  generalmailaswlawoffice.com@alvaradoca.com
Brian Paino  ecfcacb@piteduncan.com
Rich Doxey  rich@davidwinterton.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 11/10/10 | Brian Link | /s/ Brian Link |
| --- | --- | --- |
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**

| In re:<br>SHALAN ENTERPRISES, LLC<br>        Substantially consolidated with Alan Rapoport<br><div align="right">Debtor(s).</div> | CHAPTER 11<br><br>CASE NUMBER 2:09-bk-43263<br><br><div align="right">2:09-bk-43499-SB</div> |
|---|---|

## Service List

| Hon. Peter Carroll<br>U.S. Bankruptcy Court<br>255 E. Temple Street<br>Los Angeles, CA 90012 | Russell Clementson<br>725 S Figueroa Ste 2600<br>Los Angeles, CA 90017 | Caroline Djang<br>Jeffer Mangels Butler & Mitchell LLP<br>1900 Ave of the Stars 7th fl<br>Los Angeles, CA 90067 |
|---|---|---|

Secured Creditors – Shalan Enterprises

| CitiMortgage Inc.<br>CT Corporation System<br>818 W Seventh Street<br>Los Angeles, CA 90017 | First Bank of Beverly Hills<br>Annette Vecchio<br>23901 Calabasas Road, Ste 1050<br>Calabasas, CA 91302 | GMAC Wholesale Mortgage Corp.<br>CSC-Lawyers Incorporating Service<br>2730 Gateway Oaks Drive, Ste 100<br>Sacramento, CA 95833 |
|---|---|---|
| Bank of America, National Association<br>CT Corporation System<br>818 W Seventh Street<br>Los Angeles, CA 90017 | First Horizon Home Loan Corp<br>CT Corporation System<br>818 W Seventh Street<br>Los Angeles, CA 90017 | Wells Fargo Bank, National Association<br>CSC – Lawyers Incorporation Service<br>2730 Gateway Oaks Drive, Ste 100<br>Sacramento, CA 95833 |

20 Largest in Shalan Enterprises Case

| Ryan & Sari Steaffens<br>27312 Pinavette<br>Mission Viejo, CA 92691 | Isaiah Cervantes & Char-Leig Hoyes<br>30729 Mainmast<br>Agoura Hills, CA 91301 | Debbie Lucas<br>5837 Lake Lindero<br>Agoura Hills, CA 91301 |
|---|---|---|
| Thomas McGarry<br>5823 Capehorn<br>Agoura Hills, CA 91301 | Deanna & Tony Cobb<br>552 Highview<br>Newbury Park, CA 91320 | Leslie Wise<br>6017 Hackers<br>Agoura Hills, CA 91301 |
| Joe Conlon<br>5883 Capehorn<br>Agoura Hills, CA 91301 | Robert Walton/Irina & Emily Shikhva<br>30723 Mainmast<br>Agoura Hills, CA 91301 | |
| Kaydi Truman & Zachery Elam<br>5834 Capehorn<br>Agoura Hills, CA 91301 | David & Alec Buehler<br>5827 Capehorn<br>Agoura Hills, CA 91301 | |
| Leila Mahanedi & Shaun Frank<br>30865 Overfall<br>Westlake Village, CA 91382 | Myra Deck<br>5322 Lake Crest Dr<br>Agoura Hillls, CA 91301 | |
| Shaul Maouda<br>30657 Passageway Pl<br>Agoura Hills, CA 91301 | Charles & Christina Watanabe<br>5676 Slicer Circle<br>Agoura Hills, CA 91301 | |
| Valerie Freedman<br>5645 Slicer Circle<br>Agoura Hills, CA 91301 | Eric Dillon<br>125 Los Vientos<br>Newbury Park, CA 91320 | |
| Stratford Dews<br>5354 Captains Pl<br>Agoura Hills, CA 91301 | Joel Cohen<br>1674 Glenbrock<br>Newbury Park, CA 91320 | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**

| In re:<br>SHALAN ENTERPRISES, LLC<br>     Substantially consolidated with Alan Rapoport<br><div align="right">Debtor(s).</div> | CHAPTER 11<br><br>CASE NUMBER 2:09-bk-43263<br><br>     2:09-bk-43499-SB |
| --- | --- |

**Special Notice – Shalan Enterprises Case**

Pima County Treasurer
Patti Davidson, Chief Deputy Treasurer
115 N. Church Avenue
Tucson, AZ 85701

**20 Largest in Alan Rapoport Case:**

Alan Rapoport
4515 Roma Court
Marina Del Ray, CA 90292

First Bank
PO Box 790269
St Louis, MO 63179-0269

Sylvia Lissat
c/o Ovvie Miller, Esq.
9601 Wilshrie Blvd., #710
Beverly Hills, CA 90210

Josh Childress
135 E Harmon #1501
Las Vegas, NV 89109

Lewis and Roca
3993 Howard Hughes Parkway
Las Vegas, NV 89169

Kopple & Klinger
10866 Wilshire Blvd., #1500
Los Angeles, CA 90024-4357

Citi Cards
PO Box 6401
The Lakes, NV 88901-6401

Chase Card Services
PO Box 94014
Palatine, IL 60094-4014

Rebel Systems
6620 South Tenaya Way, Suite 160
Las Vegas, NV 89113

Kristin De Benedictis
135 E Harmon #1503
Las Vegas, NV 89109

The Impala
675 Third Avenue
New York, NY 10017

The Signature at MGM Grand
3799 Las Vegas Blvd South
Las Vegas, NV 89109-4319

FourTurnberry Place
PO 98809
Las Vegas, NV 89193

Susan Vier
404 E 76th Street #2I
New York, NY 10021

Lake Las Vegas South Shore
Residential Comm Assoc
8360 E Va De Ventura, Bldg L, #100
Scottsdale, AZ 85258

Bloomingdales
PO Box 183083
Columbus, OH 43218-3083

Park Imperial
230 W 56th Street
New York, NY 10019

American Express
Box 0001
Los Angeles, CA 90096-8000

Nevada Power Energy
PO Box 30086
Reno, NV 89520-3086

Los Angeles Dept Of Water And Power
PO Box 30808
Los Angeles, CA 90030-0808

Western Exterminator
10936 S La Cienega
Lennox, CA 90304

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                    **F**
**9013-3.1**