FILED & ENTERED

APR 17 2012

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egarcia    DEPUTY CLERK

# NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>SHALAN ENTERPRISES, LLC,<br><br>             Debtor. | Case No. 2:09-bk-43263-PC<br><br>Chapter 11 |
| In re:<br><br>ALAN RAPOPORT,<br><br>             Debtor. | Case No. 2:09-bk-43499-PC<br><br>Chapter 11<br><br>Jointly Administered Under<br>Case No. 2:09-bk-43263-PC<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW RE:<br>MOTION OF DEBTORS FOR AN ORDER<br>TO COMPEL THE PERFORMANCE OF<br>PERRY AND RITA KLEIN UNDER THE<br>SETTLEMENT AGREEMENT AND FOR<br>AN AWARD OF ATTORNEYS' FEES<br><br>Date:   February 22, 2012<br>Time:  9:30 a.m.<br>Place:  United States Bankruptcy Court<br>         Courtroom # 1539<br>         255 East Temple Street<br>         Los Angeles, CA  90012 |

Alan Rapoport ("Rapoport") and Shalan Enterprises, LLC ("Shalan") (collectively,

"Debtors") seek an award of attorneys' fees and costs incurred enforcing a Compromise and

Settlement Agreement ("Settlement") executed by the Debtors and Perry Klein and Rita Klein

(the "Kleins") on June 21, 2011 and approved by the court on July 11, 2011.[1]  The Kleins filed

an untimely response in opposition to the Debtors' Motion; and by an improperly noticed

counter-motion seek an award of attorneys' fees and costs against the Debtors.[2]  The court,

having considered the pleadings, evidentiary record,[3] and arguments of counsel, makes the

---

[1]  On December 14, 2011, the Debtors filed and served their Motion for an Order to Compel the Performance of Perry and Rita Klein Under the Settlement Agreement and for an Award of Attorneys' Fees ("Debtors' Motion") and set the matter for hearing on regular notice for January 4, 2012.

[2]  On December 28, 2011, the Kleins filed and served a 67-page Opposition to Motion of Debtors for an Order to Compel the Performance of Perry and Rita Klein Under the Settlement Agreement and for an Award of Attorneys' Fees and Counter-Motion for Order to Compel Debtors to Perform Under the Settlement Agreement and for an Award of Attorneys' Fees and Costs ("Opposition").  Kleins' Opposition included the Declaration of David J. Winterton and copies of certain documents identified as Exhibits A through H.  Pursuant to LBR 9013-1(f), a written response in opposition to the Debtors' Motion was required to be filed and served on the Debtors not later than December 21, 2011.  "Papers not timely filed and served may be deemed by the court to be consent to the granting or denial of the motion, as the case may be."  LBR 9013-1(h).  The Kleins' Opposition was not only untimely, but the Debtors were not given proper notice of the relief sought by counter-motion in the Opposition.

[3]  Debtors' Motion was supported by the following declarations:  (a) Declaration of Alexis M. McGinness; (b) Declaration of Joseph A. Eisenberg; and (c) Declaration of Shelly Rapoport. Debtors' Motion stated that "Debtors will file a supplemental declaration concerning the amount of the requested attorneys fees concurrently prior to the hearing on this Motion."  Debtors' Motion 11:8-10.  In their late-filed Opposition, the Kleins asserted that they had acted in good faith and that it was, in fact, the Debtors' fault that the Settlement had not been consummated. On December 29, 2011, Debtors filed and served a reply to the Kleins' Opposition supported by the Supplemental Declaration of Joseph A. Eisenberg and the Declaration of Mark Ferrario.

At the hearing on January 4, 2012, the court considered the Kleins' late-filed Opposition to the Debtors' Motion, ordered the necessary relief to permit consummation of the Settlement, and continued the hearing on the Motion to February 22, 2012, solely with respect to the issue of attorneys' fees.  On January 11, 2012, an Amended Order Re:  Motion of Debtors for an Order to Compel the Performance of Perry and Rita Klein Under the Settlement Agreement and for an Award of Attorneys Fees was entered which required, in pertinent part, that:  (a) Debtors' counsel file and serve a declaration regarding attorneys' fees and costs incurred in enforcing the Settlement not later than January 27, 2012; (b) the Kleins file and serve a responsive declaration not later than February 12, 2012, and (c) the Debtors file and serve a reply not later than February 17, 2012.

following findings of fact and conclusions of law pursuant to F.R.Civ.P. 52(a),[4] as incorporated into FRBP 7052 and applied to contested matters by FRBP 9014(c); and based thereon, will award the Debtors rents in the amount of $4,013.65 and attorneys fees and costs in the amount of $20,000.

