FILED & ENTERED

APR 17 2012

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egarcia   DEPUTY CLERK

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 2:09-bk-43263-PC |
| | ) | |
| SHALAN ENTERPRISES, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Case No. 2:09-bk-43499-PC |
| | ) | |
| ALAN RAPOPORT, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Jointly Administered Under |
| | ) | Case No. 2:09-bk-43263-PC |
| | ) | |
| | ) | **MEMORANDUM DECISION** |
| | ) | |
| | ) | Date:  March 21, 2012 |
| | ) | Time:  9:30 a.m. |
| | ) | Place: United States Bankruptcy Court |
| | ) |        Courtroom # 1539 |
| | ) |        255 East Temple Street |
| | ) |        Los Angeles, CA  90012 |

Before the court is the Final Application of Jeffer Mangels Butler & Mitchell LLP, for Compensation and Reimbursement of Expenses as Counsel to Debtors and Debtors in Possession ("Application"). Jeffer Mangels Butler & Mitchell LLP ("JMBM") seeks final allowance of $537,865 in attorneys' fees, plus $21,941.96 in expenses, for a total of $559,806.96, for the period of November 25, 2009 through January 9, 2012. Alan Rapoport ("Rapoport") and Shalan

1

Enterprises, LLC ("Shalan") (collectively, "Debtors") object to allowance of the fees and expenses sought in the Application. Perry and Rita Klein (the "Kleins") join in the Debtors' objection.[1] Having considered the Application and objection thereto, the evidentiary record, and arguments of counsel, the court makes the following findings of fact and conclusions of law pursuant to F.R.Civ.P. 52(a),[2] as incorporated into FRBP 7052 and applied to contested matters by FRBP 9014(c).

        A.  <u>Debtors' Request that JMBM's Application Be Referred to Arbitration</u>.

Shalan and Rapoport each executed a letter agreement with JMBM entitled "Terms of Engagement for Legal Services" dated August 20, 2008 and November 25, 2009, respectively, for the legal services to be rendered and costs advanced in the above referenced bankruptcy cases. Each letter agreement contained a paragraph entitled "Arbitration and Waiver of Jury Trial" which, in pertinent part, stated that "[a]ny dispute between you and us (including without limitation, any individual attorney at the firm) shall be subject to binding arbitration."[3] Debtors ask that the court "stay the hearing on the [Application] and refer the parties to binding fee arbitration . . . in the form of a retired Judge . . . ."[4]

The Supreme Court and the Ninth Circuit favor and give deference to arbitration. <u>Home Exp., Inc. v. Alamo Group, LLC (In re Home Exp., Inc.)</u>, 226 B.R. 657, 659 (Bankr. N.D. Cal.

---

[1] The Kleins' joinder does not state a specific objection to the allowance of any of the legal services rendered or costs advanced for which compensation is sought in the Application nor is it supported by a declaration or other evidence.

[2] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P."). "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

[3] Reorganized Debtors' Objections to Final Application of Jeffer Mangels Butler & Mitchell LLP, for Compensation and Reimbursement of Expenses as Counsel to Debtors and Debtors-in-Possession ("Debtors' Objection") 48, 57.

[4] Debtors' Objection 5:4-6.

1998) (citations omitted). However, "disputes over fees in bankruptcy cases fall within the extremely narrow category of disputes which Congress never envisioned being delegated to nonjudicial entities for resolution." Id. "Under the Bankruptcy Act of 1898, the Supreme Court held that the jurisdiction of the bankruptcy court over fees is 'paramount and exclusive,' Congress having asked for 'the informed judgment of the bankruptcy court, not another court or agency.'" Id. (citing Brown v. Gerdes, 321 U.S. 178, 183–84 (1944)). "Nothing in the 1978 Code or amendments thereto indicates that Congress was unaware of this principle or that it intended to change it." Id. "As was stated in Dewsnup v. Timm, 502 U.S. 410, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992), the 1978 Code should not be interpreted 'to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history.'" Id. "No such legislative history supports the delegation of the court's fee-setting responsibilities to binding arbitration." Id. In other words, "bankruptcy policy . . . hold[s] sway over the policies of the Federal Arbitration Act as to disputes involving § 327 through 330." Id. Because this court has the exclusive jurisdiction to award fees and costs in bankruptcy cases and to adjudicate disputes concerning the allowance of such fees and costs, Debtors' request is denied.

  B. <u>Standard for Final Allowance of Attorneys Fees and Expenses</u>.

  Section 330(a)(1) permits the court to award "reasonable compensation" for "actual, necessary services" rendered by a properly employed trustee, examiner or professional person. 11 U.S.C. § 330(a)(1)(A). But compensation may not be awarded for: (1) unnecessary duplication of services; or (2) services that were not: (i) reasonably likely to benefit the debtor's estate; or (ii) necessary to the administration of the case. 11 U.S.C. § 330(a)(4)(A)(i) & (ii).