---

On January 27, 2012, Debtors filed the following declarations: (a) Declaration of Joseph A. Eisenberg Regarding Attorneys' Fees and Costs in Support of: Motion of Debtors for an Order to Compel the Performance of Perry and Rita Klein Under the Settlement Agreement and for an Award of Attorneys' Fees ("Eisenberg Declaration"); and (b) Declaration of Mark Ferrario Regarding Attorneys' Fees and Costs in Support of: Motion of Debtors for an Order to Compel the Performance of Perry and Rita Klein Under the Settlement Agreement and for an Award of Attorneys' Fees ("Ferrario Declaration"). On February 10, 2012, the Kleins filed and served the following declarations: (a) Affidavit of Christy Franks in Support of Opposition to the Motion for an Order to Compel the Performance of Perry and Rita Klein Under the Settlement Agreement and for an Award of Attorneys' Fees and in Support of Creditor Rita and Perry Kleins' Counter-Motion for Attorneys' Fees and Costs ("Franks Affidavit"); and (b) Declaration of David J. Winterton in Support of Opposition to the Motion for an Order to Compel the Performance of Perry and Rita Klein Under the Settlement Agreement and for an Award of Attorneys' Fees and in Support of Creditor Rita and Perry Kleins' Counter-Motion for Attorneys' Fees and Costs ("Winterton Declaration"). On February 17, 2012, the Debtors filed a Reply to: Declaration of David J. Winterton and Affidavit of Christy Franks in Support of Opposition to the Motion for an Order to Compel the Performance of Perry and Rita Klein Under the Settlement Agreement and for an Award of Attorneys' Fees and in Support of Creditor Rita and Perry Kleins' Counter-Motion for Attorneys' Fees and Costs ("Debtors' Reply"). In their reply, the Debtors raised 79 specific evidentiary objections to statements contained in the Winterton Declaration and further responded that Winterton's statements were false and misleading. The court grants the Debtors' Motion to Strike "Reply to the Debtor's Opposition to Rita and Perry Kleins' Countermotion for Attorneys Fees and Costs filed February 22, 2012" as untimely. The Debtors and the Kleins, having consented to have the matter determined without an evidentiary hearing, overrules the Debtors' objections to the Winterton Declaration. The Debtors' objections are directed primarily at the weight and veracity, rather than the admissibility, of Winterton's testimony. The court has given the Winterton Declaration appropriate weight in determining the disputed issues raised by the competing motions.

[4] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P."). "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

# I. FINDINGS OF FACT

1. On June 21, 2011, Debtors filed and served a Motion of Debtors in Possession for an Order Authorizing the Execution and Performance of Settlement Agreement and Compromise of Controversy Pursuant to Bankruptcy Rule 9019 ("Settlement Motion").

2. On June 21, 2011, Debtors filed and served a Notice of Filing of Motion of Debtors in Possession for an Order Authorizing the Execution and Performance of Settlement Agreement and Compromise of Controversy Pursuant to Bankruptcy Rule 9019, and gave 14-days notice to parties in interest of an opportunity to object and request a hearing on the Settlement Motion.

3. No creditor or other party in interest filed an objection to the Settlement Motion nor requested a hearing thereon.

4. On July 11, 2011, an Order Authorizing the Execution and Performance of Settlement Agreement and Compromise of Controversy Pursuant to Bankruptcy Rule 9019 was entered in the case which granted the Settlement Motion, approved the Settlement, and provided, in pertinent part, that the "Debtors are authorized to execute and perform the terms of the Agreement, including the transfers of property of the estate, the payment of monies and the exchange of releases, as specified in the Agreement."[5]

5. Article 1 of the Settlement entitled "**Incorporation/Settlement Consideration**" requires the Debtors to pay to the Kleins the sum of $4,750,000 consisting, among other things, of a transfer of 10 parcels of real property and a cash payment of not less than $500,000, as more particularly set forth therein.  Section 1.2.3.2 of the Settlement states, in pertinent part, that the consideration for the Settlement includes "all rents that are received and allocable to periods following the Closing Date . . . ."  Debtors' Motion, Ex. 1 at 20

6. Section 4.1 of the Settlement entitled "**Closing Date**" provides that:  "Unless otherwise agreed by the Parties in writing, or extended by the provisions of section 2.3.6, the Closing of the transaction contemplated by this Agreement ("Closing") shall occur not later than

---

[5]  Order Authorizing the Execution and Performance of Settlement Agreement and Compromise of Controversy Pursuant to Bankruptcy Rule 9019 entered on July 11, 2011, Dkt # 262, 3:4-6.

July 31, 2011." Id. at 23.  However, Section 4.1 did not contemplate a <u>final</u> closing date until November 21, 2011, when the Settlement required the Debtors to "irrevocably transfer to Kleins (i) the remaining Excluded Parcel; or (ii) the Settlement Value of such Excluded Parcel" in accordance with the Settlement.  Id.  The Debtors were also required to "pay the remaining balance of the Cash Portion" on or before November 21, 2011.  Id.

7.  Section 4.5 of the Settlement entitled "**Conditions to Closing**" states, in pertinent part, that "[c]losing shall be conditioned upon the following . . .

> 4.5.4  **Delivery of Documents by Kleins.**  The delivery by Kleins to escrow of all documents and things which this Agreement obligates Kleins to deliver to Escrow, including, but not limited to, the following documents, which shall have no binding effect until [the Debtors] have fully performed their obligations set forth herein, which performance shall be a condition precedent to the binding effect.

> 4.5.4.1  **Dismissal of Lawsuit.**  Such pleadings, duly executed, in form and in substance necessary and appropriate to dismiss the Lawsuit[6] and any proceedings pending therein and related thereto;

> 4.5.4.2  **Dismissal and Withdrawal of Bankruptcy Court Pleadings.**  Such pleadings, duly executed, in form and in substance necessary and appropriate to withdraw any pleadings, claims, demands, and set aside and avoid any orders emanating therefrom, filed by or on behalf of Kleins in the Bankruptcy Case.

> 4.5.4.3  **Release of Security.**  The execution and delivery by Kleins to the Escrowholder of (a) a stipulation for the release of all such pledges and for the relief from all orders respecting transfer of assets, and (b) a release and reconveyance of all consensual and judicial liens recorded by Kleins with respect to any and all of [the Debtors'] assets.  The Releases shall be deposited into escrow to be released only at Closing.  If the Closing shall not occur for any reason, the Releases shall be null and void and of no further effect.

> 4.5.4.4  **Release of Interest in 2 Rue Allard.**  Such documents as may be necessary and appropriate to release any interests and any purported interests of Kleins in or to the real property commonly known as 2 Rule Allard, Henderson, Nevada 89011.

---

[6] Case No. A478057, styled <u>Klein v. Rapoport, et al.</u>, in the District Court, Clark County, Nevada.