  In determining "reasonable compensation," the court must consider the nature, extent and value of the services, taking into account "all relevant factors," including: (1) time spent on the services (11 U.S.C. § 330(a)(3)(A)); (2) rates charged for the services (11 U.S.C. § 330(a)(3)(B)); (3) whether the services were: (i) necessary to the administration of the bankruptcy case; or (ii) beneficial at the time the services were rendered (11 U.S.C. § 330(a)(3)(C)); (4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue or task

addressed (11 U.S.C. § 330(a)(3)(D)); (5) with respect to a professional person, whether the person is board certified or has otherwise demonstrated skill and experience in the bankruptcy field (11 U.S.C. § 330(a)(3)(E)); and (6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in nonbankruptcy cases (11 U.S.C. § 330(a)(3)(F)).

The "lodestar" formula (under which the number of hours reasonably expended is multiplied by a reasonable hourly rate for the person providing the services) is the traditional standard for assessing an attorneys' fee application in bankruptcy. See Law Offices of David A. Boone v. Berham-Burk (In re Eliapo), 468 F.3d 592, 598–99 (9th Cir. 2006); Yermakov v. Fitzsimmons (In re Yermakov), 718 F.2d 1465, 1471 (9th Cir. 1983). Cf. Unsecured Creditors' Committee v. Puget Sound Plywood, Inc., 924 F.2d 955, 960-61 (9th Cir. 1991) (stating that use of the lodestar formula is not mandated by § 330 and it is not the exclusive method for calculating reasonable fees). A bankruptcy practitioner's compensation, including the hourly rate charged, must be commensurate with the compensation received by comparably skilled attorneys in other practice areas. 11 U.S.C. § 330(a)(3)(F); In re Fleming Cos., Inc., 304 B.R. 85, 93 (Bankr. D. Del. 2003); see also Burgess v. Klenske (In re Manoa Fin. Co., Inc.), 853 F.2d 687, 690 (9th Cir. 1988) ("Congress did not intend to authorize higher compensation than attorneys would receive for comparable non-bankruptcy services")

Whether the services were necessary to the administration of the case or beneficial to the estate is determined, not in hindsight, but objectively with reference to the time the services were rendered. 11 U.S.C. § 330(a)(3)(A), (C); In re Mednet, 251 B.R. 103, 108 (9th Cir. BAP 2000); In re Circle K Corp., 294 B.R. 111, 125 (Bankr. D Ariz. 2003). Furthermore, § 330 does not require that the services result in a material benefit to the estate. It need only be shown that the services were reasonably likely to benefit the estate at the time the services were rendered. Mednet, 251 B.R. at 108; Lobel & Opera v. U.S. Trustee (In re Auto Parts Club, Inc.), 211 B.R. 29, 33 (9th Cir. BAP 1997).

C. <u>JMBM's Application</u>.

In the Application, JMBM seeks final allowance of the following attorneys' fees and expenses:

1. Final allowance and payment of $86,948.50 in attorneys' fees and $6,241.21 in expenses, for a total of $93,189.71 previously awarded on an interim basis by order granting JMBM's First Interim Fee Application entered on July 9, 2010;

2. Final allowance and payment of $83,728.00 in attorneys' fees and $3,093.76 in expenses, for a total of $86,821.76 previously awarded on an interim basis by order granting JMBM's Second Interim Fee Application entered on December 3, 2010;

3. Final allowance and payment of $82,710.00 in attorneys' fees and $2,024.79 in expenses, for a total of $84,734.79 previously awarded on an interim basis by order granting JMBM's Third Interim Fee Application entered on May 16, 2011; and

4. Final allowance and payment of $278,478.50 in attorneys' fees and $15,064.84 in expenses incurred between March 1, 2011 and January 9, 2012 – the Effective Date of the Debtors' confirmed plan (the "Fourth Compensation Period"), together with "$6,000 in estimated fees associated with the preparation of the final fee application and appearance at a hearing thereon."[5]

The court approved JMBM's employment on March 4, 2010, effective as of the petition date in each case. JMBM rendered a total of 534.60 hours of services to the estate during the Fourth Compensation Period billed at a blended hourly rate of $520.91. The legal services rendered during the Fourth Compensation Period for which JMBM seeks compensation are adequately documented by invoices, copies of which are included in Exhibit 1 to the Application. JMBM's invoices reflect the services performed by JMBM on behalf of the Debtors by category of service. Within each category of service, the work performed is documented by (a) the date the service was performed; (b) the attorney who performed the service; (c) a description of the task performed; and (d) the time expended in performing the service recorded in increments of

---

[5] JMBM's Application 4:12 to 5:10.