Id. at 24-25.  Section 4.5 does not state whether the conditions apply to the closing date of July 31, 2011, set forth in § 4.1 or one of the other dates – September 21, 2011, October 21, 2011, or November 21, 2011, set forth in §§ 4.1(b) –(d), respectively.

8.  Section 5.2 of the Settlement entitled "**Rent Collections**" states:  "[The Debtors] agree that in the event that the [Debtors] or any affiliate of the [Debtors] <u>receives any rental payment</u> <u>or other payment from any tenant or other occupant or user of any of the Agreed Settlement</u> <u>Parcels for such tenant's or occupant's use and occupancy from and after Closing</u>, and with respect to an Excluded Parcel, from and after the date upon which such Excluded Parcel is to be transferred to Kleins, the [Debtors], not later than two (2) business days following receipt of such funds, will deliver such funds to Kleins or Kleins' designee, with all necessary and proper endorsements."  <u>Id.</u> at 27 (emphasis added).

9.  Section 1.2.3.2 entitled **Inclusion with Transfer of Settlement Proceeds**, states in pertinent part, that:  "The transfer of the Agreed Settlement Parcels shall include . . . all right, title, and interest of the Rapoport Parties as lessor in all leases, licenses, and other agreements to occupy all or any part of an Agreed Settlement Parcel, together with all rents and other sums to become due under such lease, license, and agreement, all rents that are received and allocable to periods <u>following</u> the Closing Date (as hereinafter defined) . . . .  <u>Id.</u> at 19-20 (emphasis added).

10.  Section 10.9 of the Settlement entitled "**Attorneys Fees and Costs**" states:  "Each of the Parties shall bear its own costs.  If any action is commenced to enforce the terms of this Agreement, the prevailing party shall be entitled to recover all of its expenses relating to such action, including without limitation, their reasonable attorney fees and costs."  <u>Id.</u> at 31.

11.  Seven of the 10 Agreed Settlement Parcels were to be transferred to the Kleins, or their designee, on July 31, 2011, pursuant to the Settlement.  The closing did not occur until August 31, 2011.

12.  The delay in the closing on the first 7 Agreed Settlement Parcels was attributable to action or inaction by both the Debtors and the Kleins.

13.  According to Winterton's letter dated August 5, 2011, there were only 2 of the 7 properties ready to close on July 31, 2011.  Winterton Decl., Ex. T.

14. Resolute Property Management, LLC, the Kleins' designee to which the 7 properties were to be transferred at close of escrow, was not registered by the Kleins as a business entity with the State of California until August 11, 2011. Debtors' Reply, Ex. 24 at 34.

15. First American Title Company ("First American"), the escrow holder, did not have funds from the Debtors to consummate a timely closing on July 31, 2011. Franks Affidavit, Ex. E. First American did not receive sufficient funds from the Debtors to close escrow on the first 7 Agreed Settlement Parcels until August 30, 2011. Id. Ex. O

16. Pursuant to § 4.2 of the Settlement, Rapoport demanded a Full Reconveyance of the Kleins' lien on certain real property at 5834 Cape Horn Drive, Agoura Hills, California, identified as an "Excluded Parcel" in § 1.2.5 of the Settlement, in conjunction with close of escrow. This was not one of the 7 Agreed Settlement Parcels in escrow. The Full Reconveyance was not received by First American Title Company until August 31, 2011. Id. Ex. Q.

17. Pursuant to § 4.5.4.4 of the Settlement, Rapoport also demanded a Release of Lien from the Kleins releasing their judgment lien on the real property at 2 Rue Allard, Henderson, Nevada. This was not one of the 7 Agreed Settlement Parcels in escrow. The Release of Lien was not received by First American Title Company until August 26, 2011. Id. Ex. K.

18. The Kleins began collecting rents from tenants of the first 7 Agreed Settlement Parcels in anticipation of the July 31, 2011, closing date specified in the Settlement. The Debtors dispute that Kleins are entitled to any rents attributable to the first 7 Agreed Settlement Parcels prior to the actual closing date of August 31, 2011.

19. By email dated August 29, 2011, Darlene W. Sanders of First American ("Sanders") advised Joseph A. Eisenberg ("Eisenberg") and David J. Winterton ("Winterton"): "PLEASE BE ADVISED THAT THE RENT STATEMENT PROVIDED BY ALAN IN CONNECTION WITH ALL 7 ESCROW'S IS THE BASIS FOR THE RENT PRORATION IN ESCROW. IN THE EVENT WE CLOSE ESCROW 8/31/2011, THERE WILL BE NO RENT PRORATIONS . . . ATTORNEY'S PLEASE DISCUSS THE RENT ISSUES OUTSIDE OF ESCROW AND LET ME KNOW WHEN TO EXPECT THE BALANCE OF FUNDS TO CLOSE OR WHEN

YOU BOTH ANTICIPATE CLOSING ALL 7 ESCROW.  THE DEMANDS WILL BE

EXPIRED AFTER 8/31/2011." Id. Ex. L.

20.  By email dated August 30, 2011, Sanders advised Eisenberg and Winterton:  "I

MUST have the balance of funds from Alan TODAY for recording 8/31/11.  Alan, please sign

and return ALL the estimates that I provided to you for review.  I will advise ALL parties when I

receive the balance of funds to close, TOGETHER with an email from Alan, authorizing me to

close ALL 7 escrow." Id. Ex. N.

21.  By email dated August 30, 2011, Eisenberg advised Sanders that "[w]e are a go for

closing the 7 escrows [on August 31, 2011]" and that "[Winterton] and I will hand the rents

reconciliation post-closing." Id. Ex. O.

22.  After closing on the first 7 Agreed Settlement Parcels on August 31, 2011, the

Debtors selected the real property at 552 Highview, Newbury Park, California ("Highview

Property"), as the "Excluded Parcel" to transfer to the Kleins pursuant to § 4.1(b) of the

Settlement, and the Debtors and Kleins sought to timely close escrow on the Highview Property

by September 21, 2011.  However, the Highview Property did not close until September 30,

2011.