5

1/10th of an hour. Each invoice contains a summary of the work performed by each JMBM attorney or paralegal for the Debtors and their respective hourly rates, together with a list of costs advanced during the billing period. Exhibit 1 to JMBM's Application includes five invoices which cover the period of November 25, 2009 through January 9, 2012: (a) Invoice # 1466536 dated January 8, 2010, for services rendered from November 25, 2009 through December 31, 2009; (b) Invoice # 1478078 dated May 10, 2010, for the period beginning January 1, 2010 and ending April 30, 2010; (c) Invoice # 1494428 dated November 4, 2010, for the period beginning May 1, 2010 and ending October 31, 2010; (d) Invoice # 1505042 dated March 7, 2011, for the period beginning November 1, 2010 and ending February 28, 2011; (e) Invoice # 1532830 dated February 8, 2012, for the period beginning March 1, 2011 and ending January 9, 2012. The court takes judicial notice that the hourly rates reflected in each of the invoices are within the range of hourly rates charged by attorneys and paralegals for similar legal services rendered in chapter 11 cases pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division. This conclusion is supported by the evidence as well.[6]

JMBM rendered a total of 1,114.60 hours of legal services in the jointly administered cases between November 25, 2009 and January 9, 2012, billed at a blended hourly rate of $477.18. A copy of each of JMBM's interim applications and the order thereon is attached to JMBM's Application as Exhibits 3 through 8. JMBM's Application is also supported by the Declaration of Joseph A. Eisenberg ("Eisenberg"). The court takes judicial notice of the following documents filed in the case: (a) Declaration of Alan Rapoport in Support of First Interim Application of Jeffer Mangels Butler & Marmaro LLP for Compensation and Reimbursement of Expenses as Debtor in Possession filed on May 20, 2010 [Dkt # 70]; (b) Declaration of Alan Rapoport in Support of Second Interim Application of Jeffer Mangels Butler

---

[6] Robert Bass, a bankruptcy attorney who is not a lawyer employed by JMBM, testified that he "reviewed the Final Fee Application submitted by JMBM, including their hourly rates . . . [and] [t]he rates charged by JMBM are similar to the prevailing market hourly rates in the Central District of California charged by attorneys of similar reputation and perceived experience." Reply of Jeffer Mangels Butler & Mitchell LLP to: Reorganized Debtors' Objection to Final Application of Jeffer Mangels Butler & Mitchell LLP for Compensation and Reimbursement of Expenses as Counsel for Debtors and Debtors in Possession ("Reply") 24:1-3.

& Mitchell LLP for Compensation and Reimbursement of Expenses as Debtor in Possession filed on November 16, 2010 [Dkt # 158]; and (c) Declaration of Alan Rapoport in Support of Third Interim Application of Jeffer Mangels Butler & Mitchell LLP for Compensation and Reimbursement of Expenses as Debtor in Possession filed on May 10, 2011 [Dkt # 209]. In each declaration, Rapoport states under penalty of perjury:

> I have reviewed the Fee Application. I have no unresolved objections to, and approve, the fees and expenses requested in the Fee Application. I believe that the work performed by JMBM was necessary and appropriate under the circumstances and benefitted the estate.
>
> JMBM's Application satisfies the requirements of 11 U.S.C. § 330(a), FRBP 2016(a) and LBR 2016-1(c), and demonstrates that (a) JMBM rendered actual services to the estate that were necessary to the administration of, or beneficial at the time at which the services were rendered toward the completion of, the case, and that the compensation sought for such services is reasonable; and (b) the expenses incurred on behalf of the estate for which reimbursement is sought were actual and necessary.

D. <u>Debtors' Objection</u>.

Debtors argue that JMBM's final compensation request should not be allowed and that JMBM should be ordered to disgorge not less than $149,056.20 in fees previously allowed on an interim basis for one or more of the following reasons:

(1) Debtors "were never informed of the legal procedures by way of the exclusivity periods whereby they could file and confirm a joint chapter 11 plan to pay the Klein claim and other claims in full from the inception of the Klein Dispute, thereby avoiding substantial unnecessary legal fees and costs associated with the Klein claim and competing plan;"[7]

(2) "Throughout February 2011 to the date of the confirmed plan and after one of the main associates familiar with the chapter 11 cases had left the firm, JMBM billed the [Debtors] for matters in the Klein Dispute and on other matters at a senior partner's billable rate of

---

[7] Debtors' Objection 3:19-23.