23.  The delay in the closing on the 8th property was not necessarily attributable to action

or inaction by either the Debtors or the Kleins.

24.  By email dated September 16, 2011, Sanders advised Rapoport, the Kleins and

Winterton:  "We will NOT be in a position to close 9/21/11.  The Payoff information was

provided on Wednesday 9/14/2011 and Wells Fargo Bank informed us that there will be a 7-10

day turnaround for the payoff demand." Id. Ex. V.

25.  By email dated September 26, 2011, Christy Franks ("Franks"), Winterton's

paralegal, advised Eisenberg:  "Per Mr. Winterton, we need the Buyer's Settlement Statement

changed before Perry Klein will sign it.  We were supposed to close by the 21st of September,

therefore, he wants the rent paid prorated from this date, not 9/29/11 as the statement shows."

Id. Ex. W.

26.  However, Debtors and the Kleins agreed that the Highview Property should close and that the parties would reserve their rights with respect to a reconciliation of the rents collected from the Highview Property for resolution at a later date.  Id.

27.  Debtors "agree that the Kleins are entitled to the prorated rents for the period of September 21, 2011 – September 29, 2011 in the amount of $690.13.  The Kleins received the pro-rated portion of rent for September 30, 2011 as part of the escrow closing."  Debtors' Reply 6:25-7:3.

28.  After closing on the Highview Property, the Debtors selected the real property at 5832 Capehorn, Agoura Hills, California ("Capehorn Property"), as the "Excluded Parcel" to transfer to the Kleins pursuant to § 4.1(c) of the Settlement, and the Debtors and Kleins timely closed on the Capehorn Property by October 21, 2011.  The rent on the Capehorn Property was pro-rated to the date of closing.

29.  The remaining Excluded Parcel to be transferred to the Kleins pursuant to § 4.1(d) of the Settlement was the real property at 166 Walter, Newbury Park, California ("Walter Property").  The Walter Property was to close on or before November 21, 2011.

30.  By email dated October 21, 2011, Eisenberg advised Winterton that the final transfer would occur on November 21, 2011, and that "[i]n order to effectuate the final transfer, it will be necessary to have in our (or escrow's) possession a number of documents and pleadings required of Klein, including the withdrawal of the Klein bankruptcy claims, the withdrawal of the Klein plan and disclosure statement and the vacation of the other orders obtained by Klein in the bankruptcy case.  Lien relapses and other dismissal documents appertaining to the Nevada litigation and the Nevada judgment are also required . . . ," as well as "an accounting of rents collected by Klein from the Settlement properties and a reconciliation of who is entitled to which rents."  Debtors' Motion, Ex. 3 at 45.

31.  By email to Winterton dated November 1, 2011, Eisenberg specifically enumerated the documents necessary to a closing on November 21, 2011, and a final consummation of the Settlement with the Kleins.  Eisenberg stated:  "We need:

1.  A pleading withdrawing the Klein proof of claim in the bankruptcy cases.

2.   A pleading withdrawing the Klein plan.

3.   A pleading withdrawing the Klein disclosure statement.

4.   A pleading dismissing the Nevada state court action.

5.   A satisfaction of judgment with respect to the Nevada litigation.

6.   Whatever is necessary to release and expunge any liens arising from the Nevada litigation and the judgment which issued therefrom.

7.   An accounting of rents collected and dates of such collections by Klein from the Settlement Houses."  Id. Ex. 4 at 46.

Eisenberg further stated: "Obviously, there may be additional information and documentation to bring closure to this matter.  Please do not delay providing the necessary documents and pleadings (which will be held in trust) and the accounting (without which the final cash payment cannot be determined).  Id. at 47.

32.  On November 2, 2011, Winterton sent an email to Eisenberg, stating:

We are working on our final accounting to give you.  We hope to have it completed by Friday.  Once that accounting issue is done, we will go ahead with all of the other issues. We have already prepared the satisfaction of judgment.  We had prepared a withdraw of the disclosure statement and plan.  The satisfaction of judgment will release any and all liens that should be out there.  I know the issue is going to be with rent.  According to the tenants, they paid Alan.  We have had to start eviction proceeding against two tenant for not paying anything.  I will have the accounting to you this week.  Have a good day.

Id. at 46.

33.  By email dated November 10, 2011, Sanders advised Franks:  "I have an email indicating that the November rents have been collected!  I am waiting on the revised Rent Roll?" Franks Affidavit, Ex. GG.

34.  By email dated November 11, 2011, Rapoport advised Franks and Sanders:  "Until all rents from ALL 10 houses are reconciled Christy's comments below are not to be answered. FAT has nothing to do with ANY of the needed legal documents rents, releases, liens lifted, court docs required ect ect.  Christy you are just a small fish in a big pond on this closing. Darlene please do not respond on any questions from Christy on any issues until DW has met all the required paperwork that JMBM has requested.  Thx A."  Id.

35.  By email dated November 18, 2011, Eisenberg advised Winterton:

David:  Once again we are the last minute and we have not heard from you nor have we received the requisite documents and information.  Among other things, we have not received:

    1.  The accounting of rents collected by Klein;

    2.  The withdrawal of the various Klein pleadings in the bankruptcy cases;

    3.  The dismissal of the Nevada State court action, satisfaction of judgment and release of all liens in connection therewith.

Debtors' Motion, Ex. 5 at 48.

36.  On November 16, 2011, Debtors filed their Amended Joint Chapter 11 Plan Dated November 1, 2011 [Dkt. # 325] and Amended Disclosure Statement Re Joint Chapter 11 Plan Dated November 1, 2011 [Dkt. # 326] in the case.