7

$825.00/hour, disproportionate to the blended rates previously employed in the representation, inclusive of the junior associates' billable hours as documented in JMBM's First, Second, and Third Interim Fee Applications, while also adding new and more associates to work on the [Debtors'] chapter 11 cases;"[8]

(3) "JMBM failed to provide monthly invoices to [Debtors] and, the invoices attached as Exhibits to the First, Second, and Third Interim Fee Applications, were likewise not supplied to [Debtors] for their timely review and approval, even after many requests by [the Debtors];"[9] and

(4) "JMBM failed to disclose to this Court, to the Office of the United States Trustee, and to [the Debtors] the periodic hourly rate changes made by JMBM for the period between 2009 and the time of plan confirmation and thereafter as required by FRBP 2016(b)."[10]

1. <u>Debtor Had No Financial Ability to Confirm a Plan During the Exclusivity Period</u>.

With respect to the first objection, Debtors claim that JMBM's alleged "failure to advise [the Debtors] of their right to file and confirm a plan, [and] the right to request an extension of [the exclusivity periods] for cause, and the complete failure of not filing same, unnecessarily caused [the Debtors] to be at risk of liquidating all of their assets and to spend at least $149,056.20 in legal fees and costs to protect the Estate's assets and to ultimately pay Klein in full, a result that could have been achieved in early 2010."[11] In support thereof, Rapoport testifies: "I was inclined to pay Klein and all other creditors of my estate and that of Shalan <u>in full from the beginning</u> had I known the option to file my own joint plan existed."[12] Rapoport claims that he "<u>had the resources</u>" to pay off all creditors, including the Kleins, in full "in late 2009 and thereafter."[13] Rapport suggests that the Klein claim was an undisputed claim in the

---

[8] <u>Id.</u> 3:24 to 4:4.

[9] <u>Id.</u> 4:7-11.

[10] <u>Id.</u> 4:14-17.

[11] <u>Id.</u> 5:22 to 6:2.

[12] <u>Id.</u> 16:5-6 (emphasis added).

[13] <u>Id.</u> 15:23 (emphasis added).

amount of $3.2 million as of the petition date.[14] He speculates that JMBM "caused [him] to risk liquidating all [his] assets and that of Shalan as proposed in the Klein competing chapter 11 plan . . . ."[15] Rapoport concludes that "[t]he legal services <u>of JMBM were absolutely not necessary or beneficial</u> in settling the Klein Claim Objection because it could have been prevented all together by the filing and confirmation of a 100% joint plan in early 2010, or by requesting an extension of the exclusive rights of myself and Shalan to file and confirm such a plan for cause. I was never informed of such options . . . ."[16]

First, Rapoport's statements are not supported by the record. According to Shalon's Schedule D filed on November 25, 2009, the Kleins' had a secured claim in the amount <u>$4.2 million</u>, not $3.2 million as alleged by Rapoport. Rapoport signed Shalon's schedules under penalty of perjury listing the Kleins' claim as both <u>contingent and disputed</u>. According to Rapoport's Schedule D filed on January 19, 2010 (<u>i.e.</u>, 2 months after the <u>Shalan</u> petition date), Rapoport disclosed the Kleins' claim under penalty of perjury as a contingent, unliquidated, and disputed secured claim in the amount of $3,229,000. On March 17, 2010, the Kleins filed Claim No. 23 in the amount of $9,715,869 of which amount the sum of $4,290,869.11 was disclosed as a secured claim and $5,425,000 was disclosed as an unsecured non-priority claim. By March 31, 2010, there were 8 claims filed against the estates totaling in excess of $11,424,000, including the Kleins' disputed claim and the $1,680,494 secured claim of First Bank.

Debtors did not amend either Schedule D to list the Kleins' claim as a non-contingent, undisputed, and liquidated. In fact, the Kleins filed a motion on November 10, 2011, to have their claim estimated at $7,556,417.98 for purposes of voting on the Debtors' proposed plan. Debtors opposed the motion. On June 20, 2011, the court entered an order estimating the Kleins' claim in the amount of $4,289,700.96.

---

[14] <u>Id.</u> 15:15-19 (JMBM "was fully aware of the reduced judgment in the amount of $3.2 million that was determined by the Nevada Supreme Court when Shalan and I filed for bankruptcy November 2009, and of the strength and difficulties of the expected Klein Claim Objection.").

[15] <u>Id.</u> 15:25-27.

[16] <u>Id.</u> 16:9-13 (emphasis in original).