37.  By letter dated November 18, 2011, Eisenberg sent Winterton the solicitation package regarding Debtors' Amended Joint Chapter 11 Plan of Reorganization ("Plan") which included notice of the confirmation hearing on January 4, 2012, the deadline of December 21, 2011, to file an objection to confirmation, and a ballot either accepting or rejecting the proposed Plan.  Id. Ex. 6 at 49-52.

38.  By email to Winterton dated November 20, 2011, Eisenberg stated:

David:  It is the day before we are scheduled to close the Klein settlement and I have still not received the necessary documents and pleadings from you.  In fact, your recent radio silence makes it impossible to understand how you intend to bring this matter to closure.  I again ask that you provide me with the materials necessary to finalize this matter.

Id. Ex. 7 at 53.

39.  By email to Eisenberg dated November 21, 2011, Winterton responded that the only issue was rent, stating "[w]e have signed all closing documents and sent it back to escrow."  Id. Ex. 8 at 54.

40.  By email to Winterton dated November 21, 2011, Eisenberg replied that "[w]e confirmed with escrow that, although it is prepared to close on the final property, they have not received from you any of the pleadings and documents due from your side to close the

settlement.  As we have not received the documents either, it is your side that is precluding the consummation of the arrangement."  Id.

41.  By email to Sanders dated November 21, 2011, Franks stated:  "Mr. Winterton wants to know if we are going to close today."  Franks Affidavit, Ex. JJ.

42.  By email to Franks dated November 21, 2011, Sanders responded:  "NO!  I have instructions from the Seller not to close until he gives me permission."  Id.

43.  On November 22, 2011, Franks emailed a letter to Alexis M. McGinness ("McGinness") enclosing the following:

    a.  A pleading withdrawing the Kleins' proof of claim.

    b.  A pleading withdrawing the Kleins' plan

    c.  A pleading withdrawing the Kleins' disclosure statement.

    d.  A pleading dismissing the Nevada state court action.

    e.  A satisfaction of judgment with respect to the Nevada litigation.

    f.  A release and expunge of any liens

    g.  An accounting of the rents.

Debtors' Motion, Ex. 9 at 59-60.

44.  On November 22, 2011, the Kleins filed the following documents in the bankruptcy case:  (a) Withdrawal of the Klein's Disclosure Statement [Dkt. # 333]; (b) Withdrawal of the Klein's Plan of Reorganization [Dkt. # 334]; and (c) Withdrawal of Hearing to Consider Adequacy of Disclosure Statement [Dkt. # 335].

45.  By letter dated November 22, 2011, Winterton transmitted the "Klein Rent Accounting" to Eisenberg.  The Klein Rent Adjustment reflects adjustments attributable to 10 properties between August 21, 2011 and November 21, 2011, aggregating in the sum of $5,753.72:  (a) $4,974.69 in prorated rent attributable to a 10-day delay in the closing of escrow on 7 properties in August 2011;  (b) $690.03 in prorated rent attributable to a 9-day delay in closing of escrow on 1 property September 2011; and (c) $89.00 in fees incurred by tenants and deducted from September rent payable to the Kleins after the tenants stopped payment of

September rent checks initially sent to the Debtors on three properties that closed on August 31, 2011.  Id. at 63.

46.  By letter dated November 23, 2011, Eisenberg advised Winterton that the Debtors were ready, willing and able to close on November 21, 2011, but that the Settlement could not be finally consummated because the documents requested of the Kleins as early as October 21, 2011, had not been provided.  Eisenberg notified Winterton of the Debtors' specific objections to the Kleins' rent reconciliation delivered on November 22, 2011.  Eisenberg also advised Winterton of the need to submit a further reconveyance of the Deed of Trust and Assignment of Rents and Request for Special Notice encumbering 5883 Capehorn Drive, Agoura Hills, California, due to an incorrect street address, and that the Debtors' Nevada counsel, Mark Ferrario ("Ferrario"), would be sending him a revised satisfaction of judgment due to problems with the form of satisfaction provided by the Kleins.  Id. Ex. 10 at 74-77.

47.  In the letter dated November 23, 2011, Eisenberg claimed that the Kleins were not entitled to any prorated rent for the 7 properties that closed on August 31, 2011, stating that the "cause for the delay was partially as a result of the Klein's failure to deliver appropriate releases to the appropriate escrow agent."  Id. at 74 (emphasis added).  Eisenberg also stated that "Fees for 'stopping payments' are not payable to the Kleins," adding that "[s]hould any tenant assert that he/she has a claim for reimbursement of such an expense, that tenant is entitled to submit a request to this office for reimbursement."  Id. at 75.  Eisenberg stated that the Debtors had no dispute as to the remaining 3 properties, and calculated that the rent due to the Kleins for all properties as of November 28, 2011, was ($1,248.07).  Id. at 76.

48.  By email dated November 29, 2011, Eisenberg advised Winterton that the Satisfaction of Judgment provided by the Kleins was defective and that Ferrario would be sending him a revised satisfaction of judgment and proposed dismissal order.  Id. Ex. 11 at 79.

49.  By email dated December 2, 2011, Mark Ferrario sent Winterton the following documents:  (a) Stipulation and Order for Dismissal of Defendants Alan Rapoport and Shelley Rapoport, Individually and as Trustees of the Alan and Shelley Rapoport Family Trust Dated

October 15, 1999; Ashley Rapoport, and Shalan Enterprises, LLC, With Prejudice ("Dismissal Order"); and (b) Satisfaction of Judgment.  Id. Ex. 2 at 38-43.

50.  On December 2, 2011, the Kleins filed the following documents in the bankruptcy case:  (a)  Notice of Breach of Settlement Agreement with Kleins [Dkt. # 337]; and (b) Objection to Confirmation of Amended Joint Plan of Reorganization Dated November 21, 2011 [Dkt. # 338].