9

Second, there is no credible evidence that the Debtors had the funds to pay in full all claims against the two estates, including the Kleins' claim, in late 2009, as alleged by Rapoport. According to Shalon's operating report for the period ending December 2009, Shalon's debtor in possession ("DIP") account had a balance of only $136,133.70. Shalon's operating report for the period ending January 2010 reflects a DIP account balance of only $160,510.24. Similarly, Rapoport's operating report for the period ending December 2009 shows a DIP account balance of only $102,087.71, and his operating report for the period ending January 2010 shows a DIP account balance of $132,800.43. Rapoport does provide any details regarding the "100% joint plan" that he was prepared to propose in late 2009 nor the "resources" that he ostensibly had to fund it.[17] The judicial admissions contained in the Debtor's respective schedules and operating reports belie the notion that the Debtors were willing and capable of paying in full all claims against both estates in "late 2009 and thereafter" as part of a "100% joint plan in early 2010." Eisenberg, on the other hand, testified as counsel for the debtors in possession: "Based on my review of the information provided to me by Debtors regarding Debtors' assets, liabilities and claims against Debtors' estates, and based on my experience as a bankruptcy attorney for 40 years, Debtors did not have sufficient resources to pay 'all creditors 100%' within the first 120 days of the bankruptcy cases."[18]

    2. <u>There is No Evidence That JMBM Did Not Exercise Proper Billing Judgment</u>.

With respect to the second objection, Debtors essentially contend that JMBM failed to exercise proper billing judgment. In support thereof, Rapoport testified:

> JMBM is asking for payment for the work of more than one associate, some new, for tasks that should have been done efficiently by someone familiar with the case and/or more well-versed with chapter 11 plans, and not duplicate the more senior partners work. Essentially, myself and Shalan are being asked to pay double for the work done by associates and Mr. Eisenberg, when the legal work should have been finished by an associate and a partner in a reasonable proportion.[19]

---

[17] Id. 15:23 ("I had the resources to do so in late 2009 and thereafter.").

[18] Reply 18:19-22.

[19] Debtors' Objection 16:23-28.

10

A bankruptcy court has a duty to review fee applications even in the absence of objections by the United States trustee or parties in interest. <u>In re Busy Beaver Bldg. Ctrs., Inc.</u>, 19 F.3d 833, 841 (3d Cir. 1994). "What the court should not do, however, not without evidence to the contrary, is to change the facts initially presented to it in an otherwise complete fee application . . [and] on its own, second guess counsel in deciding whether this conference or that phone call were necessary, whose participation was appropriate, what the market generally pays for the time and services of counsel and its staff or how it reimburses certain expenses." <u>Matter of Hunt's Health Care, Inc.</u>, 161 B.R. 971, 981 (Bankr. N.D. Ind. 1993). As the court correctly observed in <u>Hunt's Health Care</u>:

> Without being presented with facts beyond those contained in an otherwise sufficient fee application, the court should not reduce an attorney's hourly rate or decide what is or is not to be characterized as overhead or how certain expenses are properly billed. Neither should the court take the approach that, just because it frequently reviews a multitude of fee applications, it is somehow in a better position to determine the reasonableness of a requested fee than the market. An attorney's customary billing practices are presumptively correct. While they may not be dispositive, departing from them requires a reason and information which would warrant the conclusion that the presumption accorded to counsel's regular practice should not be followed. Thus, the burden is on the objector "to establish a good reason why a lower rate is essential to access a 'reasonable attorney's fee.'"
>
> A party objecting to a fee application may not do so based on the general proposition that the fee sought is simply too much. It should go beyond this assertion to articulate a reason why and, if necessary, present evidence in support thereof. . .  The objector must, at some point, identify any allegedly improper, insufficient, or excessive entries and direct the court's attention to them. The objector should also be able to identify a reason why the hourly rates involved and the time charged are not reasonable or why the market would place a lower value on counsel's labors and offer evidence supporting its position.

<u>Id.</u> at 982 (citations omitted). Attorneys' fees should not be reduced based on "inarticulable and unsubstantiated dissatisfaction with the lawyers' efforts to economize on their time and expenses." <u>Matter of Cont'l Ill. Sec. Litig.</u>, 962 F.2d 566, 570 (7th Cir. 1992).

In his declaration, Rapoport refers the court to a chart which purports to analyze the hourly rates charged by the JMBM attorneys and paralegals rendering services to Rapoport and

11

Shalon throughout the case; and based thereon, Rapoport concludes that "JMBM's rates should be reduced so that JMBM's hourly rate is charged at the same or similar "blended" rate as in the First, Second, and Third Interim Fee Applications as when Caroline Djang worked on the chapter 11 cases as a whole.[20]  Rapoport also refers the court to two documents attached to Debtors' Objection as Exhibits 1 and 2 which purport to "[detail] the time and rates at which the Klein matter was charged by JMBM and should not have been, as that time was avoidable by an early 100% Plan that could have been filed and confirmed by [Rapoport] and Shalan."[21]

      Debtors concede that Rapoport is not an attorney.  As such, Rapoport is not qualified to render an opinion as to the time spent performing specific tasks in a chapter 11 case, the necessity of the legal services rendered in performing such tasks, or the reasonablenss of the "blended" hourly rate charged for such legal services.[22]  Debtors also concede that Exhibits 1 and 2 to Rapoport's declaration in support of Debtors' Objection were not prepared by Rapoport, but by an unidentified attorney or other employee of the law firm of Hinds & Shankman, LLP.  Exhibits 1 and 2 are not properly authenticated.  Neither exhibit is supported by a declaration (a) identifying the person who prepared the analysis; (b) describing the qualifications of the person to undertake such an analysis; (c) discussing the methodology used to analyze the information extracted from the JMBM invoices; and (d) explaining the conclusions reached in the analysis which form the basis for the Debtors' Objection.