51.  By letter dated and emailed on December 5, 2011, Eisenberg responded to Winterton's letter dated December 1, 2011, reiterating that a final closing and consummation of the Settlement hinged upon receipt from the Kleins of  (a) a Full Reconveyance of the deed of trust encumbering 5883 Capehorn Drive, Agoura Hills, California; (b) execution of the Satisfaction of Judgment and Dismissal Order sent by Ferrario to Winterton on December 2, 2011; and (c) resolution of the rent issue.  Id. Ex. 12 at 81-83.

52.  By letter dated and emailed on December 8, 2011, Eisenberg again advised Winterton that the Debtors were ready, willing and able to close on the final property subject to receiving the following:  (a) the Full Reconveyance of the deed of trust encumbering 5883 Capehorn Drive, Agoura Hills, California; (b) execution of the Satisfaction of Judgment and Dismissal Order sent by Ferrario to Winterton on December 2, 2011; (c) resolution of the rent issue; (d) Kleins' sign-off on the December rent roll; and (e) withdrawal of the objection to confirmation filed on December 2, 2011.  Id. Ex. 13 at 86-87.  Eisenberg concluded by stating: "Please prepare and execute a Withdrawal of the Objection and return the Withdrawal to me, to be held in trust pending the transfer of the 10th house and remaining cash portion of the settlement consideration."  Id. at 87.

53.  Debtors' Motion was filed on December 14, 2011, and set the matter for hearing on January 4, 2012, in conjunction with the hearing on confirmation of Debtors' Plan.

54.  The executed Satisfaction of Judgment for the Lawsuit was delivered to Ferrario on December 16, 2011.

55.  The executed Dismissal Order was delivered to Ferrario on December 16, 2011.

56.  Kleins voted to reject the Debtors' Plan.

14

57. At a hearing on January 4, 2012, the court overruled the Kleins' objection to the Debtors' Plan noting that: (a) the Kleins' objection did not allege that the Plan failed to comply with any specific confirmation requirement of § 1129; (b) the Kleins' objection did not allege nor establish that the Plan violated, or sought to modify, the terms of the Settlement; (c) the Kleins' objection did not otherwise question the treatment of Kleins' claim in Class 9; and (d) the Kleins' objection did not question the feasibility of the plan.

58. On January 5, 2012, an Order Confirming Amended Joint Chapter 11 Plan of Reorganization Dated November 1, 2011 was entered in the case. [Dkt. # 350].

59. On January 9, 2012, an Amended Order Re: Motion of Debtors for an Order to Compel the Performance of Perry and Rita Klein Under Settlement Agreement and for an Award of Attorneys' Fees was entered in the case which provided, in pertinent part, that:

a. No later than January 11, 2012, or within three (3) days of entry of this Order, whichever is later, Debtor will transfer to the Kleins or the Kleins' designee, through the pending escrow at First American Title Company (the "Escrow"), the property identified as 166 Walter Avenue, Agoura Hills, California (the "Walter Ave. Property") and the balance of the Cash Portion of the Total Settlement Consideration (less the Reserve) due the Kleins under the Settlement Agreement, plus the January rent pro-rated as of the date of closing for the Walter Ave. Property, provided, however, the escrow holder shall withhold, retain and not distribute to the Kleins the amount of $30,000 of the funds heretofore deposited therein by Debtors (the "Reserve").

b. The Reserve shall remain in Escrow pending further order of this Court.

c. The Kleins' deed of trust encumbering the real property located at 5883 Capehorn, Agoura Hills, California is hereby released, and Debtor is authorized to record the Full Reconveyance.

d. Upon the transfer of the Walter Ave. Property and the balance of the Cash Portion, Debtor is hereby authorized to file and, as appropriate record, the (1) Satisfaction of Judgment and (2) Stipulation and Order of Dismissal of the State Court Action.

[Dkt. # 352]. The court continued the Debtors' Motion to February 22, 2012, for a hearing "to determine whether and to whom (1) outstanding rents are due and (2) attorneys' fees and costs may be awarded."

60. The Settlement is fully consummated, except for (a) the issue of the rent reconciliation and (b) the issue of attorneys' fees and costs.

61. The rent dispute between the Debtors and the Kleins centers on the pro-ration of rent for the first 7 Agreed Settlement Parcels that were transferred at closing on August 31, 2011.

62. At the hearing on January 4, 2012, the Kleins asserted that the total rents due by the Debtors for all properties is $5,732.72 based upon the original Rent Reconciliation dated November 22, 2011.

63. Debtors objected to the Kleins' original Rent Reconciliation on November 23, 2011, claiming that the Kleins were not entitled to any proration of rent attributable to the first 7 Agreed Settlement Parcels, and that they were entitled to reimbursement from the Kleins for $2,100 in August rent paid to the Kleins on 13 Marty Court, Newbury Park, California. Debtors conceded that the Kleins were entitled to $690.03 in pro-rated rent on the Highview Property, and $161.80 in pro-rated rent for the Walter Property based on an anticipated closing date of November 28, 2011. Debtors claimed that the total rents due to the Kleins for all properties as of November 28, 2011, was ($1,248.07). Debtors' Motion, Ex. 10 at 75.

64. At the hearing on January 4, 2012, the Debtors asserted that Shalan, rather than the Kleins, is due the sum of $4,013.65 based upon a Rent Reconciliation prepared by Shelley Rapoport and attached as Exhibit 15 to the Debtors' Motion. In Exhibit 15, the Debtors claimed that the following pro-rated rent was due from the Kleins on the first 7 Agreed Settlement Parcels for the month of August 2011 totaling $4,703.68 -- $2,032.26 in rent for 13 Marty Court, Newbury Park, California; $2,177.42 in rent for 30865 Overfall, Westlake Village, California; and $494.00 for 21981 Sundowners, Lake Forest, California.