---

[20] Id. 18:14-16.

[21] Id. 17:17-19.

[22] The Federal Rules of Evidence assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993); see Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149 (1999) (Rule 702 imposes special obligation on judge to ensure that expert's testimony "is not only relevant, but reliable").  "Rule 702 embodies the twin concerns of reliability . . . and helpfulness."  The test for reliability is the soundness of the expert's methodology, not the accuracy of the conclusions.  Reliable testimony must also be helpful, and the trial judge "may exclude testimony that falls short of achieving either end." Stilwell v. Smith & Nephew, Inc., 482 F.3d 1187, 1192 (9th Cir. 2007) (internal quotes omitted).

There is no credible evidence that JMBM's services, at the time rendered, were not reasonably calculated to lead to a benefit to the Debtors and the estate. Debtors' position, presented solely through the Rapoport declaration, ignores the size and scope of the Kleins' disputed claim and its impact on the Debtors' ability to reorganize. There is no evidence that a qualified expert studied the long history of the case, the procedural posture of the pending state court action with the Kleins on the petition date, and the implications of the Kleins litigation on the progress of the two bankruptcy cases and the Debtors' ability to effectively reorganize with a feasible, confirmable plan. In fact, Debtors' Objection fails to point to any <u>specific instances</u> of allegedly duplicative, unnecessary, or insufficient work; instead, it contains general and conclusory statements regarding Debtors' perception that the fees sought are unreasonable.

3. <u>There is No Basis for a Disgorgement of Attorneys' Fees Under Either California Business & Professions Code § 6148 or FRBP 2016(b)</u>.

With respect to their third objection, Debtors assert that all of JMBM's fees should be disgorged for violation of California Business and Profession Code § 6148 because Debtors did not receive monthly billing statements until December 2011 despite Rapoport's requests for monthly statements. Rapoport claims that "[t]he First, Second, and Third Fee Applications sent to myself and Shalan by JMBM did not include the actual invoices that were attached to the Application and filed with the Court,"[23] and that he "would have been aware of the work for which JMBM was billing and would not have approved the first three Fee [sic] Interim Fee Applications" had he received monthly billing statements from JMBM.[24] Rapoport also claims that JMBM violated Rule 2016(b) and the LBRs because it failed to supplement its Rule 2016(b) disclosure every time Eisenberg increased his hourly rate.

In California, an attorney must provide a bill within 10 days following the client's request unless such bill was sent within the preceding 31 days (in which event, the new bill may be sent within 31 days after the earlier billing). Bus. & Prof. C. § 6148(b). The client may request

---

[23] Debtors' Objection 19:8-10.

[24] <u>Id.</u> 19:3-5.

such billing every 30 days thereafter. Bus. & Prof. C. § 6148(b). "The statute does not specifically require the attorney to provide monthly or other periodic billings . . . [i].e., attorneys can, if they choose, delay billing for services as long as they wish or until the client requests a bill." RUTTER GROUP CAL. PRAC. GUIDE: PROF. RESP., Ch. 5-H. Fee agreements or billings that fail to meet the statutory requirements above are voidable by the client. Bus. & Prof. C. § 6148(c). In such event, the attorney is entitled to collect only a "reasonable fee." Bus. & Prof.C. §§ 6147(b), 6148(c); Flannery v. Prentice, 26 Cal.4th 572, 589 (2001); Gutierrez v. Girardi, 194 Cal.App.4th 925, 932 (2011).

Contrary to Rapoport's understanding, the Business and Profession Code does not mandate monthly billing statements. Attorneys are required, however, to provide billing statements when asked. According to the evidence, JMBM provided copies of fee applications containing billing entries and provided additional copies when asked.[25] Moreover, Rapoport admitted under penalty of perjury in prior declarations filed with the court that: (a) he reviewed JMBM's first, second, and third interim fee applications; (b) that he had "no unresolved objections" to the fees and expenses sought in each application; (c) that the work performed by JMBM was "necessary and appropriate under the circumstances and benefited the estate;" and (d) that he "approve[d]" the fees and expenses sought. See Dkt. Nos. 70, 158 & 209. These judicial admissions are binding on Rapoport, and the court gives little weight to Rapoport's recent assertion, also under penalty of perjury and in response to JMBM's final fee request, that he was "repeatedly strong armed into approving JMBM's First, Second, and Third Interim Fee Applications."[26]

Rapoport has not shown that JMBM violated Business and Professions Code § 6148(b). Even if there had been such a violation, JMBM would still be entitled to "reasonable fees" which is a determination this court must necessarily make in any event in approving JMBM's Application.