65. Debtors seek an award of attorneys' fees in the amount of $30,919.50 for 72.70 hours of legal services rendered by Jeffer Mangels Butler & Mitchell LLP ("JMBM"), through its attorneys Eisenberg and McGinnis, between October 21, 2011 and January 11, 2012, in its efforts to compel the Kleins to perform under the Settlement. The legal services for which JMBM seeks compensation are documented by a statement included as Exhibit 20 to the Eisenberg Declaration. Exhibit 20 reflects the work performed by JMBM on behalf of the Debtors documented by (a) the date the service was performed; (b) the attorney who performed the service; (c) a description of the task performed; and (d) the time expended in performing the

service recorded in increments of 1/10th of an hour.  Exhibit 20 does not reflect the hourly rate

of either Eisenberg or McGinnis.  Debtors seek an additional award of $6,000 in estimated

attorneys' fees incurred by JMBM through a hearing on the Debtors' Motion and $900 in

attorneys' fees incurred by Ferrario preparing the Satisfaction and Dismissal Order, for a total of

$37,819.50.

66.  The Kleins seek an award of attorneys' fees in the amount of $53,670.00 for 145.55

hours of legal services rendered by David J. Winterton & Associates, Ltd. between August 2,

2011 and December 15, 2012, in their efforts to compel the Debtors to perform under the

Settlement.  The legal services for which the Winterton firm seeks compensation are documented

by a statement included as Exhibit EE to the Winterton Declaration.  Exhibit EE reflects the

work performed by Winterton on behalf of the Kleins  at an hourly rate of $400 per hour

documented by (a) the date the service was performed; (b) the attorney who performed the

service; (c) a description of the task performed; and (d) the time expended in performing the

service recorded in increments of 1/10th of an hour.  The Kleins also seek an award of costs

itemized in Exhibit EE in the amount of $1,438.87 and an additional award of $5,000 in

estimated attorneys' fees incurred by Winterton through a hearing on the Debtors' Motion, for a

total of $60,108.87.

## II.  CONCLUSIONS OF LAW

1.  The court has jurisdiction to hear and consider the Debtors' Motion pursuant to 28

U.S.C. § 1334.

2.  Debtors' Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (O).

3.  Venue is appropriate in this court.

4.  The court has inherent power to enforce a settlement agreement between the parties in

a pending case.  Dacanay v. Mendoza, 573 F.2d 1075, 1078 (9th Cir. 1978).  "A bankruptcy

court, as a court of equity, likewise possesses the power to summarily enforce settlements."  In re

City Equities Anaheim Ltd., 22 F.3d 954, 958 (9th Cir. 1994) (citing In re Springpark Assocs.,

623 F.2d 1377, 1380-81 (9th Cir.), cert. denied, 449 U.S. 956 (1980)).

5. "In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y., 421 U.S. 240, 247 (1975). "Without some statutory or other exception to the American Rule, prevailing parties generally do not recover attorneys' fees." Cann v. Carpenters' Pension Trust for N. Cal., 989 F.2d 313, 315 (9th Cir. 1993).

6. "When a bankruptcy court adjudicates a dispute arising from a contract claim, it must apply state law unless the bankruptcy code provides otherwise." In re New England Fish Co., 749 F.2d 1277, 1280 (9th Cir. 1984) (citing Matter of Sparkman, 703 F.2d 1097, 1099 (9th Cir.1983)).  California Civil Code § 1717(a) provides:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

C.C. § 1717(a).  Under § 1717(b), "[t]he court may also determine that there is no party prevailing on the contract for purposes of this section."  C.C. § 1717(b) (emphasis added). "Typically, a determination of no prevailing party results when both parties seek relief, but neither prevails, or when the ostensibly prevailing party receives only a part of the relief sought." Deane Gardenhome Assn. v. Denktas, 13 Cal.App.4th 1394, 1398 (1993).  "In other words, the judgment is considered good news and bad news as to each of the parties."  Id. (internal citations and quotations omitted).

7. "By contrast, when the results of the litigation on the contract claims are not mixed— that is, when the decision on the litigated contract claims is purely good news for one party and bad news for the other—the Courts of Appeal have recognized that a trial court has no discretion to deny attorney fees to the successful litigant."  Hsu v. Abbara, 9 Cal.4th 863, 875-76 (1995). "Thus, when a defendant defeats recovery by the plaintiff on the only contract claim in the action, the defendant is the party prevailing on the contract under section 1717 as a matter of law."  Id. at 876 (citations omitted).

8. With respect to the rent reconciliation, the Debtors and the Kleins dispute each others' calculations on the first 7 Agreed Settlement Parcels. Kleins claim they are entitled to rents from the closing date of July 31, 2011 set forth in § 4.1 of the Settlement. Debtors claim that the Kleins are not entitled to rent prior to the actual closing date of August 31, 2011. The Debtors, not the Kleins, were the owners of each of the 7 Agreed Settlement Parcels prior to an actual closing under the Settlement, and responsible for taxes, insurance, maintenance and other expenses attributable to each of the properties prior to a closing.

9. Each party blames the other for the delay in close of escrow until August 31, 2011. However, the delay was attributable to the action or inaction of both the Kleins and the Debtors. Section 4.1 expressly states that the closing shall occur no later than July 31, 2011, "[u]nless otherwise agreed by the Parties in writing." Neither party declared a breach of the Settlement on July 31, 2011, and walked the deal. The evidentiary record is replete with evidence that the Debtors and the Kleins at least tacitly consented to move forward, notwithstanding the delay in closing, and worked to consummate a closing by August 31, 2011. Under the Settlement, the Kleins were not entitled to rents from the first 7 Agreed Settlement Parcels until the actual closing on August 31, 2011. Debtors had no obligation under the Settlement to turn over rents before an actual closing. There is no credible evidence in the record that the Kleins had authority to collect rents attributable to those properties prior to August 31, 2011.