---

[25] Reply 20:13 to 21:10.

[26] Debtors' Objection 18:23-24.

An attorney representing a debtor in bankruptcy must file with the court a statement disclosing the compensation paid or agreed to be paid for representing the debtor in the case. See 11 U.S.C. § 329(a); FRBP 2016(b). The statement must disclose: (1) the compensation paid or agreed to be paid (if the payment or agreement was made within one year before the petition date) for services rendered or to be rendered "in contemplation of or in connection with" the debtor's bankruptcy case; (2) the source of such compensation; and (3) whether the attorney has shared or agreed to share the compensation with any other entity (other than other attorneys in the attorney's firm) and the details of the compensation-sharing agreement. 11 U.S.C. § 329(a); FRBP 2016(b). Rule 2016(b) further states: "A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed." FRBP 2016(b). The Advisory Committee notes for Rule 2016(b) state that an attorney must file a supplement to the § 329 statement "if an undisclosed payment is made to the attorney or a new or amended agreement is entered into by the debtor and the attorney." FRBP 2016(b), adv. comm. notes. In the event of an attorney's failure to timely file a statement of compensation (or to disclose all relevant fee information in the statement), the court has discretion to deny compensation in whole or in part and may also order the attorney to disgorge fees previously received. See Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.), 63 F.3d 877, 880–82 (9th Cir. 1995); Hale v. United States Trustee (In re Basham), 208 B.R. 926, 931 (9th Cir. BAP 1997).

There is no evidence of an undisclosed payment to JMBM nor is there evidence of a new or amended employment agreement between the Debtors and JMBM. JMBM revised the hourly rates charged under its existing employment agreements with the Debtors. Periodic changes in hourly rates were contemplated in the original employment application, which application was served on all parties entitled to notice.[27] Under our local rules, if the hourly rate has changed during the period covered by an interim fee application, the application must specify the rate that

---

[27] See Employment Application (Dkt. No. 2) ¶ 10 ("All JMBM rates are subject to periodic adjustment generally on January 1 of each year and the applicable rates are those in effect at the time services are rendered.") (emphasis added).

applies to the particular hours for which compensation is sought. LBR 2016-1(a)(1)(I). JMBM's hourly rate increases were disclosed in the interim fee applications served on the Debtors. To the extent that the court has discretion to deny or reduce compensation for an alleged violation of either FRBP 2016(b) or LBR 2016-1, the court declines to do so on the record that is before the court.

### E. JMBM is Entitled to Attorneys' Fees Incurred in Defending the Application.

JMBM filed a Second Supplemental Declaration of Joseph A. Eisenberg Re: Fees Incurred to Reply to Reorganized Debtors' Objection to Final Application of Jeffer Mangels Butler & Mitchell LLP for Compensation and Reimbursement of Expenses as Counsel to Debtors and Debtors in Possession on March 19, 2012, seeking an additional award of $16,748.50 in attorneys fees for 30.10 hours of legal services rendered at a blended hourly rate of $556.43 between March 5, 2012 and March 14, 2012, replying to the Debtors' Objection. Courts may award compensation for time spent and expenses incurred in successfully litigating objections to a fee application, provided the applicant demonstrates that: (1) the services rendered satisfy the requirements of § 330(a)(4)(A); and (2) the case exemplifies a "set of circumstances" that made the time spent and expenses incurred in the litigation "necessary" under § 330(a)(1). Smith v. Edwards & Hale, Ltd. (In re Smith), 317 F.3d 918, 928 (9th Cir. 2002) (abrogated on other grounds by Lamie v. United States Trustee, 540 U.S. 526, 531–39 (2004)).