10. The Debtors rent reconciliation attached as Exhibit 15 to the Debtors' Motion is an accurate reconciliation of rents due from the Kleins to the Debtors under the terms of the Settlement. Debtors are entitled to rents from the Kleins in the amount of $4,013.65.

11. With respect to the issue of attorneys' fees and costs, the court is not sympathetic with either the Debtors or the Kleins. Although neither party was ready to close on the first 7 Agreed Settlement Parcels prior to August 31, 2011, the Debtors and the Kleins allowed their bickering over a few thousand dollars in prorated rent and "stopped payment" fees to substantially delay a closing of the 10th and final Agreed Settlement Parcel, jeopardize an effective reorganization, nearly destroy a compromise that took months to craft and approve, and expose each other to substantial liability for attorneys' fees and costs.

12.  In the final analysis, however, the Debtors had cause to file their motion to compel performance of the Settlement given the Kleins' failure to timely deliver the documents and things identified in Eisenberg's repeated emails and letters to Winterton commencing as early as October 21, 2011, which were necessary to a timely closing of escrow on the Walter Property by November 21, 2011.  The rent reconciliation, which was at the heart of the rift between the Kleins and the Debtors after the closing of the first 7 Agreed Settlement Parcels on August 31, 2011, was not delivered to the Debtors until November 22, 2011.  Debtors specifically requested a rent reconciliation from the Kleins in Eisenberg's email to Winterton a month earlier on October 21, 2011, but the Kleins inexplicably failed to deliver the documents, including their rent reconciliation, to the Debtors until one day after the November 21st closing date contemplated by the Settlement.  Even then, the documents provided by the Kleins were either incorrect or insufficient to permit a closing in November.

13.  Rather than cooperate to consummate the Settlement in December, the Kleins instead voted against the Debtors' plan and unsuccessfully attacked confirmation of the plan – further delaying a closing on the Walter Property.

14.  The Settlement would not have consummated absent the Debtors' Motion and this court's Amended Order Re: Motion of Debtors for an Order to Compel the Performance of Perry and Rita Klein Under Settlement Agreement and for an Award of Attorneys' Fees entered in this case on January 9, 2012.

15.  Therefore, the court finds that the Debtors' Motion was an "action commenced to enforce the terms of [the] Agreement" within the scope of § 10.9 of the Settlement, and that the Debtors are the prevailing party entitled to recover reasonable attorneys fees and costs.

16.  Given the facts and circumstances of the dispute between the Debtors and the Kleins and having considered the Eisenberg Declaration and Ferrario Declaration in the context of that dispute, the court finds that Debtors are entitled to recover from the Kleins reasonable attorneys' fees and costs in the amount of $20,000.

17.  The Kleins are not the prevailing party and will recover nothing on account of their improperly noticed counter-motion.

JMBM shall submit a proposed order that will effectuate a release of the $30,000 Reserve in a manner that is consistent with the above findings of fact and conclusions of law.

### 

DATED: April 17, 2012

_____
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled _____ **FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: MOTION OF DEBTORS FOR AN ORDER TO COMPEL THE PERFORMANCE OF PERRY AND RITA KLEIN UNDER THE SETTLEMENT AGREEMENT AND FOR AN AWARD OF ATTORNEYS' FEES** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of  4-17-2012  , the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Gregory J Babcock    bknotice@mccarthyholthus.com, gbabcockecf@hotmail.com
- Robert D Bass    rbass@greenbass.com
- Jared D Bissell    ecfcacb@piteduncan.com
- Steven Casselberry    scasselberry@mrllp.com, fbaig@mrllp.com;jjacobs@mrllp.com
- Leslie    A    Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;Brian@lesliecohenlaw.com
- Caroline Djang    crd@jmbm.com
- Joseph A Eisenberg    jae@jmbm.com
- Laleh Ensafi    lensafi@yahoo.com, cmartin@pralc.com
- Mark S Faulkner    marksfaulkner@cox.net, fbaig@mrllp.com;jjacobs@mrllp.com
- Thomas M Geher    tmg@jmbm.com
- Jeffrey J Hagen    jeff@hagenhagenlaw.com
- Anne W Hamann    ahamann@piteduncan.com, ecfcacb@piteduncan.com
- James Andrew Hinds    jhinds@jhindslaw.com
- Hye Jin Jang    hjang@jhindslaw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com, theresa.macaulay@bryancave.com
- Erin L Laney    ecfcacb@piteduncan.com
- Kenneth G Lau    kenneth.g.lau@usdoj.gov
- Steven    M    Lawrence    generalmailaswlawoffice.com@alvaradoca.com, vaguirre@alvaradoca.com
- Charles Liu    cliu@mrllp.com, ecfmarshackhays@gmail.com
- Christopher M McDermott    ecfcacb@piteduncan.com
- Alexis M McGinness    amm@jmbm.com, vr@jmbm.com;fc3@jmbm.com
- Brian A Paino    ecfcacb@piteduncan.com
- Lee S Raphael    cmartin@pprlaw.net
- Paul R Shankman    pshankman@jhindslaw.com
- Michael W Tan    michael.w.tan@irscounsel.treas.gov
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Catherine T Vinh    ecfcacb@piteduncan.com
- David J Williams    dwilliams@mrllp.com, fbaig@mrllp.com;jjacobs@mrllp.com

☐ Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or

order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

> Greenberg Traurig, LLP
> Mark E. Ferrario, Esq.
> 3773 Howard Hughes Parkway
> Suite 400 North
> Las Vegas, NV 89169

☐  Service information continued on attached page

**III.  <u>TO BE SERVED BY THE LODGING PARTY</u>:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐  Service information continued on attached page