Debtors in possession have a fiduciary obligation to act in the best interests of creditors and the estate. Counsel is charged with the duty to advise the debtor in possession of its responsibilities under the Code, and to assist the debtor in possession, and its principals, in discharging those responsibilities. See, e.g., In re Nilges, 301 B.R. 321, 325 (Bankr. N.D. Iowa 2003) ("Counsel has a duty to supervise client's conduct for compliance with the Bankruptcy Code."); Zeisler & Zeisler, P.C. v. Prudential Ins. Co. of Am. (In re JLM, Inc.), 210 B.R. 19, 26 (2d Cir. BAP 1997) ("The debtor's attorney, while not a trustee, nevertheless is charged with the duty of counseling the debtor in possession to comply with its duties and obligations under the law."); In re Whitney Place Partners, 147 B.R. 619, 620-21 (Bankr. N.D. Ga. 1992) ("[T]he

debtor's attorney must take conceptual control of the case and provide guidance for management of the debtor, not only to discern what measures are necessary to achieve a successful reorganization, but to assure that, in so doing, compliance with the Bankruptcy Code and Rules is sought rather than avoided"); In re Wilde Horse Enters, Inc., 136 B.R. 831, 840 (Bankr. C.D. Cal. 1991) ("Because the attorney for the debtor in possession is a fiduciary of the estate and an officer of the Court, the duty to advise the client goes beyond responding [to] the client's requests for advice"); In re Sky Valley, Inc., 135 B.R. 925, 939 (Bankr. N.D. Ga. 1992) ("Debtor's attorney's duty as fiduciary of the estate requires an active concern for the interests of the estate and its beneficiaries").

In this case, JMBM's services in defending against Debtors' Objection were not unnecessarily duplicative, were reasonably likely to benefit the estate, and aided in the administration of the case. JMBM navigated the Debtors' jointly administered case through troubled waters created by ongoing litigation and intense animosity between the Debtors and the Kleins. As a result of JMBM's efforts, the Debtors reached a compromise with the Kleins which formed the basis for confirmation of a consensual plan under which creditors were paid in full and Debtors retained substantial assets and received a fresh start. Absent the efforts of JMBM, the compromise with the Kleins may not have been possible and the estate assets may have been liquidated in a chapter 7 case. For these reasons, JMBM's defense of Debtors' Objection exemplifies a "set of circumstances" that made the time spent and expenses incurred in the litigation "necessary" under § 330(a)(1).

F. Conclusion.

Based on the foregoing, the court will allow as final fees the sum of $256,386.50 previously awarded, plus $278,478.50 for the Fourth Compensation Period, $16,748.50 incurred in defending against the Debtors' Objection, and $3,175.00 incurred in appearing at the hearing on March 21, 2012,[28] for total fees of $554,788.50. The court will further allow as final expenses the sum of $11,359.76 previously allowed, plus $15,064.84 for the Fourth

---

[28] Eisenberg – 2.5 hours at 825.00 per hour; Alex McGinnis – 2.5 hours at $445.00 per hour.

17

1 | Compensation Period, for total expenses of $26,424.60.

2 |     JMBM shall submit an appropriate order.

4 | ###

27 | DATED: April 17, 2012

United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled _____**MEMORANDUM DECISION** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of  4-17-2012 , the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Gregory J Babcock    bknotice@mccarthyholthus.com, gbabcockecf@hotmail.com
- Robert D Bass    rbass@greenbass.com
- Jared D Bissell    ecfcacb@piteduncan.com
- Steven Casselberry    scasselberry@mrllp.com, fbaig@mrllp.com;jjacobs@mrllp.com
- Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;Brian@lesliecohenlaw.com
- Caroline Djang    crd@jmbm.com
- Joseph A Eisenberg    jae@jmbm.com
- Laleh Ensafi    lensafi@yahoo.com, cmartin@pralc.com
- Mark S Faulkner    marksfaulkner@cox.net, fbaig@mrllp.com;jjacobs@mrllp.com
- Thomas M Geher    tmg@jmbm.com
- Jeffrey J Hagen    jeff@hagenhagenlaw.com
- Anne W Hamann    ahamann@piteduncan.com, ecfcacb@piteduncan.com
- James Andrew Hinds    jhinds@jhindslaw.com
- Hye Jin Jang    hjang@jhindslaw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com, theresa.macaulay@bryancave.com
- Erin L Laney    ecfcacb@piteduncan.com
- Kenneth G Lau    kenneth.g.lau@usdoj.gov
- Steven M Lawrence    generalmailaswlawoffice.com@alvaradoca.com, vaguirre@alvaradoca.com
- Charles Liu    cliu@mrllp.com, ecfmarshackhays@gmail.com
- Christopher M McDermott    ecfcacb@piteduncan.com
- Alexis M McGinness    amm@jmbm.com, vr@jmbm.com;fc3@jmbm.com
- Brian A Paino    ecfcacb@piteduncan.com
- Lee S Raphael    cmartin@pprlaw.net
- Paul R Shankman    pshankman@jhindslaw.com
- Michael W Tan    michael.w.tan@irscounsel.treas.gov
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Catherine T Vinh    ecfcacb@piteduncan.com
- David J Williams    dwilliams@mrllp.com, fbaig@mrllp.com;jjacobs@mrllp.com

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Greenberg Traurig, LLP
Mark E. Ferrario, Esq.
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, NV 89169

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page